S/N/I

CLINTON BROWN, Pro Se
16821 Edgar Street
Pacific Palisades, CA 90272
clinton@atlasinc.solar
310-487-6453

Note: The Clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice. *Fed. R. Civ. P. 5(d)(4)*

FILED
CLERK, U.S. DISTRICT COURT
APR 19 2023
CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_EEE\_\_\_\_ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN, | CASE NO. LACV23-02938-ODW(JCx) |
| Plaintiff, | Complaint |
| vs. | Judge: |
| STEVE SMEAD, | Magistrate Judge: |
| Defendant. | Action Filed: 04/19/2023 |
| | Action Due: |

### JURISDICTION

The Court has original jurisdiction pursuant to *28 U.S.C. § 1331,* arising under Federal questions, *15 U.S.C. § 77v(a)* and *15 U.S.C. § 78aa(a).*

### VENUE

Venue is proper in this District pursuant to *28 U.S.C. § 1391(b)(2).*

### PARTIES

Plaintiff, CLINTON BROWN, resides at: 16821 Edgar St., Pacific Palisades, CA 90272

Defendant: STEVE SMEAD, resides at: 352 East Harvard Blvd., Santa Paula, CA 93060

### STATEMENT OF FACTS

In April 2020, the Plaintiff purchased a vacant lot at 21472 Calle del Barco, Malibu, CA 90265 ("Malibu") with the intent to build a home. The property was financed

COMPLAINT

1  with two deeds of trust, with the Defendant holding the first deed of trust and the prior
2  owner holding the second.
3      Between April 2020 and November 2020, the Plaintiff and Defendant engaged in
4  conversations about the Plaintiff's solar energy business venture, with the Defendant
5  expressing interest in investing in the industry. In July 2020, the Plaintiff purchased his
6  first solar property located at 16390 South Black Rock Cutoff Road, Fillmore, Utah
7  84631 ("Utah") and began submitting applications for a Conditional Use Permit ("CUP")
8  and Right-of-Way ("ROW") for the planned solar facility.
9      In November 2020, the Plaintiff risked losing a solar property contract for a 400-
10 acre vacant lot located at 42829 Harper Lake Rd., Hinkley, CA 92347 ("Harper") and
11 requested the Defendant's assistance in securing a second deed of trust behind the seller's
12 first. The Defendant agreed to offer a $150,000 second deed of trust for a $300,000
13 payoff upon the note's maturity, but Escrow rejected the terms as usurious. The
14 Defendant then proposed a $150,000 second deed of trust with 8% interest and an
15 additional interest payment of $150,000 when the second deed of trust became due. The
16 Plaintiff agreed to the terms and Escrow closed.
17     Between November 2020 and May 2021, the Plaintiff and Defendant stayed in
18 communication about the progress of the solar projects. In May 2021, the seller-financed
19 second deed of trust on the Malibu property reached maturity. Despite the Plaintiff
20 securing other financing that could have paid off the Defendant, the Defendant offered to
21 pay off the seller-financed second deed of trust and create a new deed of trust that had a
22 two (2) percent lower interest rate than what the Plaintiff had been able to obtain. After
23 paying off the seller-financed portion of the deed of trust, the Defendant became the *sole*
24 *holder of the only deed of trust* on the Malibu property. (Emphasis added).
25     In June 2021, the Plaintiff sought to utilize the equity in the Utah property to
26 advance the solar project. Plaintiff obtained a conditional loan commitment for the
27 property, but it was contingent upon an appraisal. Colliers International conducted the
28 appraisal, which valued the property at $240,000, significantly more than the original

**COMPLAINT**

purchase price of $50,000. *The Plaintiff shared this information with the Defendant.* (Emphasis added).

The Defendant then expressed concern about the $150,000 Harper interest not being recorded and secured by a deed of trust and offered to provide capital for the equity created in Utah. The Defendant's offer was almost the same as the 50% loan-to-value of the conditional loan commitment, which meant that the Plaintiff would receive a similar amount of capital and not have to worry about securing $100,000 of the $150,000 Harper interest  The Plaintiff accepted the Defendant's offer, which required paying off the existing deed of trust, recording the $100,000 Harper interest on the Utah deed of trust, and paying Escrow fees. The remaining funds, around $63,000, would be disbursed to the Plaintiff to utilize for the Utah solar project.

In November 2021, the Harper seller-financed first deed of trust required a balloon payment, and the Plaintiff tried to refinance the solar property. In December 2021, an appraisal valued the Harper property at $1,100,000, and the Plaintiff shared this information with the Defendant, who held the second deed of trust. The Defendant, without disclosing the intent to purchase Harper's first deed of trust, stopped regular communication with the Plaintiff. The Plaintiff attempted to find a solution to pay off the seller-financed first deed of trust while also continuing to move the Harper project forward.

In July 2022, the Defendant purchased the seller-financed first deed of trust on Harper through an assignment *at its full value for roughly $398,000*. (Emphasis added). Beginning in August 2022, the Defendant filed notices of default on the deeds of trust for Harper, Malibu, and Utah.

The Plaintiff made several attempts to find a solution to avert notice of sales, including sharing a proposed contract from a solar development company for Harper that was worth over $10,000,000. The Plaintiff offered to borrow $100,000 secured by the solar contract to delay the foreclosures for six months. The Defendant rejected these proposals.

**COMPLAINT**

1  All properties were foreclosed in January 2023, with the Malibu property listed for
2  sale in April 2023.

### CLAIM

4  An "investment contract" may take the form, *inter alia*, purchase agreements,
5  deeds of trusts, promissory notes, formal and informal agreements, when capital is
6  employed into a common enterprise with the expectation of profits solely from another
7  party, which can collectively establish the definition of a "security." *SEC v. W. J. Howey
8  Co., 328 U.S. 293, 66 S. Ct. 1100 (1946).*

9  The Defendant invested money into the Plaintiff's solar venture with the
10  expectation of profit solely from the Plaintiff's entrepreneurial capital. The Defendant
11  made formal and informal agreements with the Plaintiff and employed his capital to
12  receive a return on the investment contract. As a result of the deception and dishonesty of
13  the Defendant the Plaintiff has lost all his property. The economic realities of solar
14  project developments are within the intent of Congress to protect investors from an
15  obscure form of a real estate transaction that is, *de facto*, a "security." (*SEC v. R.G.
16  Reynolds Enters. (9th Cir. 1991) 952 F.2d 1125*)

17  The Defendant, *exorbitanter,* used his "accredited investor" status *in the scheme* to
18  benefit himself to the detriment of the Plaintiff. (Emphasis added). Although accredited
19  investors may be exempt from certain registration requirements, accredited investors are
20  not exempt from disclosure. The offer and sale of a "security" to an unaccredited or
21  accredited investor, alike, does not allow the Defendant to engage in conduct that is in
22  violation of 15 U.S. Code § 77q(a)(3) and 15 U.S.C. § 78j(b).

23  Instead, accredited investor has been given a statutory definition by Congress[1],
24  and thus Defendant's failure to disclose an offer and sale of a security is inherently
25  misleading and deceptive in the foregoing scheme. (*15 U.S.C. § 77b(a)(15)(ii).*

---

[1] The Federalist No. 10, (1788). Factions.

**COMPLAINT**

# PRAYER FOR RELIEF

Based on the above-stated facts and legal claims, the Plaintiff respectfully requests the following relief:

1. The Court declares the transactions were an "investment contract" and thus a "security" pursuant to *15 U.S.C.S. § 77b(a)(1)*.
2. The Court declares the Defendant's offer and sale of a "security" as an "investment contract" to the Plaintiff, through oral and written intrastate communications, was in violation of *15 U.S. Code § 77l(a)(1)*.
3. The Defendant's claim of ownership in the properties obtained in violation of, *15 U.S. Code § 77l(a)(2)*, be subject to recission.
4. The Defendant be ordered to immediately stop any sale or attempted transfer of real property that Defendant acquired in violation of *15 U.S. Code § 77q(a)(3)* and *15 U.S.C. § 78j(b)*.
5. The Court grants any other remedies that are speedy, just, and inexpensive to the parties in this action.

"I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Clinton Brown                                                                         04/19/2023

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: 04/19/2023

Sign:

Print Name: Clinton Brown