CLINTON BROWN, Pro Se
16821 Edgar Street
Pacific Palisades, CA 90272
clinton@atlasinc.solar
310-487-6453

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>        Plaintiff,<br><br>  vs.<br><br>STEVE SMEAD<br><br>        Defendant. | CASE NO. 2:23-cv-02938-MEMF-KS<br><br>**Motion for Summary Judgment**<br><br>**Judge:** Honorable Maame Ewusi-Mensah Frimpong<br><br>**Magistrate Judge:** Karen L. Stevenson<br><br>**Action Filed:** 04/19/2023<br><br>**Action Due:** 05/22/2023 |

## MOTION FOR SUMMARY JUDGMENT

**NOTICE TO THE COURT,** pursuant to *F.R.C.P. 56(a)* and *F.R.C.P. 56(b)*, the Plaintiff requests the Court to enter summary judgment in favor of the Plaintiff on the grounds that there are no genuine disputes of material fact, and the Plaintiff is entitled to judgment as a matter of law. *F.R.C.P. 56(c)(1)(A)*. Summary judgment is favored to secure a just, speedy, and inexpensive determination of every action. (*Celotex v. Catrett, 477 U.S. 317, 327, (1986))*. Courts must grant summary judgment in cases where the law requires it. Courts of Appeals have long found it possible to separate factual from legal matters. (*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc., 574 U. S. 318, 328 (2015)*). Because a purely legal question is, by definition, one whose answer is independent of disputed facts, factual development at trial will not change the District Court's answer. *(Dupree v. Younger, No. 22–210,*

*slip op., 6, para 3. (U.S. May 25, 2023).* Granted, the District Court might backtrack, but if the question is purely legal, that is because of law books, not trial exhibits. *Id.* So, was there an investment contract, thus an unregistered security? And, was there misappropriation of confidential information in connection with the offer and sale of an unregistered security?

## BACKGROUND

The Defendant is an accredited investor per regulations set forth in *17 C.F.R. § 230.501(a) (2023).* The Plaintiff is not an accredited investor per regulations set forth in *17 C.F.R. § 230.501(a) (2023).*

### Malibu, Utah, and Harper

In April 2020, the Plaintiff bought property in Malibu for $290,000, backed by two deeds of trust, one of which was held by the Defendant.[1] The appraised value in February 2021 was $450,000.[2] The Defendant gained sole control of the Malibu deed of trust in May 2021.[3]

In June 2020 the Utah property was purchased for $49,999. In June 2021, following the procurement of solar development permits, the property had significantly appreciated in value and appraised at $240,000.[4] The Defendant provided new capital for the project in exchange for Plaintiff's equity in the property and the Defendant recorded a deed of trust for $200,000.[5]

---

[1] Los Angeles County Recorder. (2021, May 21). Substitution of Trustee and Full Reconveyance. Document No. 202105210190066. Property APN: 4451-001-021.

[2] Varon, B. (2021, February 12). Appraisal Report: APN/Parcel ID: 4451-015-021, Malibu, CA 90265. Appraised value: $450,000.

[3] Los Angeles County Recorder. (2021, May 21). Substitution of Trustee and Full Reconveyance. Document No. 202105210190066. Property APN: 4451-001-021.

[4] Colliers International, File #: SLC210208. (2021, June 8). Appraisal Report: APN/Parcel ID(s): 8710-1. Appraised value: $240,000.

[5] Millard County Recorder. (2021, June 29). Trust Deed: APN/Parcel ID 8710-1. Notarized in New York by Jenice Hernandez, Notary Public, State of New York, No. OLHE6359254. Recorded at 12:24 PM, Entry #: 00215042. Amount: $200,000.

In November 2020, the Defendant purchased a $150,000 second deed of trust on the Harper solar property, stipulating a repayment sum of $300,000. In May 2022, the Plaintiff shared the Harper appraisal indicating a significant value increase.[6] In June 2022 the Defendant purchased the first deed of trust from the prior owner and the assignment was recorded in July 2022.[7]

The Malibu, Utah and Harper properties had a combined appraised value of $1,790,000 in 2021. The original purchase prices for Harper, Malibu and Utah amounted to $837,999. The equity in Malibu, Utah, and Harper in 2021 was $952,001. In 2021 the projects had a non-marketable value of at least $14,390,000 and a marketable value of $21,400,000.[8] In August 2022, the Defendant filed notices of default on all deeds of trust related to Malibu, Utah, and Harper. In January 2023 all three (3) properties were foreclosed on.

The Plaintiff initiated litigation on April 19, 2023, alleging that the Defendant's actions contravened the Securities Act of 1933 and the Securities Exchange Act of 1934 in a transaction comprised of three (3) properties known as Malibu, Utah, and Harper. The Defendant responded by filing a motion to dismiss, citing lack of subject matter jurisdiction and failure to substantiate a claim.

## **LEGAL STANDARDS**

United States District Courts have exclusive jurisdiction over violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. *(15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa, respectively)*; *(Morrison v. National Australia Bank Ltd., 561 U.S. 247, 254, para 2, 130 S. Ct. 2869 (2010); (Section 929P(b)(1) of the Dodd-*

---

[6] Pacific Valuation. (2021, December 20). Restricted Appraisal Report: APN/Parcel ID(s): 0490-091-09 and 0490-091-19. Appraised value: $1,100,000.
[7] San Bernardino County Recorder. (2022, July 19). Corporation Assignment of Deed of Trust. Document No. 2022-0251090. Property APN/Parcel ID(s): 0490-091-09 and 0490-091-19.
[8] Bay Valuation Advisors, LLC. (2021). Atlas, Inc. Valuation of Common Stock. Oakland, CA. Valuation Date: June 30, 2021. Report Date: September 21, 2021. Fair Market Value (FMV): $21,400,000.

*Frank Wall Street Reform and Consumer Protection Act, Public Law No. 111-203, 124 Stat. 1376, 1864 (2010)).* Thus, subject matter jurisdiction is established.

Plaintiff's standing results from (1) a concrete and particularized injury in-fact; *These properties were not merely real estate but represented significant equity investments. The loss of these assets translates into a considerable financial setback and interrupts the Plaintiff's anticipated income from these equity investments, which effectively functioned as a security*, (2) the injury can be traceable to the Defendant's actions; *the unilateral seizure of the properties by the Defendant and his steadfast refusal to negotiate any resolution that would have prevented the foreclosures, further exacerbate the financial losses of the Plaintiff*; and (3) a favorable decision for the Plaintiff would result in a remedy for the wrong; *return of the properties or financial damages commensurate with the loss of equity investments in these properties, thereby restoring the Plaintiff's financial position and ensuring justice is served. (Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, (1992)).* Thus, standing is established.

The moving party must also establish that no genuine issues of material fact exist, and that party is entitled to judgment as a matter of law. (*Anderson v. Liberty Lobby, 477 U.S. 242, 247-248. (1986)); (Dupree, supra).* Materiality is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. *Id.* The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial. *(Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, para 2, 106 S. Ct. 1348 (1986)); F.R.C.P. 56(e)).* A party is "fairly appraised" that the Court will in fact be deciding on a summary judgment motion if a party submits matters outside the pleadings to the judge and invites consideration of them. (*United States v. 14.02 Acres, 530 F.3d 883, 894, E. (9th Cir. 2008)).*

## A. FEDERAL SECURITY LAWS

Together, the Securities Act of 1933, 48 Stat. 74, *15 U. S. C. §77a et seq.*, and the Securities Exchange Act of 1934, 48 Stat. 881, *15 U. S. C. §78a et seq.*, form the backbone of American securities law. (*Slack Technologies, LLC, FKA Slack Technologies, Inc., et al. v. Pirani, 585 U.S. 1, I. (June 1, 2023).* Congress enacted a definition of security sufficiently broad to encompass virtually any instrument that might be sold as an investment. (*Reves v. Ernst & Young, 494 U.S. 56, 61, para 1, 110 S. Ct. 945 (1990)).* Congress meant to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face. (*SEC v. Zandford, 535 U.S. 813, 822, para 1, 122 S. Ct. 1899 (2002)).* The end to which Congress intends to accomplish, which is providing robust protections for investors and promoting transparency and fairness in financial markets, is treated as the controlling factor of the law. (*A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 45, para 1, S. Ct. 414 (1941)).* Thus, the starting point in every case involving construction of a statute is the language itself. (*Landreth Timber Co. v. Landreth, 471 U.S. 681, 685, II, 105 S. Ct. 2297 (1985)).*

## B. SECURITY

The term security is defined in the Securities Act of 1933 and the Securities Exchange Act of 1934. *(Securities Act of 1933 § 2(a)(1), 15 U.S.C. § 77b(a)(1) (as amended through P.L. 117-263, enacted December 23, 2022); (Securities Exchange Act of 1934 § 3(a)(10) 15 U.S.C. § 78c(a)(10) (as amended through P.L. 117-328, enacted December 29, 2022).* The term security is used in slightly different formations, but virtually identical in meaning. *(SEC v. Edwards, 540 U.S. 389, 393, II. 124 S. Ct. 892 (2004) (citing Reves, supra, 61, n.1).* Any contract or action that involves exchanging a security or interest in a security for something of value is considered a sale or an offer to sell. *(Section 2(a)(3); (15 U.S.C. § 77b(a)(3)).* The term issuer means every person who issues or proposes to issue any security.

*(Section 2(a)(4) (15 U.S.C. § 77b(a)(4))*. Interstate commerce refers to any communication involving securities that crosses state lines. *Section 2(a)(7); (15 U.S.C. § 77b(a)(7F). (Tcherepnin v. Knight, 389 U.S. 332, 336, para 1, 88 S. Ct. 548 (1967))*. The term security means investment contract, but it is not defined by Congress. *(Edwards, supra)*.

## C. INVESTMENT CONTRACT

The term investment contract under Federal securities law means, an investment (1) in a common venture premised on (2) a reasonable expectation of profits to be (3) derived solely from the entrepreneurial or managerial efforts of others. (*SEC v. W. J. Howey Co., 328 U.S. 293, 298-299, 301, 66 S. Ct. 1100, 1102-1104, 90 L. Ed. 1244, reh. denied 329 U.S. 819, 67 S. Ct. 27, 91 L. Ed. 697 (1946))*. A common enterprise is a venture in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment. (*Brodt v. Bache & Co., 595 F.2d, 460, para 6, (quoting Securities and Exchange Commission v. Glenn W. Turner Enterprises, 474 F.2d 476, 482 n.7 (9th Cir.), cert. denied, 414 U.S. 821, 38 L. Ed. 2d 53, 94 S. Ct. 117 (1973); (Mordaunt v. Incomco, 686 F.2d, 815, 817 (9th Cir.1982))*. It is not necessary that the funds of investors are pooled; what must be shown is that the fortunes of the investors are linked with those of the promoters, thereby establishing the requisite element of vertical commonality. (*United States v. Jones, 712 F.2d 1316, 1321 (9th Cir. 1983) (citing Mordaunt v. Incomco, 686 F.2d 815, 817 (9th Cir.1982); EI Khadem v. Equity Securities Corp., 494 F.2d 1224, 1229 (9th Cir.), cert. denied, 419 U.S. 900, 95 S.Ct. 188, 42 L.Ed.2d 146 (1974*)). It is immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. *(Howey, supra)*. A security and thus an investment contract is a flexible rather than static principle, one that is capable of adaptation. *Id*. In searching for the meaning and scope of the word security in the Securities Act

and the Securities Exchange Act, form should be disregarded for substance and the emphasis should be on economic reality. *(Tcherepnin, supra); (Howey); (Edwards); (Reves); (Jones); (Glenn); (Zandford);* (Collecting cases). Thus, a common enterprise exists when there's a direct correlation between the success or failure of the Plaintiff's efforts and the success or failure of the investment. *In this case*, the Defendant controlled both outcomes, *at his discretion*, resulting in detriment to the Plaintiff and a benefit to himself. (Emphasis added).

## LEGAL ANALYSIS

Securities laws are meant to be flexible and remedial, not restrictive, to effectively combat fraud. The Acts set higher conduct standards in the securities industry and are not limited to common-law fraud doctrines. The equal sharing of risk of error is achieved by using a preponderance-of-the-evidence standard, which doesn't favor any side. *(Herman & Maclean v. Huddleston, 459 U.S. 375, 390, para 2, 382 103 S. Ct. 683, 1983)).* Given the broadly remedial purposes of Federal securities legislation, the burden of proof is reasonably imposed on an issuer who pleads exemption. *(SEC v. Ralston Purina Co., 346 U.S. 119, 126 (1953) (citing Schlemmer v. Buffalo, R. & P. R. Co., 205 U.S. 1, 10 (1907)); Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74, preamble (1933)).* Private contracts cannot supersede Federal security laws. *(Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S. Ct. 1917 (1989)).* An investment scheme promising a fixed rate of return can be an investment contract and thus a security subject to Federal security laws. (*Edwards, 397*). The security in question also involved communications and instruments across state lines. (n.5)

The Securities Act of 1933 prohibits the offer as well as the sale of unregistered, non-exempt securities. The 1934 Act allows investors to recover for fraud in the sale of unregistered shares upon proof of scienter. (*Slack Technologies, LLC, FKA Slack Technologies, Inc., et al. v. Pirani, 585 U.S. 4, para 3, (June 1,*

*2023).* It [1934 Act] allows suits in connection with the purchase or sale of "any security," whether registered or not. §78j. (*Slack, 2, para 2).* Thus, the focus of inquiry should be on the need for the protections afforded by registration. (S*EC v. Ralston Purina Co., 346 U.S. 119, 127, para 1, 73 S. Ct. 981 (1953)).* The obvious opportunities for pressure and imposition make it advisable all parties are entitled to compliance with the Acts. *Id.* The law doesn't protect individuals from making bad investments, it protects individuals from bad actors.

The misappropriation theory holds that a person commits fraud in connection with a securities transaction if a fiduciary uses undisclosed information to their own advantage in a security transaction; it is defrauding the principal by taking exclusive use of that information. *(United States v. O'Hagan, 521 U.S. 642 652-653, 117 S. Ct. 2199 (1997)).* This action dupes the principal. *Id.* Thus, it is unlawful to use or employ, in connection with the purchase or sale of any security or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. (*Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b) (as amended through P.L. 117-328, enacted December 29, 2022).* Nonpublic material confidential information is property of the business operation. (*Carpenter v. United States, 484 U.S. 19, 26, (1987) (citing Ruckelshaus v. Monsanto Co., 467 U. 8. 986, 1001-1004 (1984); (Dirks v. SEC, 463 U.S. 646, 658, n. 10 (1983); Board of Trade of Chicago v. Christie Grain & Stock Co., 198 U.S. 236, 250-251 (1905); ef. 5 U.S.C. §552(b)(4)).* Therefore, a person who trades on the basis of material, nonpublic information, in short, gains his advantageous market position through deception; he deceives the source of the information and simultaneously harms members of the investing public. *(O'Hagan supra).* There is no question that fraudulent uses of confidential information fall within *§ 10(b)'s* prohibition if the fraud is "in connection with" a

securities transaction. *Id*. The Defendant had a fiduciary-like relationship with the Plaintiff because the relationship was based upon trust and confidence. *(United States v. Kosinski, 976 F.3d 135, 146, para 1, (2d Cir. 2020)*). In an inside-trading case this fraud derives from the inherent unfairness involved where one takes advantage of information intended to be available only for a corporate purpose and not for the personal benefit of anyone. *Id.* The intent of Congress to prohibit "any" transaction that undermines a free and fair market is clear and has been reaffirmed, *iterum et iterum*, since the Acts, and before that in State's Blue-Sky laws. And so, what's in a name? That which we call a rose by any other name would smell just as sweet. (Citations omitted). That which we call a fraud by any other name would smell just as foul.

**THEREFORE**, "[u]nless a registration statement is in effect as to a security," it is unlawful "to sell such security." §77e(a). (*Slack Technologies, LLC, FKA Slack Technologies, Inc., et al. v. Pirani, 585 U.S. 6, para 4, (June 1, 2023).* It is fraud to misappropriate confidential information to affect the purchase or sale of an unregistered security. (Citation omitted). Thus, the Plaintiff is entitled to summary judgment and damages as a matter of law.

"I, **Clinton Brown**, solemnly swear that I am submitting this filing with the Court, and that:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

"I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Clinton Brown                                                                 06/11/2023