CLINTON BROWN, Pro Se
16821 Edgar Street
Pacific Palisades, CA 90272
clinton@atlasinc.solar
310-487-6453

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>    Plaintiff,<br><br>vs.<br><br>STEVE SMEAD<br><br>    Defendant. | CASE NO. 2:23-cv-02938-MEMF-KS<br><br>**Plaintiff's Statement**<br><br>**Judge:** Honorable Maame Ewusi-Mensah Frimpong<br><br>**Magistrate Judge:** Karen L. Stevenson<br><br>**Action Filed:** 04/19/2023<br><br>**Action Due:** 05/22/2023 |

### PLAINTIFF'S STATEMENT

    I submit this statement as my written testimony in this controversy. I put forth this statement as a first-hand account of the Defendant's deliberate neglect of his obligations under Federal security laws. This neglect has led, consequently, to undermining my business venture, eroding my trust in a free and fair market, and losing my property. Furthermore, this declaration encompasses all that I, personally, have to say in this matter, unless directed otherwise by this Court.

    In April 2020, I purchased property in Malibu, financed with two deeds of trust, one held by the Defendant. This wasn't a simple loan, it was an investment, akin to the beginnings of a partnership. The agreement, underpinned by the Defendant's expectation of profit, was in the property's value once a structure was

built. In June 2020, the Defendant's involvement with me took on the characteristics of an investor that was further solidified with my purchase of a 160-acre solar property in Utah, thereupon the commencement of the solar permitting. In November 2020, the Defendant paid $150,000 for a second deed of trust on the 400-acre Harper solar property in return for a $300,000 promised sum. This wasn't a loan, but an investment with an expectation of profit from my venture. 100 percent profit, to be exact.

In May 2021, the Defendant reinforced his status as an investor by acquiring the outstanding Malibu deed of trust, thereby interlocking his financial success with the outcome of my venture. As the Defendant transitioned into a more participatory role, the boundary between private lender and investor began to blur. In June 2021, the Defendant's involvement with the Utah property precipitated a notable shift. With the solar permits successfully secured, his proposition to match the freshly minted equity with a capital investment marked a clear departure from private lending and veered toward an investment strategy. Despite residual doubts about the Defendant, this moment was an invigorating time for me. I had full confidence in the equity I had established in the property and felt optimistic about further value creation. That truth remains unshaken even today.

In May 2022, I shared an appraisal with the Defendant showing the Harper property's substantial increase in value from $498,000 to $1,100,000, demonstrating the similar success I had achieved with the Utah property. In July 2022, the Defendant tactically acquired the first deed of trust on the Harper property, paying full-face value to control the $498,000 liability. This purchase was a strategic investment in the project's future success resulting from my work. In August 2022, any pretense that the Defendant was simply acting as a lender completely dissolved. His actions - filing default notices and initiating foreclosure proceedings - were more in line with a hostile takeover than with honest lending practices. But despite the

growing difficulties dealing with the Defendant, I remained committed to moving the venture forward. However, every effort to stop foreclosure on the properties was met with unimaginable resistance from the Defendant.

On December 2, 2022, a promising contract offer came my way from a solar development company that I had been in talks with. The contract was a for lease on the Harper property and held the potential for a substantial return exceeding $10,000,000 over a 40-year lease period. The very next day, December 3, 2022, I approached the Defendant with a proposal to stave off the foreclosure proceedings on the properties. Unfortunately, this proposal was met with silence. While awaiting a response, I meticulously scrutinized the contract, ultimately believing in its potential and began preparing to negotiate the deal to a close.

On December 15, 2022, I decided to share this highly lucrative and confidential contract with the Defendant. My hope was that even if he demanded a significant portion, possibly up to half of the profits, securing this deal would prevent foreclosure and make the compromise worth it. Realistically, without the property, there wouldn't be a contract to negotiate. Once again, my attempts at communication were met with silence from the Defendant. On December 18, 2022, I made another attempt to reach a resolution, thereby engaging the Defendant in a sixty-nine (69) minute phone call, to no avail. This, undoubtedly, was a lost opportunity.

Determined to safeguard my investments, I turned to Congress, finding potential respite in a Chapter 11 Sub V filing. On December 28, 2022, I mailed the necessary documents to the bankruptcy court. On January 3, 2023, the day of the auction, I arrived at the bankruptcy court and delivered a $500 payment towards a Chapter 11 Sub V installment plan. While I was optimistic that this course of action would stave off the impending auction, the uncertainty surrounding the process meant that I would need to attend the auction.

At the auction, the stark reality of my predicament came into focus. *I was duped*. Unfortunately, the bankruptcy court rejected my installment plan. So that very day, I stood by, powerless, as the fruits of my labor were unceremoniously auctioned off, while all I could do was stand next to a dilapidated water fountain in the town of Pomona and watch. That moment served as a decisive turning point that led me to seek justice from this Court.

I testify to this Court not for sympathy, but for a just interpretation of the law. If the rule of law can be so easily manipulated and deliver this stark inequity, as I have testified to, then it is evident that Congress has failed protect unfair and fraudulent practices in the free market. Nevertheless, this is Federal Court, and I plead for a remedy that will bring fair and equitable justice just like Congress intended the security laws to do.

The Defendant's declaration is a smokescreen hiding the economic truth of our transaction. It is evident from the Defendant's actions and the nature of the transaction that it constituted a security under the Acts. I ask this Court to recognize this truth and administer fair and equitable justice for my losses, thereby allowing me the chance to rebuild and move forward.

"I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Clinton Brown                                                                 06/11/2023