1  David Young, Esq. (SBN 55341)
2  Law Offices of David Young
3  12400 Wilshire Blvd., Suite 360
   Los Angeles, CA, 90025
4  Email: dyounglaw@verizon.net
5  Tel: (310) 575 0308 / Fax: (310) 575 0311

6  Attorney for Defendant STEVE SMEAD

7              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
8

9  CLINTON BROWN,                    Case No.: LACV23-02938-
                                     ODW(JCx)
10
                     Plaintiff,      **DEFENDANT'S MEMORANDUM**
11                                   **OF POINTS AND AUTHORITIES**
        vs.                          **IN OPPOSITION TO PLAINTIFF'S**
12                                   **MOTION FOR SUMMARY**
                                     **JUDGMENT**
13 STEVE SMEAD,
                                     ***[Filed Concurrently With***
14                   Defendant       ***DECLARATIONS OF DAVID***
                                     ***YOUNG, ESQ. AND STEVE***
15                                   ***SMEAD; DEFENDANT'S***
                                     ***STATEMENT OF GENUINE***
16                                   ***DISPUTES; [PROPOSED]***
                                     ***ORDER]***
17
                                     Judge:  Hon. Maame Ewuse-
18                                   Mensah Frimpong

19                                   Magistrate Judge: Hon. Karen L.
                                          Stevenson
20                                   Hearing Date:     NOT PROVIDED
                                     BY PLAINTIFF
21                                   Hearing Time: NOT PROVIDED
                                     BY PLAINTIFF
22                                   Place:  NOT PROVIDED BY
                                     PLAINTIFF
23

24                                   ACTION FILED:  04/19/2023

25

26

27

28
                              0
─────────────────────────────────────────────────────────────
**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................  1
LACK OF SUBJECT MATTER JURISDICTION...............................  2
LEGAL ISSUES PRESENTED.........................................................  3
THE NOTES AND DEEDS OF TRUST WERE NOT SECURITIES ..........  6
PROCEDURES ................................................................................ 11
CONCLUSION ................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page**

*Clinton Brown v. Clark R. Taylor*,
    USDC Case No. 2:22-cv-09203—MEMF-KS, Dk. Nos. 33 and 34 ....... 1
*Steel Co. v. Citizens for a Better Environment,*
    (1998) 523 US 83, 118 S.Ct. 1003 ........................................................ 2
*Gibson v. United States*
    (5th Cir. 2016) 809 F3d 807 .................................................................. 2
*California Save Our Streams Council, Inc. v. Yeutter*
    (9th Cir. 1989) 887 F2d 908 ................................................................. 2
*Slack Technologies, LLC, FKA Slack Technologies,*
    *Inc., et al. v. Pirani,*
    585 U.S. 6, para 4, (June 1, 2023) ....................................................... 6
*S.E,C. v. W. J. Howey Co. et al.,*
    328 U.S. 293 (1946) ................................................................... 8, 9, 10
*S.E.C. v.  Reynolds Enterprises, Inc.,*
    952 F.2d 1125 (1991) ..............................................................8, 10, 11
*Forman*,
    421 U.S. at 849, 95 S.Ct. at 2059 ....................................................... 11
*Citizens for Better Forestry v. United States Dep't of Agric.*
    (9th Cir. 2003), 341 F.3d 961 ............................................................... 12

**Statutes**

Cal. Corp. Code Section 25100(p) ...........................................................  8
F.R.C.P. 56 (d) ..................................................................................... 11
328 US at 298-299 ..................................................................................  9
15 U.S.C. Section 77(a) ........................................................................ 10
15 U.S.C. Section 78o(A)(1)................................................................... 10

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.

## INTRODUCTION

Plaintiff has filed what purports to be a Motion for Summary Judgment ("MSJ").  The Motion is improper in form and substance.  Among other matters, it sets no hearing date, or time and place for the hearing.  There was never a meet and confer prior to filing the MSJ; there is practically no record; not one iota of discovery has taken place; and an pending Motion to Dismiss, raising the same fundamental legal issues as the MSJ.

Plaintiff appears in the Action "*Pro Se"* and applied to appear "*in forma pauperis.*"  His website lists him as a well-educated man, holding "a Bachelor's degree in Political Science from Manhattanville College and a Master's from Norwich University."  In addition, he is not without legal training.  His website states that he holds a "Doctor of Law – JD – Purchasing Procurement/ Acquisitions and Contracts Management" from Northwestern California University School of Law, a law school accredited by the State Bar of California, with many graduates practicing law in California (Young Decl., ¶¶ 2-4).  Quite obviously, Plaintiff Clinton Brown is not your usual layperson, legal novice, "*Pro Se"* and "*in forma pauperis.*"  He has a substantial educational background, which includes graduate legal training.  He should be held to a reasonable standard while appearing before this Court.  His education, including his legal education, should not allow him to make frivolous, absurd, confusing and unfounded claims and filings in this Court.  In related cases before this Court, Judge Frimpong and Magistrate Judge Stevenson have already ruled that he has done so.  *Clinton Brown v. Clark R. Taylor*, USDC Case No. 2:22-cv-09203—MEMF-KS, Dk. Nos. 33 and 34.  In this case, he has done the same.

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.

## LACK OF SUBJECT MATTER JURISDICTION

On June 13, 2023, the Honorable Maame Ewusi-Mensah Frimpong ordered that the hearing on Defendant Steve Smead Motion to Dismiss be continued until September 21, 2023 (Dk. 23).  In her order, Judge Frimpong gave Plaintiff Clinton Brown, who had not opposed Defendant's Motion to Dismiss, an additional 14 days in which to file any opposition to Plaintiff's Motion to Dismiss.  Shortly thereafter, in response to Judge Frimpong's order, Plaintiff, on June 13, 2023, filed his NOTICE OF NO REPLY (Dk. 24), stating that he would not be filing any Opposition to Plaintiff's Motion. Plaintiff further stated that he would be relying on his Motion for Summary Judgement (MSJ) (Dk. 20), filed near midnight on Sunday evening, June 11, 2023.

Defendant's Motion to Dismiss is based in part on Rule 12b(1), lack of subject matter jurisdiction, and Rule 12b(6), failure to state a claim. With Plaintiff's withdrawal from any opposition to Defendant's Motion, the Motion to Dismiss is ripe for decision, and indeed must be decided first. If the Court has no subject matter jurisdiction, it has no power to grant summary judgement or any other Motion going to the merits of the action. *Steel Co. v. Citizens for a Better Environment* (1998) 523 US 83, 94-95, 118 S.Ct. 1003, 1012; *Gibson v. United States* (5th Cir. 2016) 809 F3d 807, 811; *California Save Our Streams Council, Inc. v. Yeutter* (9th Cir. 1989) 887 F2d 908, 912-913.  Local Rule 7-12 states that the failure to file an Opposition to Defendant's Motion to Dismiss may be deemed consent to the granting of the Motion.  Defendant's Motion to Dismiss should be granted, among other matters, for lack of subject matter jurisdiction. Therefore, this Court should not have to even consider this MSJ.

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**III.**

**LEGAL ISSUES PRESENTED**

Plaintiff's theory of this case is best explained in his "**PLAINTIFF'S STATEMENT**," attached to his MSJ.  Plaintiff states on the first and second pages:

> "In April 2020, I purchased property in Malibu, financed with
> two deeds of trust, one held by the Defendant.  This wasn't a
> simple loan, it was an investment, akin to the beginnings of a
> partnership.  The agreement, underpinned by the
> Defendant's expectation of profit, was in the property's value
> once a structure was built. In June 2020, the Defendant's
> involvement with me took on the characteristics of an
> investor that was further solidified with my purchase of a
> 160-acre solar property in Utah, thereupon the
> commencement of the solar permitting."

In Plaintiff's view, if you loan him money, secured by property, a Note, and Deed of Trust, and expect to be paid back, you have become a partner, joint venturer, shareholder, in Plaintiff's hopes, dreams, and schemes regarding the Property securing the loans.  This is so, since unless Plaintiff is successful in such endeavors, you will never be paid back.

Plaintiff further says, in his **PLAINTIFF'S STATEMENT**:  "On December 15, 2022, I decided to share this highly lucrative and confidential contract with the Defendant."  From this, Plaintiff derives the corollary that if he shares confidential information with you in order to obtain a loan, you are now in a fiduciary relationship with the Plaintiff. With Plaintiff, no relationship has a status of its own; rather, it is an unending adventure through all of Plaintiff's hopes, dreams, schemes,

failures and successes.

The fundamental legal issues presented by Plaintiff's Complaint and the MSJ are the same as set forth in Defendant's Motion to Dismiss, Dk. 11.

The Complaint has no numbered paragraphs, as required by FRCP 10, or any numbered pages.  It is contradictory and confusing. The allegations are in no way "simple, concise and direct."  FRCP 8(d)(1). What can be discerned from the Complaint is that at issue are three separate properties, two of which are in Malibu, and Hinkley, California [the "Harper" property], and the third property being in Utah.  The Complaint also states that the Defendant, Steve Smead, lent money to the Plaintiff regarding all three properties, and received in return three separate notes and deeds of trust for each individual property.  Where Defendant was in a second position on any of the properties, he eventually through purchase of the first positioned Note and Deed of Trust became the sole lienholder on each of the three properties.  Defendant had to purchase the First Deed of Trust because Plaintiff was not making payments, and if the holder of the First Deed of Trust foreclosed, Defendant would have been wiped out.  (Smead Decl., ¶¶ 8-9)

Plaintiff alleges in the Complaint that both he and the Defendant are residents of California.  There is no allegation that the issuance by the Defendant of the Notes and Deeds of Trust took place outside of California.

Plaintiff states in the Complaint that he is in the "solar energy business," discussed that business with Defendant, and that Defendant was "expressing interest in investing in the industry."  (Complaint, p. 2) Defendant further states that when he ran into financial difficulties in meeting his obligations, he offered to share "a proposed contract from a

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

solar development company for Harper that was worth over $10,000,000.00.  The Plaintiff offered to borrow $100,000.00 secured by the solar contract to delay the foreclosures for six months. The Defendant rejected these proposals."  (Complaint, p. 3)  The Defendant rejected these proposals because he had no intention of entering into any business relationship with Defendant involving his solar energy schemes.  (Smead Decl., ¶¶ 5, 6)  In January 2023, the Defendant foreclosed on all three properties.  (Smead Decl., ¶ 10)

The fact is, Plaintiff had no active solar energy business.  (Smead Decl., ¶ 6)  Plaintiff states, in his Complaint, that the Malibu Property, an empty lot, was purchased by him, in order to build his home.  (Complaint, p. 1)  The Hinckley, California Property (the "Harper Property"), was, and is still today, a chunk of empty desert.  The same goes for the Utah Property, which was, and still is today, a chunk of empty desert.  (Smead Decl., ¶ 2)  Plaintiff's solar energy schemes are just that, schemes, and not reality.  (Smead Decl., ¶ 6)  Defendant never became a "partner" of Plaintiff in any solar energy schemes.  (Smead Decl., ¶ 5)  Defendant never invested in any of Plaintiff's solar energy schemes.  (Smead Decl., ¶ 5)  Defendant only lent money to Plaintiff, secured by the realty involved in this litigation.  (Smead Decl., ¶ 2)

Plaintiff's Complaint then claims that all these disputed factual issues constitute a legal issue.  For Plaintiff, the giving of a Note and Deed of Trust on each individual property, is, in reality, an "investment contract" in his solar schemes.  This includes the Note and Deed of Trust on the Malibu Property, which is to be Plaintiff's home.  The Plaintiff then wants this Court to declare the "investment contract" a "security."  Pursuant to the Securities Acts of 1933 and 1934, and other Federal Securities laws.

Plaintiff's MSJ expands on the factual allegations in his Complaint.

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

While claiming that although Plaintiff is not an accredited investor, the Defendant is.  Defendant denies that he is an "investor" of any type, accredited or not, in any of Plaintiff's solar schemes.  (Smead Decl., ¶ 5)

The MSJ then goes on to discuss a series of legal standards, including the Securities Acts of 1933 and 1934, Federal Securities laws in general, investment contracts, and fiduciary allegations, without stating what fiduciary relationship he had with Defendant.  Plaintiff then ends by stating that:  "THEREFORE, '[u]nless a registration statement is in effect as to a security,' it is unlawful 'to sell such security.'" §77e(a). (*Slack Technologies, LLC, FKA Slack Technologies, Inc., et al. v. Pirani*, 585 U.S. 6, para 4, (June 1, 2023).

Plaintiff states that the supposed "security," *i.e.*, his Notes and Deeds of Trust, were not registered.  He alleges no exemption from registration.  By Plaintiff's convoluted reasoning, he sold the "security" in violation of the 1933 and 1934 Securities Acts.  These issues have been dealt with by Defendant in his Memorandum in Support of his Motion to Dismiss.

**IV.**

**THE NOTES AND DEEDS OF TRUST WERE NOT SECURITIES**

The Defendant, Steve Smead, only made personal loans to the Plaintiff, Clinton Brown, secured by three (3) separate real estate properties.  As part of the personal loan transaction, the Plaintiff received a Note and Deed of Trust for each of the separate properties.  (Smead Decl., ¶ 2)  The notes and deed of trust were only between Plaintiff and Defendant.  No other parties, other than the trustee, were parties to these documents.  (Smead Decl., ¶ 3)

Neither the notes nor deeds of trust were fractionalized among any other parties, nor were they part of a series of notes of equal priority

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

secured by the same trust deed on the real estate involved in this action. (Smead Decl., ¶ 4)

Plaintiff had no interest in and was not involved in any of the businesses or solar schemes of Clinton Brown of which the above-referenced properties were a part.  (Smead Decl., ¶ 5)  Plaintiff did not expect to, nor did he participate in, the profits from any of the businesses or solar schemes of Clinton Brown.  Plaintiff's only expectation was that he would be paid the principal of the loan, and interest, as stated in the notes. (Smead Decl., ¶ 7)  Despite Plaintiff's hyperbolic rhetoric and fanciful assertions, that is the reality of the situation.  The Notes and Deeds of Trust given by Plaintiff to Defendant to secure his loan from Plaintiff, do not constitute securities pursuant to the Securities Acts of 1933 and 1934, or any other Federal securities laws.

The Plaintiff does not and cannot cite one case or statute that subjected a sole lender, who held an undivided, non-fractionalized note and deed of trust, issued by a sole borrower, to the securities laws of the United States.  To do so, would up-end much of the mortgage industry in the United States.  That is what banks and other commercial lenders do all the time.  It would make the Federal courts the arbiters of the home mortgage industry in the United States.  Congress never intended that result by passing the 1933 or 1934 Securities Acts.

A deed of trust involves a lender, officially known as a beneficiary, that the trust protects. It also involves a borrower, otherwise known as a trustor.  The borrower establishes the trust. The trustee is a third party holding the entrusted property, until a loan or debt is paid in full.  In a real estate transaction, a lender gives the borrower money in exchange for one or more promissory notes linked to a trust deed. The deed transfers legal title to the real property to an impartial trustee, which may be a title

7

company, escrow company or bank, which holds the trust deed as collateral for the promissory note.  The equitable title -- the right to obtain full ownership – remains with the borrower, as does full use of and responsibility for the property.  In the case of default, a trust deed involves non-judicial foreclosure.

The lender is looking for repayment of the principal plus interest set forth in the note.  Typically and traditionally, a deed of trust involving a sole borrower, and a sole lender, as set forth in Plaintiff's Complaint, secured by a note stating the obligation to repay principal, and the rate of interest, has not been subject to the securities laws, or is exempt from such laws. Cal. Corp. Code Section 25100(p) exempts as a security:  "A promissory note secured by a lien on real property, which is neither one of a series of notes of equal priority secured by interests in the same real property nor a note in which beneficial interests are sold to more than one person or entity."

Plaintiff has relied on two classic cases in support of his claim that the Notes and Deeds of Trust given to Defendant by Plaintiff constitute securities.  The first is *S.E.C. v. W. J. Howey Co. et al.*, 328 U.S. 293 (1946) ("Howey").  The second is *S.E.C. v.  Reynolds Enterprises, Inc.*, 952 F.2d 1125 (1991) ("Reynolds").  In both cases, the issue was whether the activities of *Howey* and *Reynolds* constituted the offering of securities. The answer in both cases was that they did.

*Howey* concerned whether a leaseback agreement was legally an investment contract (one of the types of investments that is listed as a "security" under the Acts).  In *Howey*, two Florida-based corporate Defendants offered real estate contracts for tracts of land with citrus groves.  The Defendants offered buyers the option of leasing any purchased land back to the Defendants, who would then tend to the land,

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

and harvest, pool, and market the citrus.  As most of the buyers were not farmers and did not have agricultural expertise, they were happy to lease the land back to the Defendants.

The Supreme Court, in its decision, held that the Defendants' leaseback agreement is a form of security and developed a landmark test for determining whether certain transactions are investment contracts (and thus subject to securities registration requirements).

In *Howey*, the Supreme Court, in a classic formulation, found that an investment contract "means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party...."  328 US at 298-299.  If so, the transaction is subject to disclosure and registration requirements under the Securities Act of 1933 and the Securities Exchange.

Under the *Howey* test, a transaction investment is an investment contract if: (1) It is an investment of money; (2) There is an expectation of profits from the investment; (3) The investment of money is in a common enterprise; and (4) Any profit comes from the efforts of a promoter or third party.  This certainly is not what the Defendant did in loaning money to the Plaintiff, and securing his loan with a note and deed of trust.  Defendant had no interest in, and was not involved in, any of the business of the Plaintiff referred to in the Complaint.  Defendant did not expect to, or did he participate in any profits of Plaintiff.  His only expectation was that he would be paid the principal of the loan, and interest, as stated in the notes. (Smead Decl., ¶ 7)

Every lender wishes his borrower economic success, for the lender wants to be paid back.  That does not make, as Plaintiff claims, the lender an investor in the borrower's business.  Defendant still remains a lender,

9

not a joint venturer, partner, or shareholder in Defendant's solar schemes.
Defendant has not cited one case where the lender/borrower relationship
creates a fiduciary relationship.  That simply is the Defendant's fantasy,
neither fact nor law.

In *Reynolds*, *supra*, Defendants Richard Reynolds and R. G.
Reynolds Enterprises, Inc. sold an investment program, which Reynolds
variously described as a "Managed Account," a "discretionary account; the
"30% Net Investment Program," and the "Loan Program."  He had a
financial talk show on radio, a television show and published a monthly
newsletter.  In 1987, Richard Reynolds and Reynolds Enterprises began to
sell interest in gold ore refining.  Investors received, for a single price, a
sales contract, a refining contract and a security agreement.  The SEC
brought an action charging that Richard Reynolds and Reynolds
Enterprises violated the antifraud provisions of the Securities Act and
violated the registration provision of 15 U.S.C. Section 77(a) by offering
and selling unregistered securities, and 15 U.S.C. Section 78o(A)(1) by
selling securities without registering as a broker-dealer.  In finding that the
investor's interest in the Managed Account were securities, the Ninth
Circuit applied the classic *Howey* test.  Again, this certainly is a far cry
from what the Defendant did in loaning money to the Plaintiff and securing
his loan with a note and deed of trust.  A loan of this nature, with a
standard Note and Deed of Trust, between two California residents and no
other party except the trustee, does not constitute a security pursuant to
the Securities Acts of 1933 and 1934, or any other Federal securities laws.

Although Defendant denies that the securities laws of the United
States are involved in any way with the transactions stated in Plaintiff's
Complaint, despite Plaintiff's claims, Defendant did not offer to sell
anything.  Defendant is merely a lender, seeking "security" for his loan

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

1   through a note and deed of trust issued by Plaintiff, backed by property

2   owned by Plaintiff.  It is the Plaintiff that is offering to "sell" and issue to

3   Defendant his note and deed of trust, if Plaintiff will lend him money.  The

4   Federal cases and statutes cited by Plaintiff apply to the activities of an

5   issuer of a security, not the purchaser of a security.  As was stated in *SEC*

6   *v. R.G. Reynolds Enters,* (9th Cir. 1991) 952 F.2d 1125, 1133, "Moreover,

7   we construe the Securities Acts broadly to effectuate Congress purposes

8   to protect investors.  *Forman*, 421 U.S. at 849, 95 S.Ct. at 2059."

9      Plaintiff turns *Reynolds* on its head.  Claiming he has sold an

10  unregistered, unexempted security, in violation of Federal Securities laws,

11  he now invokes those self-same laws against a lender, not an investor.

12  Defendant does this in order to seek revenge against this lender

13  Defendant, who lawfully foreclosed on the subject Properties, when

14  Plaintiff could not meet his financial obligations.  Any other lender would

15  have done the same.

16                              **V.**

17                         **PROCEDURES**

18     Plaintiff's MSJ is grossly premature.  Defendant's Motion to Dismiss

19  must first be decided.  With no discovery having commenced, and

20  practically no record, this case bristles with factual disputes.  With no

21  record, because of no discovery, Opposition to Plaintiff's MSJ is

22  particularly difficult.  This Court has the authority to dismiss or stay this

23  Motion, pending adequate discovery.  F.R.C.P. 56 (d).

24     Plaintiff's MSJ is a parody of what should be before this Court.  For

25  example, Plaintiff states no hearing date, time, or place for the MSJ.

26  Plaintiff presents to the Court what purports to be his personal log of

27  emails and phone calls, but with no emails or transcripts to verify anything.

28  Nothing in the MSJ is in proper form, which makes for a confusing and

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

contradictory presentation.  As stated previously, the Plaintiff is a highly educated individual, with legal training and a *Juris Doctor* degree.  Plaintiff is cavalierly abusing the procedures set by this Court.  With Plaintiff's background, this is not out of lack of knowledge, but indifference to any consequences for so doing. Plaintiff is causing the Court to waste judicial resources on matters that should not at this time be before it.

In deciding whether a case presents any questions of material fact under applicable substantive law, the Court must view the evidence in the light most favorable to Defendant.  *Citizens for Better Forestry v. United States Dep't of Agric.* (9th Cir. 2003), 341 F.3d 961, 969.  Even taken at Plaintiff's best, however, and assuming everything in Plaintiff's favor, summary judgment is not warranted and should not be granted.

## VI.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Steve Smead respectfully requests this Court to deny Plaintiff's Motion for Summary Judgment.

Dated: June 23, 2023                     Respectfully submitted,

LAW OFFICES DAVID YOUNG


By:___/s/ DAVID YOUNG_____
       Attorney for Defendant
       STEVE SMEAD

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and am not a party to the within action. My business address is Law Offices of David Young, 12400 Wilshire Boulevard, Suite 360, Los Angeles, CA 90025.

     On June 24, 2023, I served **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action by placing a true copies thereof enclosed in a sealed envelope addressed as follows:

CLINTON BROWN
16821 Edgar Street
Pacific Palisades, CA  90265
Phone: (310) 487-6453
Email: clinton@atlasinc.solar
*In Pro Per*

     ☒    **BY MAIL AS FOLLOWS:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under the practice it would be deposited with the U.S postal service on that same day with postage thereon fully prepaid at Ls Angeles, California in the ordinary course of business.

     ☒    **BY E-MAIL**: I caused the above document to be electronically transmitted to the e-mail address listed above.

     ☒    **(Federal)**  I declare that service was made at the direction of a member of the Bar of this Court.

     Executed on June 24, 2023, at Los Angeles, California.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

                   /s/   David Young