CLINTON BROWN, Pro Se
16821 Edgar Street
Pacific Palisades, CA 90272
clinton@atlasinc.solar
310-487-6453

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLINTON BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>STEVE SMEAD<br><br>Defendant. | CASE NO. 2:23-cv-02938-MEMF-KS<br><br>**Reply to Opposition to Motion for Summary Judgment**<br><br>**Judge:** Honorable Maame Ewusi-Mensah Frimpong<br><br>**Magistrate Judge:** Karen L. Stevenson<br><br>**Action Filed:** 04/19/2023<br><br>**Action Due:** 05/22/2023 |

**REPLY TO OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The two questions of law before this Court are: Was there an offer and sale of an investment contract, thus an unregistered security? Was there a misappropriation of confidential information in connection with the offer and sale of an unregistered security?

**STANDING AND SUBJECT MATTER JURISDICTION**

The starting point in every case involving construction of a statute is the language itself. *(Landreth Timber Co. v. Landreth, 471 U.S. 681, 685, II, 105 S. Ct. 2297 (1985))*. To establish standing to sue in Federal court, a Plaintiff must show that it has suffered a concrete and particularized injury, one that is both traceable to

1

the Defendant and redressable by a Court Order. (*United States v. Texas, No. 22-58, 599 U.S. ___ (June 23, 2023) (Gorsuch, J., concurring) (citing Lujan v. Defenders of Wildlife, 504 U. S. 555, 560–561 (1992))*. To survive a motion to dismiss, a Complaint must contain sufficient factual matter . . . to state a claim for relief that is plausible on its face. *(Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. This standard generally only requires a short and plain statement of the claim showing that the pleader is entitled to relief. Moreover, *F.R.C.P. 9(b)* states that an allegation of fraud or mistake must state with particularity the circumstances constituting fraud. Specifically, the circumstances required by are the "who, what, when, where, and how" of the fraudulent activity. (*Novobilski v. Specialized Loan Servicing, LLC, No. 2:22-cv-00147-MEMF-MAR, 2022 U.S. Dist. LEXIS 148499 (C.D. Cal. Aug. 16, 2022) (citing Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993))*. *(Note: F.R.C.P. 9(b) particularity standards are within the discretion of the Court to consider the exact, who, what, when, where, how, as this is a REPLY not a conclusion of law*. (Map, Dk. 29, 14-16)

| Who, What, When, Where, How, AND Why.* | Pinpoint Citations |
|---|---|
| Who: Smead. (Dk. 1, 1, line 24) | |
| What: Misappropriation of property. (Dk. 1, 3, lines 20-23), (Dk. 1, 3 24-28) | |
| When: May 2020 – January 2023. (Dk. 1, 2, line 3), (Dk. 1, 4, line 1-2) | |
| Where: California, Utah. (Dk 1, 2, lines 9-16), (Dk. 1, 3, line 9) | |
| How: Trust and Confidence – a fiduciary-like relationship. (Dk. 1, 2, lines 3-4), (Dk. 1, 2, lines 11-16), (Dk. 1, 2, lines 20-21), (Dk 1, 3, line 1). | |
| Why: Money | |

Even if the Defendant prevails on the 'jumbled and confusing' grounds, leave to amend a dismissed Complaint should be freely granted unless it is clear the Complaint could not be saved by any amendment. (*Fed. R. Civ. P. 15(a); (Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008))*. If that is what the Court shall decide, given that a succinct five (5) page Complaint prompted a voluminous forty-seven (47) page reply, may it please the Court to have some mercy with a few particularities as to the deficiency. (Dk 1, Dk. 11). With that said, the Plaintiff has standing to submit to this Court's jurisdiction and the Defendant is subject to it as well.

The Acts give this Court exclusive jurisdiction in this Federal question because the Plaintiff has chosen this forum over State court. (*Section 22(a) of the 1933 Securities Act).* Unfortunately, or fortunately for the Defendant, the Plaintiff has chosen to subject himself to Federal jurisdiction and that choice is his alone*, in this case*. Yes, this suit could have been brought in State court under the Blue-Sky laws or concurrent jurisdiction, in respect to the 1933 Securities Act violation, and thus there's no water in the Defendant's pail. This case is about violations of the *Acts.* Frankly, the Defendant has an elementary interpretation of Federalism and a Plaintiff's right to forum selection. *(Mallory v. Norfolk Southern Railway Co., 600 U.S. op. slip. 5, (June 27, 2023)*. Furthermore, diversity jurisdiction is an issue when the case has nothing to do with a Federal question or the Constitution (i.e. unlike this controversy) and some other exceptions.

## INTERSTATE COMMERCE

Whether or not this transfer was subject to Federal security laws is wholly different than what Congress says is interstate commerce. For example, let's take the assignment of the Nevada deed of trust which was mailed from California to Nevada for recording. Or in the alternative, the Defendant drove the document to the Recorder's office in Nevada, or flew an airplane from California to Nevada, or he

3

walked the document across the "chunk of empty desert." (Dk. 27, 7, 13-14); (Dk. 27-2, 2, No.2). *It doesn't matter.* By its terms, the Commerce Clause grants Congress the power to regulate Commerce . . . among the several States. (*Raymond Motor Transp., Inc. v. Rice, 434 U. S. 429, 440 (1978) (quoting Art. I, §8, cl. 3).* Furthermore, Congress has broad power to regulate interstate commerce through the Commerce Clause and Congress decides what that means, and this Court decides how far and wide within the limits of the Constitution that power relies.[1]

Another example, the term "federally related transaction" means *any* real estate-related financial transaction which— (A) a federal financial institutions regulatory agency or the Resolution Trust Corporation engages in, contracts for, or regulates; *and* (B) requires the services of an appraiser. (*12 U.S.C. § 3350(4)).* So, if the Defendant stores his money underneath his mattress or in the cushions of his couch and thus the real estate transaction was not in a regulated institution; the wiring or transfer of funds to a Utah or Nevada escrow was interstate commerce *across state lines* and can be regulated by Congress. (Emphasis added). (*Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376, 1859 (2010) (codified as amended at 12 U.S.C. § 3353); (15 U.S.C.§ 42, Interstate Land Sales Full Disclosure Act)*. There's a common thread on this needle and that is that Congress has the authority to regulate **ANY** interstate commerce within the meaning of a statute that isn't beyond the limits of the Constitution. *(Art. I, §8, cl. 3)*. Thus, the Defendant cannot say that interstate commerce did not take place in the controversy at bar. Private contracts cannot supersede Federal security laws. *(Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S. Ct. 1917 (1989)).* Organized or *face-to-face commerce* can be subject to Federal security laws. *(SEC v. Zandford, 535 U.S. 813, 822, para 1, 122 S. Ct. 1899 (2002))*.

---

[1] Federalist Papers, No. 42, p. 267, (C. Rossiter ed. 1961) (J. Madison).

(Emphasis added). (*i.e., intrastate*). Again, whether this transfer is subject to Federal security laws is a legal conclusion this Court will make, but it is indisputable that interstate commerce did in fact occur and that this Court has subject matter jurisdiction.

## A MOTION FOR SUMMARY JUDGMENT HAS A PURPOSE

To withstand a motion for summary judgment, an opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. (*F.R.C.P. 56(a)*). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. (*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*). In the absence of such facts the moving party is entitled to judgment as a matter of law. (*Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *(SEC v. Loomis, 969 F. Supp. 2d 1226, 1233, (E.D. Cal. 2013))*.

*F.R.C.P. 56(e)* requires that a party go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. (*Celotex Corp. v. Catrett, at 323-24)*). The nonmoving party may not rely on the mere allegations in the pleadings to preclude summary judgment. *(Nilsson, Robbins et al. v. Louisiana Hydrolec, 854 F.2d 1538, 1542 (9th Cir. 1988)*). In responding to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. *(SEC v. Goldstone, No. CIV 12-0257 JB/GBW, 2015 U.S. Dist. LEXIS 116847 (D.N.M. Aug. 22, 2015))*. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt the unreasonable version of the facts

5

for purposes of ruling on a motion for summary judgment. *Id.* In deciding a motion for summary judgment, the Court draws all inferences and views, all evidence in the light most favorable to the nonmoving party and so where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *(Loomis, supra).* Although the mere fact that no opposition is properly cited does not excuse the moving party from meeting its burden on the summary judgment motion. (Dk. 27). The District Court is not required to search the record, *sua sponte,* for some genuine issue of material fact. (*Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029-30 (9th Cir. 2001)).* It may rely entirely on the evidence designated by the moving party showing no such triable issue. *Id.* The District Court need not examine the entire file for evidence establishing a genuine issue of face where the evidence is not set forth in the opposition papers with adequate references, so that it could conveniently be found. *(L.R. 56, 1-4, supp. F.R.C.P. 56).*

## ANALYSIS

The fundamental purpose behind the Securities Acts is to eliminate serious abuses in a largely unregulated securities market. (*United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 849, 95 S. Ct. 2051, 44 L. Ed. 2d 621 (1975)).* The Supreme Court has observed that Congress determined that the best way to achieve its goal of protecting investors was to define the term 'security' in sufficiently broad terms to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security. (*Reves v. Ernst & Young, 494 U.S. 56, 61, 110 S. Ct. 945, 108 L. Ed. 2d 47 (1990)).* Congress, therefore, enacted a definition of security that is sufficiently broad to encompass virtually *any* instrument that might be offered or sold as an investment. *Id.* (Emphasis added). The term security is used in the Acts in slightly different formations but is virtually identical in meaning. *(SEC v. Edwards, 540 U.S. 389, 393, II. 124 S. Ct. 892 (2004) (citing*

*Reves, supra, 61, n.1))*. Investment contracts are included in the definition of a security under both Acts. (*15 U.S.C. 77b(a)(1); 15 U.S.C. 78c(a)(10)*. The Supreme Court has defined an investment contract as a transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. *(SEC v. W. J. Howey Co., 328 U.S. 293, 298-99, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946))* An investment contract is generally treated as a security unless it qualifies for a registration exemption or aligns with a "family resemblance" of an exempted instrument. Otherwise, it is not exempt. (*Reves, 494 U.S. at 65-66*). Was the transaction in question an investment contract and thus a security? *(Dk. 21, No. 1-37)*.

In *Reves* the Supreme Court set forth four (4) criteria to answer that question objectively. The criteria evaluated include the (1) purpose of the transaction, (2) plan of distribution, (3) reasonable expectations of the investing public, and (4) if an alternative application of the law would render the Acts inapplicable. First, the purpose of the offer and sale was to generate profit from the investment of money, which was anchored on the specific usage of the properties. The properties were acquired in the open market exclusively for investment purposes. Despite the possibility that a different buyer might have utilized the property for a different purpose, potentially providing an exemption, there's no doubt that in this case, the properties were purchased for investment purposes. Second, a structure was established to manage the distribution of the investment returns. Importantly, if these returns did not materialize, within a surprisingly short period of time for a solar venture, the distribution plan allowed for the discretionary seizure of the assets by the Defendant. Third, given the nature of the enterprise, solar development, it's a business venture that relies heavily on the specific use of property. The investment

7

agreement between the parties, *prima facia*, emphasizes this dependency. It's an undeniable fact that solar development demands significant time and resources to succeed. There's a public expectation that property rights shouldn't be easily manipulated from their initial purpose to suit an investor's whims, leaving the entrepreneur high-and-dry. Fourth, although a State's Blue-Sky laws can guide Federal security laws to combat fraud and protect the public, the heightened standard Congress sought with the Acts were designed to protect more broadly; including a scheme not easily identifiable under State law or where recourse is unavailable once the scheme is identified. In this particular scheme, the Plaintiff had the sole duty of enhancing the property's value by obtaining solar development permits with the goal of generating payment for the Defendant and himself, thus the common venture. The Defendant benefited from the fruits of the Plaintiff's labor without contributing any effort, while also having the power to dictate the common venture's success or failure. Ultimately, when the Defendant unilaterally decided to sabotage the venture and seize the properties, the Plaintiff lost their equity stake. Under State law the Defendant was entitled to all the equity despite not having contributed anything to the investment, except *controlling* capital. (Emphasis added).

*In summa*, the Defendant wanted to benefit from the profit in the properties, which could come either from the success of the Plaintiff's venture or from the seizure of the Plaintiff's assets. This created a zero-risk situation for the offeror and a no-win scenario for the offeree. The security offered by the Defendant is not among the instruments exempted by the Supreme Court, nor does it resemble any of those exempted instruments. Thus, the instrument issued, offered, and sold by the Defendant was indeed a security, as defined in the Acts. The Court has a responsibility to assess transactions among the several States to ensure that the largely unregulated securities market conforms to the protection that Congress

demanded, and as such, that Citizens demand. For if property rights are so easily manipulated then so too can the rights of men. (Citations omitted).

## 1933 SECURITIES ACT VIOLATION

*Section 5* of the Securities Act of 1933 prohibits any person, directly or indirectly, from using instruments of interstate commerce or the mails to offer or sell a security unless a registration statement is in effect as to such security. *(15 U.S.C. 77e(a); 15 U.S.C. 77e(c))*. A *prima facia* violation of these provisions is established when (1) securities are offered or sold for which no registration statement was in effect; (2) the offering or sale is made using any means of interstate commerce or of the mails; and (3) Defendant, directly or indirectly, offers or sells the securities. (*SEC v. Cont'l Tobacco Co., 463 F.2d 137, 155 (5th Cir. 1972))*. In reviewing whether § 5 was violated, the focus is properly placed on economic reality rather than form; the inquiry is whether "in substance" the securities were issued without registration or an exemption. *(Loomis, supra)*. The Defendant contends that he did not offer or sell unregistered securities, or even intend to. Second, he argues that he was not associated with the Plaintiff's business and, in the alternative, that the securities, if they were so, qualified for an exemption from the registration requirement. Third, the Defendant argues that the instruments were exempt based on their characteristics (i.e., name). All fail as to the merits.

The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities. *(Swenson v. Engelstad, 626 F.2d 421, 424 (5th Cir. 1980))*. Scienter is not required under *Section 5* of the Securities Act of 1933. (*SEC v. Parkersburg Wireless Ltd. Liability Co., 991 F. Supp. 6, 9 (D.D.C. 1997))*. Neither negligence nor scienter is an element of a *prima facie* case under *Section 5* of the Securities Act of 1933. *(SEC v. Friendly Power Co. LLC, 49 F. Supp. 2d 1363, 1367* (S.D. Fla. 1999)). Even if the Defendant did not intend to sell securities he would not be released from liability. *(S.E.C. v. Current Financial Services, Inc., 100 F.*

9

*Supp. 2d 1, 6, (D.D.C. 2000))*. The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities and "[I]t therefore is irrelevant whether [the Defendant] knew that he was selling a security." *Id*. and "[u]nless a registration statement is in effect as to a security," it is unlawful "to sell such security." *§77e(a)*. *(Slack Technologies, LLC, FKA Slack Technologies, Inc., et al. v. Pirani, 585 U.S. 6, (2023))*. The Defendant claims that he made personal loans to the Plaintiff and therefore he cannot be held liable for the offer or sale of unregistered securities. The record shows differently. The Defendant and Plaintiff had voluminous exchanges of information and hours upon hours of phone conversations. The loans were not personal loans. Nor is the transaction exempted as a private transaction. A private offering involves a class of potential investors that have no need for the protection of the registration process — i.e., investors that have access to the kind of information that a registration statement would disclose. (*SEC v. Ralston Purina Co., 346 U.S. 119, 125, 73 S. Ct. 981, 97 L. Ed. 1494 (1953))*. As the instant matter makes abundantly clear, the Plaintiff was denied the particular kind of information required by the Act. This includes regulations regarding the offering and sale of a security which, consequently, impact whether the security can be sold after particular times and dates or through a tender offer. Lastly, the Defendant argues that an exemption from registration for securities both offered and sold exclusively to the residents of one state. (*15 U.S.C. 77c(a)(11))*. Indeed, such an exemption does exist, but the evidence in the record, including a deed of trust recorded in Utah, notarized in New York, in addition to, the offer and sale of a Nevada deed of trust clearly supports that there was interstate communication in the offer or sale of an unregistered security. This is an irrefutable fact. Thus, the Defendant offered and sold an unregistered security as an investment contract and is strictly liable for that action.

### **1934 SECURITIES EXCHANGE ACT VIOLATION**
### **NOTES AND DEEDS CAN BE SECURITIES**

*Section 10(b)* and *Rule 10b-5* promulgated thereunder in the Securities and Exchange Act of 1934, prohibit the use of fraudulent schemes and devices in connection with an offer or sale of securities. (*15 U.S.C. 78j(b); 17 C.F.R. 240.10b-5).* The 1934 Act allows investors to recover for fraud in the sale of unregistered shares upon proof of scienter. *(Slack Technologies, LLC, FKA Slack Technologies, Inc., et al. v. Pirani, 585 U.S. 4, (2023).* The requisite mental state necessary for proof of violations of the Securities Act of 1933 *Section 17(a)(1)*, the Securities Exchange Act of 1934 *Section 10(b)* and *Rule 10b-5* is intent to defraud. *(Aaron v. SEC, 446 U.S. 680, 695-96, 100 S. Ct. 1945, 64 L. Ed. 2d 611 (1980)).* Evidence of recklessness is sufficient to show intent to defraud. *(SEC v. Dain Raushcer, Inc., 254 F.3d 852, 856 (9th Cir. 2001)).* The misappropriation theory holds that a person commits fraud in connection with a securities transaction if a fiduciary uses undisclosed information to their own advantage in a security transaction; it is defrauding the principal by taking exclusive use of that information. *(United States v. O'Hagan, 521 U.S. 642 652-653, 117 S. Ct. 2199 (1997)).* Nonpublic material confidential information is property of the business operation. *(Carpenter v. United States, 484 U.S. 19, 26, (1987) (citing Ruckelshaus v. Monsanto Co., 467 U. 8. 986, 1001-1004 (1984)).* The Defendant had a fiduciary-like relationship with the Plaintiff because the relationship was based upon trust and confidence. *(United States v. Kosinski, 976 F.3d 135, 146, (2d Cir. 2020)).* In an inside-trading case this fraud derives from the inherent unfairness involved where one takes advantage of information intended to be available only for a corporate purpose and not for the personal benefit of anyone. *Id.* Violations of *Section 10(b)* and *Rule 10b-5* require a showing of recklessness, which is conduct that consists of a highly unreasonable act, or omission, that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the Defendant or is so obvious that the actor must have

11

been aware of it. *(Dain Rauscher, supra) (quoting Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990) (en banc)).* The Ninth Circuit has held that the "in connection with" test is as broad and flexible as is necessary to accomplish the statute's protective purposes and is met if the alleged fraud somehow touches upon or has some nexus with any securities transaction. *(SEC v. Sabrdaran, No. 14-cv-04825-JSC, 2015 U.S. Dist. LEXIS 25051 (N.D. Cal. Mar. 2, 2015) (citing SEC v. Rana Res., Inc., 8 F.3d 1358, 1362 (9th Cir. 1993)).*

Congress didn't write [The Acts] statutes in some impossible language that Judges and Citizens alike must wonder upon the meaning of the words. The Acts were meant to provide prevention, in addition to, a remedy to wrongs committed in a free and fair market. No government can achieve justice for every fraud on its own, thus Congress provided a private path of action for those willing to burden the financial and emotional costs, neither which are greater nor less than the other. The Acts were conceived to cover any instrument no matter how clever the parties to which the Acts give great deference and opportunity. (i.e., accredited investors). All that glitters is not gold. (Citations omitted).

**THEREFORE**, let the Plaintiff break it down for the Defendant. Smead chose to invest money in Clinton Brown's development properties, Clinton Brown did all the development work to increase the value of the properties, and Smead solely benefited from this investment in the development properties by taking what is Clinton Brown's and making it his own. It's as simple as that. There's no law or fact that can contradict that truth.

So, Judge, is this a ball or strike?[2]

---

[2] Roberts, J. G. (2005). Confirmation Hearing on the Nomination to be Chief Justice of the United States. Testimony before the Senate Committee on the Judiciary, 109th Congress, 56. Hart Senate Office Building. Washington, D.C.

"I, **Clinton Brown**, solemnly swear that I am submitting this filing with the Court, and that:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

"I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Clinton Brown                                              06/30/2023

Harper



United States Geological Survey National Map Viewer, showing location of 42829 Harper Lake Rd, Hinkley, CA, 92347 available at https://apps.nationalmap.gov/viewer/ (last visited 06/26/2023).

Malibu



United States Geological Survey National Map Viewer, showing location of 21472 Calle del Barco, Malibu, CA 90265 available at https://apps.nationalmap.gov/viewer/ (last visited 06/26/2023).

Utah



United States Geological Survey National Map Viewer, showing location of 16390 S Black Rock Cutoff Rd, Fillmore, Utah 84631 available at https://apps.nationalmap.gov/viewer/ (last visited 06/26/2023).