UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>                    Plaintiff,<br><br>          v.<br><br>STEVE SMEAD,<br><br>                    Defendant. | Case No.:  2:23-cv-02938-MEMF-KS<br><br>**ORDER DENYING FOR JUDICIAL NOTICE, GRANTING MOTION TO DISMISS, AND DENYING MOTION FOR SUMMARY JUDGMENT [ECF NOS. 11, 20, 26]** |

Before the Court are a Request for Judicial Notice filed by Plaintiff Clinton Brown (ECF No. 26), a Motion to Dismiss filed by Defendant Steve Smead (ECF No. 11), and a Motion for Summary Judgment filed by Plaintiff Clinton Brown (ECF No. 20). For the reasons stated herein, the Court DENIES Clinton Brown's Request for Judicial Notice, GRANTS Steve Smead's Motion for Summary Judgment, and DENIES WITHOUT PREJUDICE Clinton Brown's Motion for Summary Judgment.

/ / /

/ / /

1

# BACKGROUND

## I. Factual Background[1]

Plaintiff Clinton Brown ("Brown") is an individual residing in California. Compl. at 1.[2] Defendant Steve Smead ("Smead") is also an individual residing in California. *Id.*

In April 2020, Brown purchased a vacant lot on Calle del Barco in Malibu, California (the "Malibu Property"). *Id.* at 2. Brown intended to develop the Malibu Property into a home. *Id.* Brown financed the purchase of the Malibu Property via a deed of trust[3] with the seller.

In July 2020, Brown purchased a property on South Black Rock Cutoff Road in Fillmore, Utah (the "Utah Property"). *Id.* Brown purchased the Utah Property for $50,000. *Id.* at 3. Brown intended to develop a solar farm on the Utah Property and submitted various applications to make this planned solar farm possible. *Id.* at 2.

In November 2020, Brown contracted to purchase a vacant lot on Harper Lake Road in Hinkley, California (the "Harper Property"). *Id.* Brown requested Smead's assistance in financing this purchase. *Id.* Brown executed a deed of trust with the seller but needed additional capital from Smead. *Id.* Smead and Brown initially planned to execute a $150,000 deed of trust with a payoff of $300,000 upon maturity, but the escrow agent "rejected the terms as unserious." *Id.* Smead and Brown executed a deed of trust for the Harper Property for $150,000 with 8% interest. *Id.* The deed of trust with Smead was secondary to the deed of trust Brown executed with the property seller. *Id.*

---

[1] Unless otherwise indicated, the following factual background is derived from Plaintiff Clinton Brown's Complaint. ECF No. 1 ("Complaint" or "Compl."). For the purposes of the Motion to Dismiss, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

[2] The Complaint does not contain numbered paragraphs and so the Court cites to page numbers within the complaint rather than paragraphs. Brown is reminded that, despite his pro se status, he is obligated to comply with the Federal Rules of Civil Procedure and the Local Rules. *See* C.D. Cal. L.R. 83-2.2.3 ("Any person appearing pro se is required to comply with these Local Rules, and with [the Federal Rules of Civil Procedure]"); *see also* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs").

[3] Although the Complaint does not make this clear, the Court understands a "deed of trust" to refer to a loan agreement between a property purchaser and a lender where title to the property is held by either the lender or a third-party trustee (as opposed to the purchaser) until the loan is repaid. *See* Deed, Black's Law Dictionary (11th ed. 2019).

In May 2021, the seller-financed deed of trust on the Malibu Property reached maturity. *Id.* Smead and Brown executed a deed of trust on the Malibu Property, with Smead paying off the previous seller-financed deed of trust. *Id.* Brown had other financing options, but Smead offered Brown a significantly lower interest rate than Brown could have obtained from others. *Id.* Thus, Smead came to hold the only deed of trust on the Malibu Property. *Id.*

In June 2021, Brown considered borrowing money against the Utah Property to finance the development of a solar farm there. *Id.* Brown had the Utah Property appraised to facilitate this, and the appraisal valued the property at $240,000, significantly more than the $50,000 Brown purchased it for approximately a year earlier. *Id.* at 2–3. Brown shared this information with Smead. *Id.* at 3.

Smead expressed concern that Smead's deed of trust on the Harper Property was not properly recorded. *Id.* Smead offered to, in one transaction, provide financing for the Utah Property and also restructure and record the Harper Property deed of trust. *Id.* Smead offered similar terms for the Utah Property financing as other lenders, and also offered to reduce the debt on the Harper Property, so Brown accepted Smead's offer. Smead and Brown agreed to: (1) reduce the outstanding debt on the Harper Property deed of trust, (2) record the renegotiated Harper Property deed of trust, and (3) execute a deed of trust on the Utah Property. *Id.* This transaction provided Brown with $63,000 in capital to use for the Utah Property solar farm project. *Id.*

Thus, Smead came to own deeds of trust on the Malibu Property, the Harper Property, and the Utah Property. *See id.*

In November 2021, the seller-financed deed of trust on the Harper Property (which was senior to Smead's deed of trust on the Harper Property) required a balloon payment. *Id.* Brown sought to refinance. *Id.* Brown had the property appraised, and the appraisal valued the property at $1,100,000. *Id.* Brown shared this information with Smead. *Id.* Smead then stopped regular communication with Brown. *Id.* Brown continued simultaneously working to find refinancing and develop the Harper Property. *Id.*

In July 2022, Smead purchased the seller-financed deed of trust on the Harper Property. *Id.* Smead paid $398,000 for this deed of trust. *Id.* Thus, Smead came to hold all outstanding deeds of trust on the Harper Property.

In August 2022, Smead filed notices of default on the deeds of trust for all three properties (Malibu Property, the Harper Property, and the Utah Property). *Id.* Brown made attempts to stave off foreclosure. *Id.* Brown shared with Smead that he was negotiating a contract for the Harper Property that would be worth over $10,000,000. *Id.* Brown offered to borrow $100,000 secured by this contract to delay foreclosure for six months. *Id.* Smead rejected all proposals.

In January 2023, Smead foreclosed on all three properties. *Id.* at 4. In April 2023, Smead listed the Malibu Property for sale. *Id.*

## II. Procedural History

Brown filed suit in this Court on April 19, 2023. *See id.* Brown does not delineate distinct causes of action, but requests five forms of relief: (1) that the Court declare that the transactions were "investment contract[s]" and "securit[ies]" as defined by 15 U.S.C. § 77b(a)(1) ("Section 77b(a)(1)"); (2) that the Court declare that Smead's offer and sale of these "investment contract[s]" was in violation of 15 U.S.C. § 77l(a)(1) ("Section 77l(a)(1)"); (3) that the Court rescind Smead's ownership in the three properties (the Malibu Property, the Harper Property, and the Utah Property), on the grounds that the properties were obtained in violation of Section 77l(a)(2); (4) that Smead be ordered to stop any sales or transfers of the three properties (the Malibu Property, the Harper Property, and the Utah Property), on the grounds that the properties were obtained in violation of 15 U.S.C. § 77q(a)(1) ("Section 77q(a)(1)") and 15 U.S.C. § 78j(b) ("Section 78j(b)"); and (5) that the Court grant other just remedies. *See id.* at 5.

Smead filed a Motion to Dismiss on May 22, 2023. ECF No. 11 ("Mot."). Brown filed a Motion for Summary Judgment on June 11, 2023, along with a Statement of Uncontroverted Facts and a supporting Declaration. ECF No. 20 ("MSJ"); ECF No. 21 ("SUF"); ECF No. 22 ("Brown Declaration" or "Brown Decl."). On June 13, 2023, the Court noted that Brown had not filed an opposition to Smead's Motion to Dismiss and ordered Brown to file any opposition by June 27, 2023. ECF No. 23. Also on June 13, 2023, Brown filed a Notice of No Reply to the Motion to Dismiss, ECF No. 24, explaining that the action presented a "purely legal question," and that the Complaint and Brown's Motion for Summary Judgment "stand on their own to bring a just, speedy, and inexpensive resolution as a matter of law." *Id.*

On June 15, 2023, Smead filed a Waiver of Oral Argument as to the Motion to Dismiss. ECF No. 25. Smead noted that Brown had not filed any opposition to the Motion to Dismiss and requested that the Court grant the Motion to Dismiss without oral argument. *See id.* Smead also requested that Court strike or stay Brown's Motion for Summary Judgment until the Motion to Dismiss was ruled upon. *Id.*

On June 22, 2023, Brown filed a Request for Judicial Notice. ECF No. 26 ("RJN").

On June 24, 2023, Smead filed an Opposition to the Motion for Summary Judgement, alongside several supporting declarations and Statement of Genuine Disputes. ECF Nos. 27–27-4. On June 30, 2023, Brown filed a Response to Smead's Statement of Genuine Disputes and a Reply in support of his Motion for Summary Judgment. ECF No. 28; ECF N0. 29. On July 6, 2023, Smead filed a Notice of Errata as to his Statement of Genuine Disputes. ECF No. 30. On July 7, 2023, Brown filed a Response to Smead's Notice of Errata. ECF No. 31.

The Court held a hearing on the Motion on September 21, 2023.

## **REQUEST FOR JUDICIAL NOTICE (ECF No. 26)**

### I.      **Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be

considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)). A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90.

## II. Discussion

Brown requests Judicial Notice of one document[4]: a letter from the "Malibu LaCosta Owner's Association" indicating that because Brown no longer owns property in Malibu, he is no longer permitted to visit the Malibu LaCosta Beach and Tennis Club unless he comes as the guest of a property owner. *See* RJN at 4. Brown argues that the appraised value of the Malibu LaCosta Beach and Tennis Club's assets is $40,000,000, and that if he were a shareholder in the club, his share would be worth $125,392.48. *See id.* at 2. Brown further argues that the value of this stock in the Malibu LaCosta Beach and Tennis Club "cannot be separated" from the value of an ownership interest in the Malibu Property. *See id.* Brown appears to argue that relationship between the ownership interest in the Malibu Property and ownership of a stock in the Malibu LaCosta Beach and Tennis Club bolsters the argument that the deed of trust as to the Malibu Property is a security.

The Court finds that this document is not appropriate for judicial notice and may not be considered in evaluating the Motion to Dismiss. The letter's existence and the facts within it are not generally known within the district, nor can they be readily determined from any source whose authority cannot be questioned. *See* Fed. R. Evid. 201(b). The letter is not referenced in the complaint nor central to the complaint, and so it cannot be considered in evaluating the Motion to Dismiss. *See Corinthian Colleges*, 655 F.3d at 998 (outlining requirements for a document to be considered a Motion to Dismiss).

---

[4] Brown's RJN also references four other documents related to the Malibu La Costa Owner's Association in footnotes, including articles of incorporation, an appraisal, and an annual meeting report. *See* RJN. It is unclear whether Brown requests judicial notice of these documents, which were not attached to the RJN (unlike the letter). In any case, the Court finds that these documents were not referenced in or central to the complaint, and therefore cannot be considered in evaluating the Motion to Dismiss nor judicially noticed. *See Corinthian Colleges*, 655 F.3d at 998 (outlining requirements for a document to be considered on a Motion to Dismiss); *Lee*, 250 F.3d at 689–90 (A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion).

For these reasons, Brown's Request for Judicial Notice is DENIED.

**MOTION TO DISMISS (ECF No. 11)**

I.  **Applicable Law**

Smead brings his Motions pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). The standards for each are discussed below.

A. **Rule 12(b)(1): Lack of Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

One possible basis for jurisdiction, and the only one relevant to this Order, is federal question jurisdiction, which grants federal courts jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 ("Section 1331"). Whether an action arises under the laws of the United States is determined by the "well-pleaded-complaint rule," which dictates that courts should analyze whether an action arises under federal law by examining "what necessarily appears in the plaintiff's statement of his own claim." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). If a plaintiff brings a claim under federal law, that is generally sufficient for jurisdiction, even if the claim is destined to fail. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). "Whether the complaint states a cause of action on which relief could be granted is a question of law," which must be decided "after and not before the court has assumed jurisdiction over the controversy." *Id.* The only exceptions are where federal claims are "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Id.* at 682–83.

B.  **Rule 12(b)(6): Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Moreover, Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, the "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). Additionally, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**II.     Discussion**

Although Brown did not file any opposition to the Motion to Dismiss, the Court will construe the arguments in Brown's Motion for Summary Judgment as if they were made in opposition to the

Motion to Dismiss. Brown suggested as such in his Notice of No Reply, where he explained that he would not respond to the Motion to Dismiss and argued that the Complaint and the Motion for Summary Judgment "stand on their own to bring a just, speedy, and inexpensive resolution as a matter of law." *See* ECF No. 24. Given Brown's *pro se* status, and the fact that he filed papers describing arguments as to why his claims have merit, the Court will not grant the Motion to Dismiss on the sole basis that it is technically unopposed. Rather, the Court will consider the merits of the Motion to Dismiss.

For the reasons discussed below, the Court finds there is subject matter jurisdiction, but that Brown has failed to state a claim upon which relief can be granted. Accordingly, the Motion to Dismiss will be GRANTED.

### A. The Court has subject matter jurisdiction.

Smead argues that the action should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. This argument fails.

Brown brings claims that are based on purported violations of Section 77l(a)(2), Section 77q(a)(1), and 15 U.S.C. § 78j(b) ("Section 78j(b)"). *See* Compl. at 5; *see also* 15 U.S.C. § 77l(a)(2); U.S.C. § 77q(a)(1); 15 U.S.C. § 78j(b). These are federal laws. Bringing claims under these laws is sufficient for subject matter jurisdiction.

Smead argues that the "Securities Laws Are Not Applicable To This Action" and that the "Trust Deeds Do Not Constitute Securities." *See* Mot. at 7–15. These are essentially arguments that Brown has failed to state a claim, and that his claims will fail. But Smead does not argue that Brown did not bring a claim under federal law. *See Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) ("A dismissal on the merits is different from a dismissal on jurisdictional grounds."). It is plain from the Complaint that Brown brought federal claims. *See* Compl.

Because Brown brought a claim under federal law, there is subject matter jurisdiction. *See Bell*, 327 U.S. at 682. It does not matter whether the claim will fail. *See id.* ("Whether the complaint states a cause of action on which relief could be granted is a question of law," which must be decided "after and not before the court has assumed jurisdiction over the controversy."). There is no indication that the federal law claims are "immaterial and made solely for the purpose of obtaining

jurisdiction" or "wholly insubstantial and frivolous," and so the presence of claims brought under federal law is sufficient for subject matter jurisdiction. *See id.*

### B. Brown has not pleaded the existence or sale of any security, and so Brown's claims fail.

All of Brown's claims depend on a finding that the transactions between Brown and Smead constituted securities. Based on the facts alleged, the Court finds that none of these transactions meet the definition of a security. Accordingly, Brown's claims fail.

    i. <u>All of Brown's claims depend upon the existence of a security.</u>

All of Brown's claims are brought under federal securities laws. In order to find that Brown has stated any claim upon which relief can be granted, the Court must find that Brown pleaded a security was sold.

First, Brown's claim that Smead violated Section 77l(a)(1) depends on the sale of a security. *See* Compl. at 5. Section 77l(a)(1) provides that "any person who offers or sells a *security* in violation of section 77e" is liable. *See* 15 U.S.C. § 77l(a)(1) (emphasis added). Section 77e prohibits the sale of unregistered securities or securities that do not comply with requirements for an adequate prospectus and registration statement. *See* 15 U.S.C.A. § 77e. But if the item sold was not a security, there can be no violation of Section 77l(a)(1). *See* 15 U.S.C. § 77l(a)(1).

Second, Brown's claims for rescission based on Section 77l(a)(2) also requires the sale of a security. *See* Compl. at 5. Section 77l(a)(2) provides that "any person who sells a *security*" based on "an untrue statement of a material fact" or an omission of material fact is liable. *See* 15 U.S.C. § 77l(a)(2) (emphasis added). Section 77l(a)(2) allows rescission in certain circumstances. *See id.; see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 578–80 (1995) ("A buyer who discovered a material omission in a prospectus after the passage of the Act could sue for rescission."). But there can be no claim under Section 77l(a)(2) unless a security was sold. *See* 15 U.S.C. § 77l(a)(2).

Third, Brown's claim for violations of Section 78j(b) also depends on the existence of security. *See* Compl. at 5. Section 77j(b) prohibits the use of "any manipulative or deceptive device" or other violation of relevant rules "in connection with the purchase or sale of any *security* registered on a national securities exchange or any security not so registered, or any securities-based swap

agreement." *See* 15 U.S.C.A. § 78j (emphasis added). Such a claim depends on the sale of a security or a security-based swap agreement.[5] *See id.*

Finally, with respect to Brown's final claim, for a violation of Section 77q(a)(1), Compl. at 5, there is no private right of action for a violation of Section 77q(a)(1) and the claim fails for that reason.[6] *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1350–58 (9th Cir. 1987) (examining in detail whether there is a private right of action under "section 17(a) of the Securities Act of 1933, [currently codified as] 15 U.S.C. § 77q(a)," and holding that "no private right of action lies under section 17(a)"). In addition, as with the other claims, even if there were a private right of action,, it too would depend on the sale of a security. *See* 15 U.S.C.A. § 77q(a)(1) ("It shall be unlawful for any person in the offer or sale of any *securities* (including security-based swaps) or any security-based swap agreement . . . to employ any device, scheme, or artifice to defraud." (emphasis added)).

Hence, the Court must find that Brown pleaded that a security was sold to find that Brown stated a claim under any of these sections.

### ii. Brown has not pleaded that any security was sold.

Brown alleged that he and Smead entered into various deeds of trust on three different properties. *See* Compl. at 1–4. He appears to allege that these deeds of trust were investment contracts and therefore securities under the securities laws. *See, e.g.*, Compl. at Prayer for Relief (seeking that the Court declare that the transactions were an "investment contract"); MSJ at 7. Based on the facts alleged, even taking all allegations as true and drawing all inferences in favor of Brown, none of these deeds of trusts were securities.

A "security," as used in the Securities Act, includes "commonly known documents traded for speculation or investment" and "securities of a more variable character," including "investment

---

[5] Brown has not suggested that any transaction constituted a "security-based swap agreement." The Court finds that no transaction was one, so this provision has no relevance.

[6] For this reason, the claim pursuant to Section 77q(a)(1) will be dismissed without leave to amend as futile. *See Manzarek v. St. Paul Fire*, 519 F.3d at 1031 (leave to amend should be granted unless the claim would be futile).

contract[s]." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946); *see also* 15 U.S.C.A. § 77b (defining "security"). An "investment contract" is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* at 298. A different "family resemblance" test is used for "notes"[7] rather than "investment contracts." *See Reves v. Ernst & Young*, 494 U.S. 56, 64 (1990) (introducing family resemblance test, and explaining that "[w]e reject the approaches of those courts that have applied the *Howey* test to notes; *Howey* provides a mechanism for determining whether an instrument is an 'investment contract.'"). The family resemblance test "begins with a presumption that any note with a term of more than nine months is a 'security,' but "permits an issuer to rebut the presumption that a note is a security if it can show that the note in question bears a strong family resemblance to an item on the judicially crafted list of exceptions." *Id.* The judicially crafted list of exceptions referenced by the Supreme Court in *Reves* came from the Second Circuit's holding in *Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1137 (2d Cir. 1976). *See id.* In *Exchange Nat. Bank of Chicago*, the Second Circuit held that exampled of a note which are not securities include "the note secured by a mortgage on a home" and "the short-term note secured by a lien on a small business or some of its assets." *Exchange Nat. Bank of Chicago*, 544 F.2d at 1138.

Several factors should be considered in determining whether a note bears a family resemblance to a category of exceptions, or whether a new category should be added to the list of exceptions. *Reves*, 494 U.S. at 66. First, courts should assess "the motivations that would prompt a reasonable seller and buyer to enter into" the note in question, including whether the buyer of the note anticipates sharing "in the profit the note is expected to generate." *Id.* Second, courts should analyze the "plan of distribution" and whether there is "trading for speculation or investment." *Id.* Third, courts should "examine the reasonable expectations of the investing public." *Id.* Finally, courts should "examine whether some factor such as the existence of another regulatory scheme

---

[7] A "note" is a promise to pay a fixed amount of money. See U.C.C. § 3-103. Definitions (a "negotiable instrument" is "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges" and a "note" is a negotiable instrument containing promises rather than orders).

significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Id.*

Here, the Court finds that the deeds of trust described in the Complaint are not securities. In all of the deeds of trust, Brown borrowed money from Smead, secured by property, and Brown promised to repay the money with interest on a fixed schedule. If the money was not repaid, Smead had the right to take unencumbered ownership of the properties. All of the agreements Smead and Brown entered fit this model. First, Brown borrowed $150,000 against the Harper Property at an 8% interest rate. *See* Comp. at 2. Second, Brown borrowed money at a set interest rate (2% lower than his other financing options) from Smead to pay off the seller-financed deed of trust on the Malibu Property and created a deed of trust with Smead against the Malibu Property. *See id.* Third, Brown renegotiated the Harper Property deed of trust and added a similar deed of trust against the Utah Property. *See id.* at 3. Fourth, Smead acquired the seller-financed deed of trust on the Harper property from its original owner. *See id.*

This structure of these deeds of trust bears a strong family resemblance to "the note secured by a mortgage on a home." *See Exchange Nat. Bank of Chicago*, 544 F.2d at 1138. Just like in a typical mortgage, Brown borrowed money, promised to repay the money with interest, and risked foreclosure of property if he failed to pay. Indeed, in defining a deed of trust, Black's Law Dictionary notes that it "resembles a mortgage." *See* Deed, Black's Law Dictionary (11th ed. 2019) (a deed of trust is a "deed conveying title to real property to a trustee as security until the grantor repays a loan. This type of deed resembles a mortgage."). Because a note secured by a mortgage on a home is on the list of notes that are not securities, that the deeds of trust at issue here bear such a strong resemblance suggests that they are not securities. *See Reves*, 494 U.S. at 64. There is one possible distinction from a typical mortgage—a mortgage is typically not repaid with income that the house itself generates and is rather repaid with other money earned by the borrower (*e.g.*, from wages). Here, one reasonable inference is that Taylor expected to be paid from the income that the properties would generate, as opposed to from other money Taylor earned. Put another way, Taylor's motivation to loan money to Brown was that Taylor was "interested primarily in the profit

the note[s] [were] expected to generate," which suggests the note might be a security. *Reves*, 494 U.S. at 66. But this alone does not make the note a security.

Analysis of the factors from *Reves* shows that the notes should not be construed as a securities. The first factor points slightly towards finding the notes to be securities. The notes bear some resemblance to mortgages, suggesting they might not be securities. But Smead expected to share in the profits that Brown's businesses would generate, which points towards the notes being securities. *See Reves*, 494 U.S. at 66 (courts should inquire as to whether the investor's motivation was to share in profits, and if so, "the instrument is likely to be a security."). The fact that Smead's repayment would be only in interest (not a percentage of profits) limits the extent of the Smead's expectation of sharing profit, and thus the Court finds that the first factor only slightly points towards a finding that the notes are securities. The second factor points strongly against finding the deeds of trust being a security. No evidence suggests that the deeds of trust had any plan of distribution, or that they would be traded for speculation or investment. *See Reves*, 494 U.S. at 66 (courts should inquire as to the plan of distribution). The third factor also points against finding the deeds of trust to be securities. The Court finds it highly unlikely that Smead believed these deeds of trust would be regulated as securities. *See Reves*, 494 U.S. at 66 (courts should analyze the expectations of the investing public). The fourth factor points slightly towards finding the deeds of trust to be securities, as no evidence suggests any other regulations govern these deeds of trust, so the securities acts are not unnecessary. *See Reves*, 494 U.S. at 66 (courts should analyze whether other regulations make the Securities Acts unnecessary). Considering the factors as a whole, the Court finds that the deeds of trust are not securities, with the second and third factors outweighing the first and fourth. In sum, the Court finds that Brown failed to plead that any transaction constituted a security. For this reason, all of Brown's claims fail. Accordingly, the Motion to Dismiss will be GRANTED.

Brown will be granted leave to amend his claims, as further facts might demonstrate that these contracts constituted securities.[8] *See Manzarek v. St. Paul Fire*, 519 F.3d at 1031 (leave to amend should be granted unless futile).

## MOTION FOR SUMMARY JUDGMENT (ECF No. 20)

The Motion for Summary Judgment will be DENIED WITHOUT PREJUDICE for several reasons.

First, the Motion for Summary Judgment is moot in light of the ruling on the Motion to Dismiss. The Court finds that it would not be an efficient use of judicial resources to decide a motion for summary judgment as to a complaint that has been dismissed for failure to state a claim.

Second, Brown failed to comply with the Central District of California Local Rules and the Court's Standing Order. There is no indication that Brown met and conferred with Smead prior to filing his Motion for Summary Judgment, as is required by Local Rule 7-3. *See* Brown Decl.; C.D. Cal. L.R. 7-3 (parties "contemplating the filing of any motion must first contact opposition counsel to discuss . . . the substance of the contemplated motion and any potential resolution"). Brown also failed to file a joint brief as required by the Court's Standing Order. *See* Standing Order § VII(E) ("Any parties intending to file or oppose a Motion for Summary Judgment shall work cooperatively to create a single, fully integrated joint brief.")

---

[8] The Court notes that there appear to be other defects with Brown's claims. Securities fraud claims must be pleaded in accordance with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and of the Private Securities Litigation Reform Act ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Under Rule 9(b), a plaintiff pleading fraud must specify "with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (citing Fed. R. Civ. P. 9(b)). The PSLRA further requires that the complaint "specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading," and must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *In re VeriFone Holdings*, 704 F.3d at 701 (citing 15 U.S.C. § 78u–4(b)(1)(B)). Further, there appears to be no basis in law for Brown's claim for rescission pursuant to Section 77l(1)(2), as Section 77l(1)(2) allows the buyer of a security to seek rescission of the sale of the security, but does not contemplate rescission of other transactions such as Smead's foreclosures of the properties. *See also Gustafson*, 513 U.S. at 578–80 ("It is understandable that Congress would provide *buyers* with a right to rescind . . . A *buyer* who discovered a material omission in a prospectus after the passage of the Act could sue for rescission" (emphasis added)).

This dismissal is without prejudice, and Brown (or Smead) may file a motion for summary judgment at a later stage if so desired. Such a motion must comply with the Local Rules and the Court's Standing Order as described above.

## CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1. Brown's Request for Judicial Notice (ECF No. 26) is DENIED;
2. Smead's Motion to Dismiss (ECF No. 11) is GRANTED as to all Brown's claims and requested relief, with LEAVE TO AMEND as to all claims except the claim based upon a violation of Section 77q(a)(1);
3. Brown is ORDERED to file a First Amended Complaint within twenty-eight (28) days of the date of this Order if he still desires to pursue any of the claims being dismissed with leave to amend.
4. Brown's Motion for Summary Judgment is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: December 6, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge