UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN, <br><br> Plaintiff, <br><br> v. <br><br> STEVE SMEAD <br><br> Defendant. | No. 2:23-cv-02938-MEMF-KS <br><br> [PROPOSED] ORDER DENYING MOTION TO DISMISS <br><br> [ECF NO. 42] |

## I. Background

In April 2020, the plaintiff bought property in Malibu[1] for $290,000, backed by two deeds of trust, one of which was held by the defendant.[2] The defendant gained sole control of the Malibu deed of trust in May 2021.[3] ECF No. 41-1 at 12 & 15. In June 2021, following the procurement of solar development permits for the Utah property, the property had significantly appreciated in value and appraised at $240,000, an increase of $190,000 from the purchase price in 2020. ECF No. 41-3 at 2 & 9. In June 2021 defendant recorded a deed of trust for $220,923.20 on the Utah property. ECF No. 41-1 at 28 & 29. The Plaintiff received $64,000 in equity from the recording for the solar development at Utah. Amend Compl. ¶83. In November 2020, the Defendant issued a $150,000 second deed of trust on the Harper property, stipulating a

---

[1] The Malibu property has a private beach club and unlike the one mentioned in Lucas, this beach club appraised for $30,000,000 in 2018. See ECF No. 41-2 at 7.

[2] A "deed of trust" refers to a loan agreement between a property purchaser and a lender where title to the property is held by either the lender or a third-party trustee (as opposed to the purchaser) until the loan is repaid. See Deed, Black's Law Dictionary (11th ed. 2019). (emphasis added).

[3] A "note" is a promise to pay a fixed amount of money. See U.C.C. § 3-103. Definitions (a "negotiable instrument" is "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges" and a "note" is a negotiable instrument containing promises rather than orders).

repayment sum of $300,000. Id. at ¶ 41. In May 2022, the plaintiff shared the Harper appraisal showing a significant value increase from the purchase price of $498,000.[4] Id. at ¶42. In July 2022, the defendant purchased the first deed of trust from the prior note owner and the assignment was recorded thereafter. ECF No. 41-1 at 57. The Malibu, Utah and Harper properties had a combined appraised value of $1,790,000 in 2021. ECF No. 42-3 at 2, 70, & 91. The original purchase prices for Harper, Malibu and Utah amounted to $837,999. *Id*. In August 2022, the defendant filed Notice of Default on all three (3) properties. ECF No. 41-1 at 5, 31, 48, & 52. At the same time, the defendant demanded that the properties be signed over in a deed in lieu of a foreclosure scheme. Am. Compl. at ¶ 48. The plaintiff did not consent to a deed in lieu of foreclosure arrangement. *Id*. Despite this, the defendant purchased a Nevada solar property deed of trust from the plaintiff for 50% of the recorded value on or around September 2022. *Id*. at ¶ 49. The plaintiff made multiple attempts to stave off foreclosure and by attempting to file for Chapter 11 Sub V. *Id.* at ¶ 50 All efforts were unsuccessful, and the properties were foreclosed on in January 2023. *Id*. The Plaintiff's ownership of the lot in April 2020, and consequently the share in the Association, is inextricably linked to the overall value of the property, which cannot be divided from the equitable title the Plaintiff holds in the Malibu Property. *Id.* at ¶ 51. The assignment of the first Harper deed of trust was negotiated between Plaintiff, Defendant and American Pacific Investments, LLC, the first deed of trust holder. *Id.* at ¶ 56. Between September 2020 and March 2023, the plaintiff and defendant had at least two hundred eighty-seven (287) written email communications. *Id.* at ¶ 59 & ECF No. 41-4 at 1-7. In 2022 the plaintiff and defendant had at least twenty-nine (29) phone call conversations equal to no less than 643 minutes or over ten (10) hours. *Id.* at ¶ 60 & ECF No. 41-4 at 8-9. The plaintiff and defendant exchanged CONFIDENTIAL information regarding Harper's proposed contract offer from a third-party solar developer on October 16, 2022. (Emphasis in original.) *Id.* at ¶ 61.

---

[4] The Harper property appraised for $1,100,000. See ECF No. 41-3 at 3.

The alleged facts by the plaintiff show that the defendant stood to gain millions of dollars from the foreclosure of the properties. Amend. Compl. at pg. 24. It is noted that to the extent and frequency of communications between the parties is highly usual if the relations were, indeed, just a lender and borrower relationship. It is plausible that the parties had a relationship based upon trust and confidence. Whether that relationship was fraudulent in nature is a question of fact for the jury. The allegations provide a 'strong inference' that the defendant was motivated beyond the 'interest and payment of the loan' in multiple texts, emails, and allegations proffered by the plaintiff. Therefore, this case will be scheduled for trial according to Rule 40.

## II. <u>Legal Standard</u>

### a. Jurisdiction

Without jurisdiction the Court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining for the Court is that of announcing the fact and dismissing the cause. *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 815 (9th Cir. 2001) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1869)). Here, there [is] no clear lack of subject matter jurisdiction, the issue was fully briefed and presented to the District Court in a motion to dismiss, and the District Court decided the jurisdictional question. Given these circumstances, as the Third Circuit has observed, "even the issue of subject matter jurisdiction must at some point be laid to rest." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1060 (9th Cir. 1991) (quoting *Hodge v. Hodge*, 621 F.2d 590, 592 (3d Cir. 1980) (per curiam). Last, "[T]hese [1933 and 1934 Acts] are Federal laws. Bringing claims under these laws is sufficient for subject matter jurisdiction." *See* ECF No. 40 at 9, A.

### b. Standing

The party invoking Federal jurisdiction [the plaintiff[s]] bear the burden of demonstrating that they have standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992); [A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought. *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2208 (2021) (citing *Davis v. Fed. Elec. Comn'n*, 554 U.S. 724, 734 (2008) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332,

352 (2006)). A plaintiff's standing results from (1) a concrete and particularized injury in-fact (2) the injury can be traceable to the defendant's actions and (3) a favorable decision for the plaintiff would result in a remedy for the wrong. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Here Plaintiff has established standing, "[W]hether the defendant knew or didn't know that he sold an investment contract is immaterial. Failing to register an investment contract is failing to register an investment contract [security] and it's unlawful. This failure resulted in Plaintiff's losses." Amend. Compl. at ¶ 88; *See also*, Count I. "Unregistered Offers and Sales of Securities in Violation of Section 5(a)" Amend. Compl. at pg. 26.

"This action arises from the defendants' use of 'insider information' to take control of Plaintiff's real estate investments to their unjust enrichment. The defendant, who is purportedly an 'accredited investor', and unbeknownst to the plaintiff at the time, the defendant acquired the properties through deceptive means, *inter alia*, misappropriating insider information given to the Defendant in hopes of averting the thing that happened; the taking of the equitable title from the plaintiff. The defendant, acting within a semi-fiduciary capacity and/or recklessly, knowingly and with scienter violated 10(b)(5) of the 1934 Securities and Exchange Act." Amend. Compl. at ¶ 80; *See also* Count II. "Violation of 10b-5 "in connection with" the offer or sale of an unregistered security." Amend Compl. at 27.

The plaintiff's allegations are concrete and particularized, traceable to the defendant, and could be remedied by this Court in a favorable decision. *supra.*

   c. **Motion to Dismiss**

To survive a motion to dismiss for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570; *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although [the Court] must accept the allegations of the Complaint as true and construe them in the light most favorable to Plaintiff in resolving this Motion, [the Court] need not accept as true legal conclusions "cast in the form of factual

allegations." *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981); *SEC v. Ficeto*, No. CV 11-1637-GHK (RZx) *1 (C.D. Cal. Feb. 7, 2013). Last, Federal Rule of Civil Procedure 11(b) allows information based on personal knowledge or on information and belief as long as there is a good faith basis for doing so based on reasonable inquiry. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000). While the allegations in the [amended] complaint are made on "information and belief", at the pleading stage, the Court accepts the allegations in determining the sufficiency of the pleadings. *Alonso v. Blackstone Fin. Grp., LLC*, 962 F. Supp. 2d 1188 (E.D. Cal. 2013).

    **d. Rule 8, 9 & PSLRA**

A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Tellabs, Inc. v. Makor Issues & Rights, Ltd..*, 551 U.S. 308, 324 (2007). The inference that the defendant acted with scienter need not be irrefutable, of the "smoking-gun" genre, or even the most plausible of competing inferences. *Id.* Scienter must be cogent and compelling. "Millions of dollars from carefully reviewed and studied properties OR loan & interest money? Gee let's see." Amend. Compl. at ¶ 68. Setting a uniform pleading standard for § 10(b) actions was among Congress' objectives when it enacted the PSLRA in 1995. *Tellabs* at 321.

Congress did not "throw out the baby with the bathwater" in the PSLRA. The "misappropriation theory" holds that a person commits fraud "in connection with" a securities transaction, and thereby violates § 10(b) and Rule 10b-5, when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information. *United States v. O'Hagan*, 521 U.S. 642, 652 (1997). Thus, is a person who trades in securities [investment contract(s)] for personal profit, using confidential information misappropriated in breach of a fiduciary duty to the source of the information, guilty of violating § 10(b) and Rule 10b-5? *Tellabs* at 647. The answer is yes. *See also, Salman v. United States*, 580 U.S. 39, 137 S. Ct. 420, 423 (2016). When reviewing the sufficiency of a complaint, a

District Court may not dismiss for lack of materiality unless the alleged misstatements or omissions "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Litwin v. Blackstone Group*, L.P., 634 F.3d 706, 717 (2d Cir. 2011) (quoting *Ganino v. Citizens Utilities Co*., 228 F.3d 154, 162 (2d Cir. 2000)). As pleaded, a reasonable investor would consider the omitted information important. *Macquarie Infrastructure Corp. v. Moab Partners, L.P*., No. 21-2524 (2d Cir. Dec. 20, 2022), *cert. granted*, 216 L. Ed. 2d 1312 (U.S. Sept. 29, 2023), No. 22-1165, oral arg. recorded Jan. 16, 2024, (accessible at https://www.supremecourt.gov/oral_arguments/audio/2023/22-1165).

## Discussion

The touchstone in defining a security is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. By profits, the Court means either capital appreciation resulting from the development of the initial investment, *or* a participation in earnings resulting from the use of investors' funds. *United Housing v. Forman, 421 U.S. 837*, 852 (1975). (emphasis added). The defendant argues that "[T]his Case has absolutely nothing to do with a prospectus or a registration statement…" *See* ECF No. 45 at 4. That argument fails. The question before the Court in Count I. is whether a registration statement was required to be filed with the Securities and Exchange Commission ('SEC'). The question before the Court in Count II. is whether the defendant misappropriated property in violation of 10(b)(5) of the 1934 Act. Thus, the first count must be in the affirmative before the second count can be considered. If the first count is in the negative, then the Court need not address Count II.

As for the stated reasons above, the Court has determined that in this transaction the defendant bears the responsibility to assert an exemption from filing a registration statement with the SEC. The defendant has not claimed any exemption, including the most obvious, intrastate. Instead, the defendant has pettifogged issues that are neither substantive nor helpful for the Court to determine the law. (*i.e.* Plaintiff is 'untethered to reality' & the opposition 'is irrelevant'). This is not the case. The registration statement has everything to do with financial disclosure and

nothing to do with a prospectus. The prospectus, whether issued or not, *after registration,* is not relevant in this case because neither a registration statement was filed nor is a prospectus required. Section 10(a) is clear that, '[a] prospectus must contain the same statements made in the registration statement, *except that the documents accompanying the registration statement need not be included*.' See ECF No. 45 at 4. (emphasis added). Therefore, the financial statements filed with the SEC in the registration statement do not need to be included in the prospectus. *In other words*, just like Rule 10 in Federal Court, adoption by reference is allowed. This requirement does not mandate the inclusion of financial statements registered with the SEC in the prospectus. Rather, it is at the issuer's discretion to decide whether to include them or even issue a prospectus. Regardless, potential buyers can readily access these financial statements through the publicly available and free EDGAR system.

The "substance" of the issue is whether an investment contract was sold in violation of the 1933 Act and whether this sale 'in connection with' an investment contract, was in violation of the Acts anti-fraud provisions.[5]

## Conclusion

The plain language in the Acts requires this Court to interpret the law according to Congress' purpose to, "provide *full and fair disclosure* of the *character of securities* sold in interstate…and through the mails, and to *prevent frauds* in the sale thereof, and for other purposes." *See* 1 U.S.C. § 1; Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74 (May 27, 1933).

## Order

Based upon the foregoing, the Motion to Dismiss is **DENIED WITH PREJUDICE**. Defendant to pay costs.

---

[5] Contrary to the defendant's contention that the Plaintiff's Amend. Compl. is, "a rambling, dizzying array of nearly incomprehensible pleading which still fail[ed] to provide a short and plain statement justifying relief," the Amend. Compl., as stated above, satisfies Rule 8, Rule 9(b) and the PSLRA. Thus, the defendant's motion to dismiss is dismissed with prejudice. Last, all allegations by any plaintiff in this Court are held to the same objective *Twombly/Iqbal* standard, whether on the paid docket or the IFP docket, and whether a plaintiff or defendant is represented by Counsel does not have bearing on the merits, just as, this Court's jurisdiction has no bearing on the merits. *Coppedge v. United States*, 369 U.S. 438, 455, (1962) (Brennan, J. concurring).

**IT IS SO ORDERED**.

Dated: June ___, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

**DISTRICT COURT JUDGE**