Clinton Brown, *Self-Represented*
14 University Drive
Robina, QLD 4226, Australia
clinton@atlasinc.solar
310-487-6453

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLINTON BROWN,  Plaintiff, vs. STEVE SMEAD  Defendant. | **Case No.** 2:23-cv-02938-MEMF-KS **Motion for Particularized Discovery** **Judge:** Honorable Maame Ewusi-Mensah Frimpong **Chief Magistrate Judge:** Karen L. Stevenson **Date:** August 29, 2024 **Time:** 2 P.M. **Place:** Courtroom 8B |

**NOTICE TO THE COURT**, Smead cannot have it both ways at the same time. It's very convenient for the Defendant to, on the one hand, say that the Plaintiff's allegations are "state common law frauds" and on the other hand invoke Federal security laws to oppose particularized discovery.[1] *First*, the PSLRA (enacted in 1995)[2] was the Congress's attempt to limit class action suits that were frivolously filed in Federal Court. *Second*, the Uniform Securities Act of 1998 preempted most, if not all, class action security litigation in state courts. *Third*, Congress made it very clear that "individual investors" suits were not the priority of the Congress's legislation.[3] *Home Run:* The primary concern of the Congress in the 1933 and 1934 Federal security laws was,

---

[1] "Money often costs too much." *See* Ralph Waldo Emerson, Wealth, in The Conduct of Life 117 (1841). *Infra* at 14.
[2] The more liberal pleading standard set in *Gibson* was overruled by *Twombly/Iqbal* in 2007 and 2009, respectively.
[3] "[I]ndividual investors get little direct benefit from the class-action suits brought on their behalf. Most of the shareholder losses are suffered by the large institutional investors and it's they who receive the bulk of the settlement fund. In the most extreme case I examined, five claimants out of 302 received 36 percent of the settlement. In another, 52 percent of the settlement went to 1 percent of the claimants. Not one of those claimants was an individual." *See* Private Litigation Under the Federal Securities Laws: Hearings Before the Subcomm. on Sec. of the S. Comm. on Banking, Hous., & Urban Affairs, 103d Cong. 47-48 (1993) (testimony of Dr. Vincent E. O'Brien), https://archive.org/details/privatelitigatio00unit/page/48/mode/2up?q=individual.

& still is…to prevent abuses that harm *individual investors*.[4] In fact, Congress did not "throw out the baby with the bathwater" in the PSLRA. *Id*. at 69 & 70. As such, this particularized discovery motion is in the spirit of the Congress's intention to protect *individual investors*, which is relevant here. Last, given the inadequacy of state blue-sky laws for an action such as this one…if [The Acts] read so narrowly, as this Court has done thus far, it essentially allows the PSLRA to gut the 1933 & 1934 Acts and locks the Courthouse gates to exclude *individual investors*. (emphases added).

> "Because only the dishonest man could object to the principles of the legislation… (1) An insistence that there should be *full disclosure* of every essentially important element attending the issue of a new security [investment contract]. (2) A requirement that whatever action taken by the Federal Government for such disclosure should be limited to that purpose *and* should be so devised as not to be capable of being construed as an approval *or* guarantee of a security [investment contract] issue. (3) A demand that the persons, whether they be directors, experts, or underwriters, *who sponsor the investment of other people's money should be held up to the high standards of trusteeship*." (emphases added), *supra*.

### Legal Standard

15 U.S.C. § 78u-4(b)(3)(B), states in the pertinent part, "In *any* private action arising under this title [PSLRA], all discovery *and* other proceedings shall be stayed during the pendency of *any* motion to dismiss, <u>unless</u> the Court finds, upon the motion of *any* party, that particularized discovery is necessary to preserve evidence *or* to prevent undue prejudice to that party."[5] The Conference Committee language is based in part on the pleading standard of the Second Circuit. The standard also is specifically written to conform the language to Rule 9(b)'s notion of pleading

---

[4] "Equally significant with these countless *individual tragedies* is the wastage that this irresponsible selling of securities [investment contracts] has caused to industry...Similarly*, real-estate developments* would be undertaken, not on the basis of caring for calculated needs but merely as an excuse for the issuance of more securities [investment contracts] to satisfy an artificially created market." (emphasis added). *See* H.R. Rep. No. 85, 73rd Cong., 1st Sess. (1933) accompanying H.R. 5480, titled "Federal Supervision of Traffic in Investment Securities in Interstate Commerce" (May 4, 1933). *See also*, David S. Ruder, Chairman, U.S. Sec. & Exch. Comm'n, Speech at the SEC Open Meeting on March 10, 1988, https://www.sec.gov/news/speech/1988/031088ruder.pdf, at 2. ("We must all recognize, however, that the character of the capital markets has changed and that 1988 is not 1933."). We must all also recognize that 2024 is not 1933 and yet the Congress has provided a remedy for this case in its remedial legislation. (*i.e.* The Acts).

[5] *But see,* 15 U.S.C. § 78u-4(a)(1) ("*In general*, [t]he provisions of this subsection shall apply in each private action arising under this chapter [PSLRA] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. (emphasis added); *See also*, Rule 23.

with "particularity." The legislation also provides that all discovery is stayed during the pendency of *any* motion to dismiss *or* for summary judgment.[6] These stay of discovery provisions are intended to prevent unnecessary imposition of discovery costs on Defendants. *See* H.R. Rep. No. 104-369, at 32 (1995) (Conf. Rep.), https://www.congress.gov/congressional-report/104th-congress/house-report/369. *Infra.*

### a. Particularized Discovery Specific to Utah Solar Farm

Under 15 U.S.C. § 78u-4(b)(3)(B), a discovery request is particularized if "the party seeking discovery under the exception adequately specifies the target of the requested discovery." *See* In re FirstEnergy Corp. Sec. Litig., No. 2:20-cv-03785, 2021 WL 2414763, at *5 (S.D. Ohio June 14, 2021). *See also,* Courter v. Cytodyn, Inc., No. C21-5190 BHS, Order Granting Plaintiffs' Motion to Partially Modify the PSLRA Discovery Stay (W.D. Wash. Mar. 3, 2022). ("The Plaintiff does not seek to engage in a "fishing expedition." (*citing* In re Worldcom, Inc. Securities Litigation, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002)).

### b. Undue Prejudice

---

[6] If the Court considers matters outside the pleadings that could only be filed at the appropriate time that they could be filed [*See* ECF Nos. 46 & 55] it *may* invoke Rule 12(d). This rule ensures that *all* parties are given a reasonable opportunity to present *all* pertinent material related to an SJ. *In other words*, the PSLRA should not undermine a party's standing by freezing the alleged harm caused by the Defendant on the date of the filing of the Complaint *or* FAC. After all, there must be a live case *or* controversy to even have standing in Federal Court. *See* Food & Drug Admin. v. All. for Hippocratic Med., No. 23-235, slip op. at 6 (U.S. June 13, 2024). ("Article III of the Constitution confines the jurisdiction of Federal Courts to "Cases" and "Controversies"…Federal Courts do not issue advisory opinions about the law—even when requested by the President.") (capitalization modified). "What's it to you?" *Id.* Well, for the Plaintiff it's not coming to this Court, meeting the *Twombly/Iqbal* standard, informing the Court of the continued harm inflicted by the Defendant, and then this Court possibly sending the Plaintiff to the drawing board, once again, because this Court cannot add one plus one and get two. This is everything to the Plaintiff, as it should be, in respect to the limited jurisdiction that Federal Courts have in our Nation…if this Court is going to send individual investors back to the Stone Age and the Feudal Age of *caveat emptor*, then this Court is not equipped to definitely handle a case like this one…and thus the Plaintiff would respectfully request to have Judge Otis throw the Plaintiff out of Court. *See* L.R. 83-1.2.2 & ECF No. 4. *And* before this Court admonishes the Plaintiff, once again, for being candid and honest without fear *or* favor, the Plaintiff respectfully requests that this Court look at the log in its own eye *and* then take the speck out of the Plaintiff's eye. *See* Matthew 7:3-5 (King James Version, 1611); (Gutenberg Bible, 1455). *In other words*, Rule 12(d) provides a mechanism for allegations & evidence beyond a Complaint *or* FAC, as this live case *or* controversy lives on…and this Court should not turn a blind eye to that, which could potentially send the Plaintiff back to square one. An SJ is not an appealable order and thus it simply allows the parties to clarify the issues for trial. It is settled beyond the need to even mention, that if the Complaint *or* FAC does not meet *Twombly/Iqbal* then it has no business being in this Court at all…regardless of PSLRA *or* any other Congressional statute. It's the Constitution! The importance of this particular footnote cannot be understated, thus it is in a footnote.

"Courts weigh the burden to Defendants against the potential prejudice to Plaintiffs, focusing on the production costs to Defendants and Plaintiffs' need for early review of the documents." *See* In re Bank of Am. Corp. Sec., Derivative, & Emp. Income Sec. Act (ERISA) Litig., No. 09 MDL 2058(DC), 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) "Courts may consider other factors, such as the Defendants' financial state, settlement negotiations, case management, and the effect of delay in determining whether to lift the discovery stay." *Id.* (citing, *inter alia*, In re Worldcom, 234 F.Supp.2d at 306; *In re Initial Pub. Offering Sec. Litig.*, 2366 F.Supp.2d 286, 287 (S.D.N.Y. 2002); *In re Lernout & Hauspie Sec. Litig.,* 214 F.Supp.2d 100, 106 (D.Mass.2002) (permitting limited discovery where "[n]either of the perceived abuses addressed by Congress is present"); *Vacold LLC and Immunotherapy, Inc. v. Cerami,* No. 00 Civ. 4024, 2001 WL 167704, at *7 (S.D.N.Y. Feb.16, 2001) (modifying the discovery stay where the request "does not implicate a concern that Plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

Even when a Court finds undue prejudice, the stay will only be lifted on a "clearly defined universe of documents." *See* In re Worldcom*,* 234 F.Supp.2d at 301; *Infra* at 7-11.

## Discussion

In its ordinary meaning, "deceptive" covers a wide spectrum of conduct involving cheating *or* trading in falsehoods. *See* Webster's International Dictionary 679 (2d ed. 1934) (defining "deceptive" as "tending to deceive," and defining "deceive" as "[t]o cause to believe the false, or to disbelieve the true" *or* "[t]o impose upon; to deal treacherously with; cheat"). *Cf.* Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 n. 20 (1976) (consulting the 1934 edition of Webster's International Dictionary to define other relevant terms in Section 10(b)); *See* In re Parmalat Sec. Litig., 376 F.Supp.2d 472, 502 n. 152 (S.D.N.Y. 2005) (consulting the 1934 edition of Webster's International Dictionary to define "deceptive"). In light of this ordinary meaning, it is not at all surprising that Rule 10b-5 equates "deceit" with "fraud." *See also,* 17 C.F.R. § 240.10b-5 (prohibiting "*any* untrue statement of a material fact . . . *or* . . . *any* act, practice, *or* course of business which operates *or* would operate as a fraud *or* deceit upon *any* person, in connection with

the purchase *or* sale of *any* security [investment contract]" (emphases added)). Indeed, [Courts] have previously observed that the conduct prohibited by Section 10(b) and Rule 10b-5 "irreducibly entails some act that gives the victim a false impression." *See* United States v. Finnerty, 533 F.3d 143, 148 (2d Cir. 2008).

The PSLRA was passed to redress certain perceived abuses in securities litigation including "the abuse of the discovery process to coerce settlement." *See* In re Advanta Corp. Secs. Litig., 180 F.3d 525, 530-31 (3d Cir. 1999). The purpose of the [PSLRA] was to restrict abuses in securities class action litigation, including: (1) the practice of filing lawsuits against issuers of securities [investment contracts] in response to any significant change in stock [investment contract] price, regardless of Defendants' culpability; (2) the targeting of "deep pocket" Defendants: (3) the abuse of the discovery process to coerce settlement; and (4) manipulation of clients by class action attorneys. *Id*. at 531 (*citing* H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Sess. at 31 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 748 ("Conference Report")).

To prevent the unnecessary imposition of discovery costs on Defendants, the PSLRA includes provisions for a mandatory stay of discovery which are found at 15 U.S.C. § 77z-1(b)(1) and § 78u-4(b)(3)(B). Under these provisions, "unless exceptional circumstances are present, discovery in securities [investment contract] actions is permitted only after the Court has sustained the legal sufficiency of the complaint [FAC]." *See* Vacold LLC v. Cerami, No. 00 Civ. 4024, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001).

The purposes of these provisions were acknowledged to include the protection of the Defendants in [securities fraud class actions] from being subjected to extortionate demands for settlement on behalf of class Plaintiffs simply because of the high costs associated with discovery in these cases; protection of the corporate Defendants from Federal Judges' reluctance to impose Rule 11 sanctions[7] in frivolous lawsuits; and protection of the corporate Defendants from Plaintiffs' counsel "discovering" their way into facts which could allow them to amend an initially frivolous

---

[7] *See* 15 U.S.C. § 78u-4(c)(1)-(3).

complaint so as to state a claim. *See* In re Transcrypt Int'l Sec. Litig., 57 F. Supp.2d 836, 841 (D.Neb. 1999) (*citing* Conference Report at 32) (capitalizations altered).

Although the discovery stay provisions are not limited to Federal securities class actions, the PSLRA's legislative history indicates that class actions were the main focus of the PSLRA. *See* Conference Report at 32 ("Section 101 contains provisions to reform abusive securities class action litigation."); Senate Report No. 104-98, 104th Cong. 1st Sess. at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693 ("The Securities Subcommittee heard testimony that discovery in securities class actions resembles a fishing expedition…Accordingly, the Committee has determined that discovery should be permitted in securities class actions only after the Court has sustained the legal sufficiency of the complaint."). *See* In re Transcrypt Int'l Sec. Litig., 57 F. Supp.2d 836, 841 (D.Neb. 1999) (*citing* Conference Report at 32).

None of the perceived abuses addressed by the Congress are present in this case. The Plaintiff is not attempting to use discovery as a "fishing expedition" to find a sustainable claim not alleged in his Complaint which has already been amended. *See* FAC & *supra* n. 7. Furthermore, as this is not a class action, there is little, if any, coercive aspect to Plaintiff's discovery demands. Finally, this is not a frivolous lawsuit designed to extort money from a Defendant who would rather settle than pay exorbitant discovery costs. *See* Tobias Holdings, Inc. v. Bank United Corp., 177 F. Supp. 2d 162 (S.D.N.Y. 2001).

"The cost of discovery often forces innocent parties to settle frivolous securities class actions. According to the general counsel of an investment bank, "discovery costs account for roughly 80% of total litigation costs in securities fraud cases." *Supra*. Here, the Defendant is only asked to call up his bank *or* accountant *and* provide the account balance(s) for which the specific transaction(s) occurred. As this is not a class action case and the request is particularized to allow the Court to determine if, in fact, the Defendant has falsely claimed in his declaration that he committed the act of forcing the asset[s] sold "out of sheer business survival." The Plaintiff is prepared to provide reciprocal bank account records if this Court grants this motion.

The Conference Committee provides in new section 27(b) of the 1933 Act and new section 21D(b)(3) of the 1934 Act that Courts must stay all discovery pending a ruling on a motion to dismiss, unless exceptional circumstances… *or* to prevent undue prejudice to a party. *Id.* It would be undue prejudice to the Plaintiff if he is unable to make it through the Courthouse gates, even though he has "smoking-gun" evidence. See ECF No. 48 at 3, No. 17.

Plaintiff respectfully moves this Court to lift the discovery stay pursuant to 15 U.S.C. § 78u-4(b)(3)(B) for the limited purpose discussed below. The requested records are crucial for substantiating the claim that the Defendant committed securities fraud…and are at risk of being lost *or* destroyed due to the passage of time. *In other words*, the Plaintiff will suffer undue prejudice if he is unable to confirm these records against his Complaint [FAC], as this confirmation is essential for the determination of this controversy.[8]

"The purpose of the statutory stay is to prevent abusive, expensive discovery in frivolous lawsuits by postponing discovery until after the Court has sustained the legal sufficiency of the complaint. In a case where the Court already has sustained the legal sufficiency of the complaint, this purpose has been served." *See* In re Salomon Analyst Litig., 373 F Supp 2d 252, 254-255 (SD NY 2005); *See also,* In re Lernout & Hauspie Sec. Litig., 214 F Supp 2d 100, 106 (D Mass 2000).

---

[8] The Plaintiff is not arguing that the particularized discovery is needed to support the legal sufficiency of his claim that Smead sold Brown an investment contract in contravention of the 1933 Securities Act. The Court has yet to determine if, in fact, an investment contract was sold…and if in the affirmative the Defendant *must* claim an exemption, thereby, the particularized discovery request is to support the sufficiency of the 10(b)(5) claim. *In other words*, if the Plaintiff has sufficiently plead that an investment contract was sold then the evidence sought in this particularized discovery motion will confirm the sufficiency of his 10(b)(5) claim. *See* 15 U.S. Code § 78u–4(a)(1). ("<u>In general</u>, [t]he provisions of this subsection shall apply in each private action arising under this chapter *that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure*. (emphasis added); *See also*, Rule 23. Neither of Congress's commands apply in this case, as this is not a Plaintiff class action case or controversy i*n general.* This private action is about…if an investment contract was sold & if there is no exemption (which there is not) then it turns on the sufficiency of the alleged fraud which the Plaintiff can prove to this Court's satisfaction… if he has the particularized records sought. After all, this case or controversy is about property. (*i.e.* money). Thus, bank, email, phone and text records are only *confirming* the allegations in the FAC *or* the Defendant's declaration. One party isn't telling the truth & this Court should have a strong interest is determining who is not telling the truth based on easily retrievable discovery records that are in the possession of the parties *or* should be in the possession of the parties*. In other words*, if the "smoking gun" in this action (*i.e.* But for Smead, Brown would have $6,135,068.21 in his bank account, instead of what his bank account balance is today…*And* without throwing the Court or any party under the bus here, it is evident that the understanding of the solar industry is not the strongest ace in the cards here.) *See* Clinton Brown v. Clark R. Taylor, ECF Nos. 115 at 10 & 147 at 5 (MEMF-KS). *In other words*, the loss causation component of the PSLRA is *safe* even upon discovery *and/or* cross-examination and the Defendant can't stop this *Home Run*, no matter.

In the Federal system, there are no interlocutory appeals as of right for a MTD. Thus, the PSLRA discovery stay does not apply during the pendency of an appeal from a denial of a MTD.

Therefore, the Plaintiff respectfully requests that the Court grant this motion to lift the discovery stay and allow for the particularized production of the specified bank, emails, texts and phone records specifically requested below.

### a. Particularized Discovery Requests for the Utah Property [9]

"I declare under penalty of perjury, under the laws of the State of California, and the United States of America, that the foregoing is true and correct." *See* ECF No. 42-1 at 3. ("Smead Decl.") 28 U.S.C. § 1621(2) states, in the pertinent part, "[I]n any declaration…under penalty of perjury as permitted under section 1746 of title 28, United States Code, wilfully subscribes as true *any material matter which he does not believe to be true*; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title *or* imprisoned not more than five years, *or* both…" (emphases added) "*[Foreclosure] was done out of sheer business necessity*." (emphasis added). *See* Smead Decl. No. 10. This can be adjudicated objectively with the particularized discovery motion for records on the specific dates of the Utah transaction[s].

### b. Bank Account Balances [10]

1. Bank statement showing the balance and transaction amount for the period around March 8, 2023. (Millard County Recorder's Office, Trustee's Deed, Entry No. 0218042, Book 703, Page 381 (recorded Mar. 8, 2024), recording transfer of property to Steve Smead, APN/Parcel ID: 8710-1, by TitleFirst Title Insurance Agency, LLC).

---

[9] Under 15 U.S.C. § 78u-4(b)(3)(B), a discovery request is particularized if "the party seeking discovery under the exception adequately specifies the target of the requested discovery." *See* In re FirstEnergy Corp. Sec. Litig., No. 2:20-cv-03785, 2021 WL 2414763, at *3 (S.D. Ohio June 14, 2021) (internal alteration omitted).

[10] The Plaintiff requests that any other transaction[s] within the bank statement be redacted *or* that the Defendant's Counsel verify the balances on the statement and swear under oath, under penalty of perjury, before the Court that the balances are true and correct. Complete bank statements are not relevant, at least at this stage of the litigation. It is noted that Smead, more than likely, has more than one bank account. As such, this very particularized discovery request is a flip of a coin as to whether, indeed, Smead is lying to the Court. *In other words*, the discovery request is so particularized that it could very well defeat the Plaintiff's allegations as a matter of law. *Heads or Tails?*

2. <u>Bank statement showing the balance for the period around March 2, 2023, related to the Draft Indicative Economics Across Projects sent by Sean Chaudhuri to Clinton Brown</u>. *See* ECF No. 48 at No. 4.

3. <u>Bank statement showing the balance and transaction amount for the period around February 14, 2023</u>. (Rescission of Trustee's Deed Upon Sale, TitleFirst Title Insurance Agency, LLC, No. 00224325 (Millard County Recorder, Utah, Feb. 14, 2023)).

4. <u>Bank statement showing the balance and transaction amount for the period around October 22, 2022, related to the due diligence files sent by Sean Chaudhuri to Clinton Brown</u>. *See* ECF No. 48 at No. 4.

5. <u>Bank statement showing the balance and transaction amount for the period around August 29, 2022</u>. (Millard County Recorder's Office, Notice of Default and of Election to Sell, Entry No. 06221473, Book 731, Page 548 (recorded Aug. 29, 2022), APN/Parcel ID: 8710-1).

6. <u>Bank statement showing the balance and transaction amount for the period around June 29, 2021</u>. (Millard County Recorder, Trust Deed, APN/Parcel ID 8710-1, Trustee: Title First Title Insurance Agency, LLC, Amount: $200,000, notarized in New York by Jenice Hernandez, Notary Public, State of New York, No. OLHE6359254, recorded June 29, 2021, at 12:24 PM, Entry No. 00215042).

c. **Email Communications** [11]

("…The Utah Property was also a chunk of empty desert, and still is today."). Smead Decl. at No. 2 *Cf.* ECF No. 48 at 3, No. 17: ("The Utah Solar Farm project closed on May 16, 2024, without including Brown's property, resulting in Brown not receiving the $6,135,068.21 he would have earned if his property had been part of the executed contracts for the Utah Solar Farm." (Chaudhuri Decl. No. 17).

---

[11] Any emails during or around the noted transaction[s] with any of the following individuals and entities: Clinton Brown, Emil Assentato, Steve Weera, Superior Loan Servicing, Fundamental Rate, and TitleFirst Title Agency.

1. <u>Emails on or around March 8, 2023</u>. (Millard County Recorder's Office, Trustee's Deed, Entry No. 0218042, Book 703, Page 381 (recorded Mar. 8, 2024), recording transfer of property to Steve Smead, APN/Parcel ID: 8710-1, by TitleFirst Title Insurance Agency, LLC).

2. <u>Emails on or around March 2, 2023, related to Draft Indicative Economics Across Projects</u>. "I sent the Draft Indicative Economics Across Projects, which included the Utah project, via email to Clinton Brown on March 2, 2023.") (Chaudhuri Decl. at No. 5).

3. <u>Emails on or around February 14, 2023</u>. (Rescission of Trustee's Deed Upon Sale, TitleFirst Title Insurance Agency, LLC, No. 00224325 (Millard County Recorder, Utah, Feb. 14, 2023)).

4. <u>Emails on or around October 22, 2022, related to due diligence files</u>, sent by Sean Chaudhuri to Clinton Brown. *See* ECF No. 48 at No. 4.

5. <u>Emails on or around August 29, 2022</u>. (Millard County Recorder's Office, Notice of Default and of Election to Sell, Entry No. 06221473, Book 731, Page 548 (recorded Aug. 29, 2022), APN/Parcel ID: 8710-1).

6. <u>Emails on or around June 29, 2021</u>. (Millard County Recorder, Trust Deed, APN/Parcel ID 8710-1, Trustee: Title First Title Insurance Agency, LLC, Amount: $200,000, notarized in New York by Jenice Hernandez, Notary Public, State of New York, No. OLHE6359254, recorded June 29, 2021, at 12:24 PM, Entry No. 00215042).

[*Intentionally Left Blank*]

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 22. The Plaintiff sent a Proposal to stave off foreclosure for (6) six months on December 3, 2022.<br><br>Evidence: (Brown, Clinton. Email to Steve Smead. "Proposal" 03 December 2022, Email #276) | 22. Undisputed.<br>The proposal was inadequate, as Plaintiff was so informed.<br><br><br>Evidence: No pinpoint citation. |
| 22. Moving Party's Response ||
| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
| 23. The Plaintiff sent the third-party solar developer contract to the Defendant on December 15, 2022. | 23. Undisputed.<br>The contract was inadequate, as Plaintiff was so informed. |

### d. Text and Phone Communications[12]

"*I had no interest in, and was not involved in, any of the businesses of Clinton Brown* of which the above-referenced properties were a part. I never invested in any of the businesses that Mr. Brown may have had. I never became a joint venturer, partner, shareholder, or any other type of equity holder in any of Mr. Brown's businesses." *Cf.* ECF No. 28 at 22 (*See* chart above) "To the best of my knowledge, Mr. Brown had no active solar energy business but, rather, plans, hopes, and dreams to one day have such a business. I had no interest in, or intention to invest in any solar energy business with Mr. Brown, and there was never an agreement that I would do so." *Cf.* ECF No. 28 at 22.

1. <u>Text and phone communications on or around March 8, 2023</u>. (Millard County Recorder's Office, Trustee's Deed, Entry No. 0218042, Book 703, Page 381 (recorded Mar. 8, 2024),

---

[12] Any text and phone communications during or around the noted transaction[s] with any of the following individuals and entities: Clinton Brown, Emil Assentato, Steve Weera, Superior Loan Servicing, Fundamental Rate, American Pacific Investments, LLC, and Adam Ahmed.

recording transfer of property to Steve Smead, APN/Parcel ID: 8710-1, by TitleFirst Title Insurance Agency, LLC).

2. <u>Text and phone communications related to Draft Indicative Economics Across Projects on or around March 2, 2023</u>. *See* ECF No. 48 at No. 4.

3. <u>Text and phone communications on or around February 14, 2023</u>. (Rescission of Trustee's Deed Upon Sale, TitleFirst Title Insurance Agency, LLC, No. 00224325 (Millard County Recorder, Utah, Feb. 14, 2023)).

4. <u>Text and phone communications on or around October 22, 2022, related to the due diligence files</u>, sent by Sean Chaudhuri to Clinton Brown. *See* ECF No. 48 at No. 4.

5. <u>Text and phone communications on or around August 29, 2022</u>. (Millard County Recorder's Office, Notice of Default and of Election to Sell, Entry No. 06221473, Book 731, Page 548 (recorded Aug. 29, 2022), APN/Parcel ID: 8710-1).

6. <u>Text and phone communications on or around June 29, 2021</u>. (Millard County Recorder, Trust Deed, APN/Parcel ID 8710-1, Trustee: Title First Title Insurance Agency, LLC, Amount: $200,000, notarized in New York by Jenice Hernandez, Notary Public, State of New York, No. OLHE6359254, recorded June 29, 2021, at 12:24 PM, Entry No. 00215042).

    e. **<u>PSLRA Legislative History</u>**

H.R. 1058 (S. 240), HOUSE REPORTS: No. 104-369 (Comm. of Conference), SENATE REPORTS: No. 104-98 accompanying S. 240 (Comm. on Banking, Housing, and Urban Affairs), CONGRESSIONAL RECORD, Vol. 141 (1995) Mar. 7, 8, considered and passed House, June 22, 23, 26-28, considered and passed Senate, amended, in lieu of S. 240, Dec. 5, Senate agreed to conference report, Dec. 6, House agreed to conference report. WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 31 (1995), Dec. 19, Presidential veto message, CONGRESSIONAL RECORD, Vol. 141 (1995), Dec. 20, House

overrode veto, Dec. 22, Senate overrode veto.[13] Available at https://www.congress.gov/bill/104th-congress/house-bill/1058/all-actions

## Conclusion

The Plaintiff respectfully moves this Court to lift the discovery stay pursuant to 15 U.S.C. § 78u-4(b)(3)(B) for the very limited purpose of obtaining the above particularized records specific to the Utah Solar Farm project. *See* ECF No. 48 at 3. ("The Utah Solar Farm project closed on May 16, 2024, without including Brown's property, resulting in Brown not receiving the $6,135,068.21 he would have earned if his property had been part of the executed contracts for the Utah Solar Farm."). The requested records are crucial for substantiating the claims of securities [investment contract] fraud and are essential for the preparation of the case while the MTD is outstanding.[14] Lifting the discovery stay specific to records corresponding to the exact dates of the Utah transaction[s] will not frustrate the Congress's purposes in enacting the provision to protect Defendants from frivolous lawsuits. *See* ECF No. 50 at 1. ("The fact that the declaration supports the Plaintiff's allegations is of no mind to the Defendant's obligation to prevail on his MTD." *See* 15 U.S.C. § 78u-4(b)(4) ("Loss Causation")).

---

[13] *Since* 1789, out of the tens of thousands of laws that the Congress has enacted *or* repealed, in 46 Presidential Administrations, there have only been 2,529 vetoes/pocket vetoes & only 112 of those have been overridden by the Congress…that includes the PSLRA. https://www.senate.gov/legislative/vetoes/vetoCounts.htm. *In other words*, in this context the PSLRA is not Congress shutting the Courthouse gates to plausible claims by individual investors. In fact, since the PSLRA was enacted Congress and Presidents have approved legislation that has expanded protections for individual investors. *See also*, Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (1998), https://www.sec.gov/about/laws/slusa.pdf; Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002), https://www.sec.gov/about/laws/soa2002.pdf; Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010), https://www.sec.gov/about/laws/wallstreetreform-cpa.pdf; Jumpstart Our Business Startups Act, Pub. L. No. 112-106, 126 Stat. 306 (2012), https://www.sec.gov/spotlight/jobs-act.shtml.

[14] *Or*, in the alternative, the Defendant is put on notice that they must gather the particularized discovery requests and promptly provide them within 14 days after the MTD is denied. In any event, the parties have already had a L.R. 7-3 meeting about these records on January 24, 2024 & since the requested records require minimal cost and effort to obtain from the Defendant's own financial history and personal property then a happy medium would certainly be that the Court order the Defendant to be ready to hand over the records, if *and* when, the MTD is denied. The Plaintiff will provide reciprocal records for the Defendant, at such time, so that discovery, if *or* when, it should be fully opened, will commence quickly *and* efficiently. The Plaintiff has already put the Defendant on notice that he will seek all like records on the Malibu, Harper, and Nevada transaction[s] at the January 24, 2024, L.R. 7-3 meeting for this motion. *No harm, no foul.*

"This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 24, 2024, via videoconference. The Defendant opposes this motion."

Dated: June 20, 2024  /s/ *Clinton Brown*, Self-Represented
14 University Drive
Robina, QLD 4226, Australia
clinton@atlasinc.solar
310-487-6453

CC: All Counsel of Record (via ECF) on June 20, 2024