Clinton Brown, *Self-Represented*
14 University Drive
Robina, QLD 4226, Australia
clinton@atlasinc.solar
310-487-6453

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLINTON BROWN, | **Case No**. 2:23-cv-02938-MEMF-KS |
| Plaintiff, | **Plaintiff's Speaking**[1] **Reply to Defendant's Opposition to MPD**[2] |
| vs. | |
| STEVE SMEAD | **Judge:** Honorable Maame Ewusi-Mensah Frimpong |
| Defendant. | **Chief Magistrate Judge:** Karen L. Stevenson |
| | **Date**: August 29, 2024 |
| | **Time**: 2 P.M. |
| | **Place**: Courtroom 8B |

**NOTICE TO THE COURT**[3], there is a buyer and seller *or* seller and buyer. In other words, "the antifraud provisions" [of the Acts] apply *equally* to a buyer and seller *or* seller and buyer. Just to be perfectly clear here, we *must* take this one step at a time. As such, the sufficiency of the FAC stands and falls on its ability to prove that an investment contract (security) was bought *or* sold. It doesn't matter *who* bought or *who* sold the investment contract. It is either a yes *or* no.

The Plaintiff is arguing three (3) specific points why he will suffer undue prejudice *if* this Motion for Particularized Discover ("MPD") is not granted.[4] a) The *risk* of evidence loss, b) *delay* in case resolution, and c) the *prevention* of unjust outcomes.

---

[1] *See* ECF No. 52 ("G-120 Form"); ECF No. 63. ("Request to Extend Reply to MPD"); ECF No. 64-2 ("In Lieu...").

[2] Under L.R. 7-3, Counsel are not required to have more than *one* meaningful meet and confer, and as the Defendant stated in his Opp'n, the parties had *two* meaningful meet and confers regarding the MPD. "Plaintiff, without holding a further necessary meet and confer, filed his Motion for Particularized Discovery." *See* ECF No. 61 at 4. Like, wow.

[3] *See generally*, Peter Charles Hoffer, The Supreme Court Footnote: A Surprising History (NYU Press, June 18, 2024).

[4] *Both parties will arguably suffer undue prejudice* if the MPD is not granted. *Infra*. At the MTD oral argument on June 6, 2024, the Plaintiff expressed a desire to *not* file a second amended complaint. *But* more facts have unfolded in this live case. In any event, the Ninth Circuit requires that [] policy favoring amendment[s] be applied with "extreme liberality." See *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); See also, *Polich v. Burlington Northern, Inc*., 942 F.2d 1467, 1472 (9th Cir. 1991).

**15 U.S.C. § 77z-1(b)(1) and § 78u-4(b)(3)(B) commands this Court in the pertinent part…**

[U]nless[5] the [C]ourt finds upon the motion of *any*[6] party that *particularized* [7]discovery *is necessary*[8] to preserve evidence *or* to *prevent*[9] *undue*[10] *prejudice*[11] to that party. "Respect," though, [is] just that.[12] In the business of statutory interpretation, if it is not the best, it is not permissible. *Id*, slip op. at 23. In any event, there is little value in imposing a uniform interpretation of a statute if that interpretation is wrong. [The Court] see[s] no reason to presume that Congress prefers uniformity for uniformity's sake over the correct interpretation of the laws it enacts. *Id.* slip op. at 25. And many or perhaps most statutory ambiguities may be unintentional. As the Framers recognized, ambiguities will inevitably follow from "the complexity of objects…the imperfection of the human faculties," and the simple fact that "no language is so copious as to supply words and phrases for every complex idea." The Federalist No. 37, 236 (J. Cooke ed. 1961) (J. Madison). *Id.* slip op. at 22; See also, *Pulsifer v. United States, 601 U. S. 124, 133* (2024) (choosing between "two grammatically permissible ways" to read a sentencing statute "by reviewing text in context")

---

[5] If it be not that; if it be not the case that; if not, supposing not; if it be not; except. A reservation or option to change one's mind provided a certain event happens, a conditional promise. A subordinate conjunction in common usage, connecting a dependent or subordinate clause to the main clause of a sentence. *See* Black's Law Dictionary 1536 (Centennial ed. 1991). ("Centennial ed.")

[6] Isn't it curious that the Congress chose the word '*any*' here? See *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004). Put otherwise, the Defendant could file a MPD for the same *unless* relief that the Plaintiff has. If the Plaintiff were being sued in a civil action for violating 'the antifraud provisions' of the Acts, then he would still file a MPD, just as he has done here, to bring forth the records that are pertinent…to clear the air, without prejudice to any party. *But* he has nothing to hide. On the other hand, the Defendant in this case does.

[7] Relating to a part or portion of anything; separate; sole; single; individual; specific; local; comprising a part only; partial in extent; not universal. Opposed to general. Centennial ed. at 1119.

[8] This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity *or* inevitability, *or* it may import that which is only convenient, useful, appropriate, suitable, proper, *or* conducive to the end sought. It is an adjective expressing degrees and may express mere convenience *or* that which is indispensable *or* an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, *or* it may mean something reasonably useful and proper, and of greater *or* lesser benefit *or* convenience, and its force and meaning *must* be determined with relation to the *particular* object sought; Of, or pertaining to, a single person, class or thing. Centennial ed. at 1029.

[9] To hinder, frustrate, prohibit, impede, or preclude; to obstruct; to intercept. To stop or intercept the approach, access, or performance of a thing. Centennial ed. at 1188.

[10] More than necessary; not proper; illegal. It denotes something wrong, according to the standard of morals which the law enforces in relations of men, and in fact illegal, and qualifies the purpose with which influence is exercised or result which it accomplishes. Centennial ed. at 1528

[11] A fore judgment; bias; partiality; preconceived opinion. A leaning towards one side of a cause for some reason other than a conviction of its justice. Centennial ed. at 1179.

[12] See *Loper Bright Enterprises v. Raimondo*, No. 22-451, slip op. at 9 (U.S. June 28, 2024) (Roberts, C.J.) ("*Chevron* is overruled.") *Id*. slip op., at 35.

(*i.e.* and…or). Given the purpose of the 1933 and 1934 acts and their broad remedial reach, is it plausible that Congress rolled back The Acts broad remedial purpose in the PSLRA? There is no evidence that Congress "threw out the baby with the bath water" with the PSLRA. "Congress may regulate the making and performance of private contracts when reasonably necessary to effect any of the great purposes for which the National Government was created. See *Highland v. Russell Car Co.*, 279 U.S. 261 (1929).[13]

### Unless

*Unless* is a conjunctional term, as either *a* dominate or subordinate to the main clause of the sentence…thus the subordinate conjunctional *unless* followed by the dominate main clause… "the [C]ourt finds." In other words, "statutory interpretation track[s] the commonsense intuition that Congress would not ordinarily introduce a general term that renders meaningless the specific text that accompanies it." See *Loper* slop op. at 5. *Unless…the Court finds…*"[i]t is emphatically the province and duty of the [J]udicial department *to say what the law is*." See *Marbury v. Madison*, 1 Cranch 137, 177 (1803). And in the following decades, the Court understood "interpret[ing] the laws, in the last resort," to be a "solemn duty" of the Judiciary. See *United States v. Dickson*, 15 Pet. 141, 162 (1841) (Story, J., for the Court). When the meaning of a statute was at issue, the [J]udicial role was to "interpret the act of Congress, *in order to ascertain the rights of the parties*." (emphasis and alterations added). *See* Decatur v. Paulding, 14 Pet. 497, 515 (1840).[14] Anything else "is inconsistent with "the context from which the statute arose." *See* Bond v. United States, 572 U. S. 844, 860 (2014). Cf. *Fischer v. United States*, No. 23–5572 (U.S. June 28, 2024) (Barrett, J) (dissenting) slip op. at 1. "(Who could blame Congress for [] failure of imagination?) But statutes often go further than the problem that inspired them, and under the rules of statutory interpretation, [the Court] stick[s] to the text anyway.").

---

[13] This was *before* the 1933 & 1934 Acts were enacted by the Congress and President. *Cf.* PSLRA. This footnote is already too long, so the Plaintiff will leave it here for now.

[14] *Unless* the Court finds…that the PSLRA practically makes The Acts a dead letter for individual investors, even though the Congress's subsequent legislative enactments provide *more* protections for individual investors. That all individual investors must be bottlenecked and sifted through the PSLRA class action purpose…is just insane. The notion that some things 'go without saying' applies to legislation just as it does to everyday life." See *Bond v. United States*, 572 U. S. 844, 857 (2014).

The Plaintiff will give the Defendant props for saying, *well*, if the Court does allow for this *very* particularized discovery request, then the Court must also consider a protective order under Rule 26(c). Put otherwise, does the Congress's *automatic* Rule 26(c)[15] provide the Defendant with a stacked protective order? Win once, just to have to win again on the *same* issue? That's *absurdum. See* ECF No. 61 at 5.

"Disruption or prolongation of the discovery schedule is normally in no one's interest. A stay of discovery duplicates costs because counsel must reacquaint themselves with the case once the stay is lifted. Matters of importance may be mislaid or avenues unexplored. A case becomes more of a management problem to the Court when it leaves the normal trial track. While time may heal some disputes, in others it merely permits more opportunity for festering. See *Kron Medical Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988). In this dispute, the investment contract value keeps rising, while the parties remain in limbo. *See* ECF No. 55 at 2. *Cf.* FAC ¶ 36.

> "Our decision should not be interpreted to mean that defendants may use the stay as a shield to insulate themselves from liability. Indeed, if the absence of discovery would essentially protect defendants from liability, undue prejudice would result. See *Vacold,* 2001 WL 167704, at *6; *Global Intellicom,* 1999 WL 223158, at *2; *Medical Imaging Ctrs. of Am.,* 917 F. Supp. at 721 n. 3. For example, in *Vacold,* the plaintiffs claimed that the defendants advised the plaintiffs that no pharmaceutical companies were interested in investing in the company,[16] Applied Vaccine Technologies Corp. ("AVT"), which was formed to develop virtual lymph node technology, thereby inducing plaintiffs to sell their shares in AVT. Contrary to those assertions, Johnson Johnson and its subsidiary (collectively "J J") had provided approximately $3 million in financing. *See* 2001 WL 167704, at *3. Judge Schwartz lifted the PSLRA stay in order to allow limited discovery on the issue of "the nature and timing of J J's interest and investment." *Id.* at *7. At oral argument, the defendants declined to disclose the timing of its commercial dealings with J J.[17]

---

[15] A motion to stay discovery is tantamount to a request for a protective order prohibiting *or* limiting discovery pursuant to Rule 26(c). (emphasis added). The moving party bears the burden of showing good cause and reasonableness for such an order. See *Kron Medical Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988). In other words, the Congress, right off the bat, provides a 'protective order' to the Defendant without showing good cause and reasonableness for such an order. Motions for a protective order which seek to prohibit *or* delay discovery are not favored. *Id.* With the passage of the PSLRA, all this became unnecessary. *See* Murray, Lifting the PSLRA "Automatic Stay" of Discovery, 80 N.D. L. Rev. 405, 419 (2004).

[16] *See* ECF No. 28 at 22. "The proposal was inadequate, as Plaintiff was so informed." The Plaintiff was so informed on another occasion that the investment offer(s) he received were inadequate. *Id.*

[17] Paraphrasing the Defendant's declaration here, "I foreclosed out of sheer business necessity, even though I knew that the properties had been offered solar contracts worth millions of dollars, yet they were inadequate. And they are still an empty piece of desert, but I had no interest in Plaintiff's business or made any decision for his business to make

Because of the lack of candor, the court held that the plaintiffs would in fact suffer undue prejudice."[18] *See id.* at \*5, 7. Furthermore, the court concluded that narrowly limited discovery would not coerce a settlement or support a claim not alleged in the complaint.[19] *See id.* at \*7. *Faulkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384, 406 (S.D.N.Y. 2001).

a) The *risk* of evidence loss, b) *delay* in case resolution, and c) the *prevention* of unjust outcomes. All those are explained in excruciating detail above.

All that's left is for this Court to put this jigsaw puzzle together. But the Court can't put together the pieces under the cover of darkness. The Plaintiff may not need a flood light to help the Court put this jigsaw puzzle together, but if the Plaintiff has thus far not helped the Court to see that 'economic reality' is the driver of this claim, then a little light might bring this Court out from the cover of darkness to see that all is not right in this case.

## **Conclusion**[20]

The PSLRA is not a "veto overridden law" that has sent our Nation back to the pre-1933 and 1934 times of the Blue-Sky and Bubble Act days. This Nation has checks and balances.[21] A Defendant facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator. See *Securities and Exchange Commission v. Jarkesy*, 603 U.S. slip op. at 27 (June 27,

---

it fail *or* delay its success." *Cf.* ECF No. 64-1 (Declaration of Sean Chaudhuri); *See also*, L.R. 7-10, "a party serve and file a [R]eply [], and *declarations* or other rebuttal evidence." † The Court is reminded that every filing from the Plaintiff is a declaration under penalty of perjury & until such time the Plaintiff lies to this Court, his word, should be held to the same low standard as any other Counsel admitted to practice before this Court. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

[18] There is no question that the lack of candor from the Defendant is undue prejudice to the Plaintiff. *For example*, at this point in the controversy the Court should know if the Plaintiff *or* the Defendant is an accredited investor. That's a yes *or* no. *But* maybe that SEC interpretation of the term is on the hook now. (citation omitted). In any event, the position of power and the consequences of using *that* power to defraud and deceit is the oldest trick in the book. Common sense should tell this Court that something *isn't* right here. No matter the legal sufficiency of the PSLRA, there has been a wrong here & Congress has provided a remedial course of action for the parties. (*i.e.* The Acts)

[19] There will be no settlement in this case unless this Court says what the law is. And, in this case, no new allegation could arise because what's in the Complaint & FAC is what the Defendant did to the Plaintiff. And, as stated in open Court, it seems a final decision in this controversy will provide the Plaintiff with a business blueprint sanctioned under the law. *Albeit*, fraudulent and deceitful.

[20] For example, [F]ederal securities fraud employs the burden of proof typical in civil cases, *while its common law analogue traditionally used a more stringent standard*. See *Herman & MacLean v. Huddleston*, 459 U. S. 375, 387–390 (1983). Courts have also not typically interpreted [F]ederal securities fraud to require a showing of harm to be actionable by the SEC. See, e.g., *Blavin*, 760 F. 2d, at 711; *SEC v. Life Partners Holdings, Inc*., 854 F. 3d 765, 779 (CA5 2017). Nevertheless, the close relationship between [F]ederal securities fraud and common law fraud confirms that this action is "legal in nature." *Granfinanciera,* 492 U. S., at 53; *Supra*, n. 16.

[21] [The President] plays a role in lawmaking by recommending to Congress the measures he thinks wise and signing *or* vetoing the bills Congress passes. Art. I, §7, cl. 2; Art. II, §3. See *Trump v. United States*, No. 23–939, slip op. at 7 (U.S. July 1, 2024).

2024). This Court is not a Jury, and this Plaintiff also has a right to prove his case against a Defendant in front of a Jury of his peers before a neutral adjudicator. This is Federal Court, not state court. Federal Courts have limited jurisdiction. At bottom, this Court has decided on jurisdiction and so this Court must decide the case. The Court should not utilize any form of a bunt to *not* decide this case fairly & squarely.

Last, it's not enough for a man to bring deceit and fraud upon another man in this Courtroom, that's just another day in this Court with the Defendant, for which the Court turns a blind eye without abandon yet. *See* ECF No. 55 at 2 ("RJN").

Respectfully submitted,[22]

Dated:  July 5, 2024                */s/ Clinton Brown, Self-Represented*
                                                   14 University Drive
                                                   Robina, QLD 4218, Australia
                                                   clinton@atlasinc.solar
                                                   310-487-6453

CC: All Counsel of Record (via ECF) on July 5, 2024[23]

---

[22] This Speaking Reply is filed before a Federal Judge, Hon. MEMF, *without* fear or favor.

[23] The Plaintiff is particularly unnerved that this Court has punted, once again, a PSLRA issue. Given that the opinion by the Court in this case will be an *unpublished* one…not worth the email it's written on…just say what you're going to say. This should be where a Federal Judge rises to the occasion. *But here we are*. The Plaintiff can't get a response from the Defendant nor from the Federal Court. *Shutout.*

### Other Rebuttal Evidence

**Note:** Contemporaneous Final Oral Arguments (date/time) *In Lieu* of Pending Transcript (prior to tentative ruling, *infra*.) *See* ECF No. 64-2. Final Transcript will be available to the Court when released in accord with L.R.s *unless* the Court orders the Plaintiff to refile the Reply with the *exact* language of the transcript when it is received by the Plaintiff from the Court Reporter. *See* L.R. 7-12; 18 U.S.C. § 1512(c)(1); *Fischer v. United States*, 603 U.S. ____ (2024); *See also*, ECF No. 11 at 28-29, 31. *Cf.* FAC ¶49 ("The defendant purchased a Nevada solar property deed of trust from the Plaintiff for 50% of the recorded value on or around September 2022.").

[*Intentionally Left Blank*]

| | | CaseNotes2<br>Date modified: 6/6/2024 11:18 AM | C:\Users\Brown\OneDrive\Desktop\June 2024<br>UNITED STATES DISTRICT COURT CENTRAL DISTRICT ... | Size: 170 KB<br>Authors: Clinton Brown |
|---|---|---|---|---|
| | | CaseNotes2<br>Date modified: 6/6/2024 11:17 AM | C:\Users\Brown\Downloads<br>UNITED STATES DISTRICT COURT CENTRAL DISTRICT ... | Size: 22.1 KB<br>Authors: Clinton Brown |
| | | CaseNotes2<br>Date modified: 6/6/2024 11:12 AM | C:\Users\Brown\OneDrive\Desktop\June 2024<br>UNITED STATES DISTRICT COURT CENTRAL DISTRICT ... | Size: 22.1 KB<br>Authors: Clinton Brown |
| | | SMEAD_FINAL_ORAL<br>Date modified: 6/6/2024 11:01 AM | C:\Users\Brown\OneDrive\Desktop\June 2024<br>UNITED STATES DISTRICT COURT CENTRAL DISTRICT ... | Size: 21.9 KB<br>Authors: Clinton Brown |
| | | Oral_Argument_ASSENTATO (1)<br>Date modified: 6/6/2024 11:00 AM | C:\Users\Brown\Downloads<br>UNITED STATES DISTRICT COURT CENTRAL DISTRICT ... | Size: 29.0 KB<br>Authors: clinton brown |

## FINAL OA SMEAD & EMIL/TDE/Weera

1 message

**Clinton Brown** <clinton@atlasinc.solar>                    Wed, Jun 5, 2024 at 4:13 PM
To: Clinton Brown <clinton@atlasinc.solar>

### Bottom Fucking Line:

Emil/TDE and Weera sold Brown an unregistered investment contract. Emil/TDE and Weera had a semi-fiduciary duty to Brown. Emil/TDE and Weera misappropriated nonpublic information for their own personal gain & at the expense of Brown. Last, the Congress says, that these actions are illegal under the 1933 & 1934 Acts. Therefore, the Court must dismiss the MTD with prejudice.

Smead sold Brown an unregistered investment contract. Smead had a semi-fiduciary duty to Brown. Smead misappropriated nonpublic information for his own personal gain & at the expense of Brown. Last, the Congress says, that these actions are illegal under the 1933 & 1934 Acts. Therefore, the Court must dismiss the MTD with prejudice.



**Clinton Brown**
CEO, Atlas, Inc.
310-487-6453 | clinton@atlasinc.solar
www.atlasrei.co

  

DISCLAIMER: This message and any attachments or linked files is confidential and intended only for the named recipient. Any unauthorized disclosure, distribution, copying, or use of this information is strictly prohibited and could violate applicable laws, including the Electronic Communications Privacy Act. If you are not the intended recipient, please notify the sender immediately and delete the original message. This message originates from the offices of Atlas, Inc. and/or its subsidiaries.

**4 attachments**


**Oral_Argument_SMEAD.docx**
35K

**June6_FederalCourtCalendar.pdf**
269K

**Oral_Argument_ASSENTATO.docx**
28K

**CaseNotes.docx**
23K

*/s/* Clinton Brown