See ECF No. 64 at 7 ("In Lieu of Pending Transcript"); ECF No. 63
/s/ Clinton Brown

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**Clinton Brown v. Smead**
**Case No.** 2:23-cv-02972
**Date:** June 6, 2024
**Time:** 2 P.M.
**MAY IT PLEASE THE COURT:**

**Introduction:**

Brown borrowed money from Smead, secured by property, with a promise to repay the money at some predetermined time, and Smead had a right to take the property if Brown failed to pay the borrowed amount at the predetermined time. *On its face*, this resembles a mortgage on a home, which is not an investment contract or note under Federal security laws.

But look closer and it becomes clear that this case is an age-old tale of greed and misappropriation of property, by the defendant's failure to disclose information that a reasonable investor would find necessary to make a call, on whether to roll the dice at a market opportunity. *See* Basic Inc. v. Levinson, 485 U.S. 224, 231-232 (1988).

But this is not the feudal age, it is the "buyer & seller beware" age. And certainly not the winner-take all-economy of yesteryear. But before we get there, the Plaintiff will put a finer point on the fact that Smead issued and sold an unregistered investment contract (*i.e*. a security) to the Plaintiff in contravention of the 1933 Securities Act. Courts have found such 'instruments of a variable character to be 'investment contracts' from cemetery plots to chinchilla breeding to earthworm farms to crypto assets and of course, the quintessential of them all, real estate developments.

**Smead Sold an Investment Contract to Brown**

The *Howey* test lays out what an investment contract is under Federal security laws:

1. Investment of Money
2. In a Common Enterprise
3. With an Expectation of Profits
4. To be Derived from the Efforts of Others

Smead issued the deeds of trust because he was interested in Brown's plans to develop solar farm businesses. *See* FAC. ¶ 57. Smead expected to profit from Brown's businesses. *See* FAC ¶ 67. Brown and Smead communicated extensively via email, text, and phone calls between 2020 and 2023. *See* FAC ¶¶ 59, 60.

Has anyone but the Plaintiff in this Court spoke to their lender for over 10 hours in one year? Has anyone but the Plaintiff in this Court send & exchange almost 300 emails in one year? Has anyone in this Court besides the Plaintiff correspond with their lender on one-year voluminous text exchanges?

If, the Plaintiff's factual allegations, which the Court generally… must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff then this is a *prima facia* case of what constitutes an investment contract under Federal security laws. If the Court chooses an investment contract test route or to take the family resemblance test route…all roads to Smead issuing an unregistered security in contravention of the Securities Act of 1933.

The definition of a security is 'virtually the same' in the Acts, although the Acts effectuate different goals of the Congress, but, lest we forget the 'remedial' purpose of 1933 Security Act is to prevent frauds. So, to prevail on a Rule 10(b) claim there must be a security. Thus, an illegal investment contract can be registered with the SEC to correct that error on the EDGAR system. In other words, by registering the investment contract with the SEC the parties can record the investment contract in the public record subject to public & SEC scrutiny. Registration is a powerful deterrence to violations of Rule 10(b)(5). Finding and Ordering compliance with the 1933 Act's registration requirements will allow the parties to have a chance to equitably divide the investment contract & if the parties cannot solve the equitable ownership issues themselves, then the parties can move forward with any Rule 10(b) claims they may have.

*In the alternative*, the defendant has taught the plaintiff how to successfully disguise investment contracts as the hum of the drum market real estate transaction which are apparently exempt from any Federal security law oversight.

So, here's the deal when I get the Order of this Court. And the investing public should take notice because I'm going to do what the defendant did to me, to them.

1. Loan money to a very driven first-time property developer, let's call him "Go-Getter," "Go-Getter" doesn't have real estate assets & the only way he can pay me back is make the development successful.
2. I'll write up note & a deed of trust and I'll *lend* that property to "Go-Getter" & he'll set out work on improving the property and feed me information about the property along the way.
3. When he inevitable can't pay, I'll tell him, hey, don't worry about paying *just yet*, just keep working on the project and as a trade-off I'll ask "Go-Getter" to keep feeding me information about the development along the way….
4. In the meantime, I'll rack up interest payments & late fees on the note, even though I said, "hey, 'Go-Getter' don't worry about paying *just yet*.

5. Then, at my discretion & when the *market is right*, I'll foreclose on the loan and take the property I leant to 'Go-Getter'
6. And with a cherry on top, "Go-Getter" will be on the hook to pay me back *or* "Go-Getter" *will* be forced into bankruptcy.
7. But in no event, will "Go-Getter" get the property I leant him, back in his "possession". Because, in reality, it was mine from the Get-Go…And because I only lend to Go-Getters with my private money, I make the rules without much, if any real Federal oversight… after all, these are just personal loans and if I comply with state loan laws then I have a real chance of a very successful business model, by acquiring valuable property without a lick of effort on on the backs of a 'Go-Getter'
8. All this because Congress didn't think that a "scheme" like the one claimed by the Plaintiff was in the family of investment contracts, as a securit[y] of a more variable character, or even a note.

*In reality*, this type of market transaction between the defendant and the plaintiff is truly a great disservice to the Congress's aim of promot[ing] fair and transparent securities markets, "avoid[] frauds," and "substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry. (*i.e.* markets, whether face-to-face or around the world.) *Marine Bank* is not controlling here, as there was another Federal agency, the FDIC that secured money if the bank happened to commit fraud, that's also been around since 1933, and that banks have extensive oversight, and the bank being sued makes sense in that case because who is going to sue someone insolvent and be able to collect? Here, this is a private lender dolling out personal loans subject to the ancient rule, you don't pay, you don't keep, when the entire economic reality was not that at all.

So what this Court is essentially saying is investors are back in the Blue-Sky era or the Stone Age of the American security jurisprudence, in direct contravention to the Congress's demand when Congress wrote "AN ACT [to] provide full and fair disclosure of the character of securities sold in interstate and foreign commerce *and* through the mails, and to prevent frauds in the sale thereof, *and for other purposes"*.

Last, the foundation of our Nation's security laws… is rooted in the 1933 Securities Act… that Act…is simply a disclosure law… that President Roosevelt said, "only a dishonest man would object to its principles of disclosure" and, here, the defendant objects to its principles of disclosure… that only a dishonest man would do.

**Introduction:**

Following the money (*i.e.* property) reveals this civil action against Smead is an age-old tale of greed and misappropriation. Statutory interpretation must be adjudicated based on established precedent & the defendant is clearly liable by a preponderance of evidence… just with the allegations in the FAC, that not only did he issue an investment contract (encompassing all the properties, not singular transactions), but that he violated Rule 10(b)(5) under the civil misappropriation theory. The leading case precedent is *SEC v. Panuwat*, Case No. 21-cv-06322, ECF No. 18 (N.D. Cal. Jan. 14, 2022) (order denying motion to dismiss). Last, on April 5, 2024, *Panuwat* was found liable under the the misappropriation theory by a jury of his peers. The jury was asked a simple, yet fundamental question, inherent in the misappropriation theory.

Did the SEC establish by a *preponderance of the evidence* that *Panuwat* was liable under the civil misappropriation theory of insider trading as explained in Jury Instructions Nos. 16 - 21? *See* the Jury Instructions, ECF No. 155, in that case. The jury answered yes. *See* ECF No. 169, in that case.

*Thus, in this case*, the question is, by a preponderance of evidence is Smead liable under the civil misappropriation theory of insider trading as explained in jury instructions Nos. 16-21 in the *Panuwat* case? The answer is yes. The Plaintiff will explain to this Court in less than 5 minutes why this case must not be dismissed…. May I proceed, your Honor?

In *Panuwat*, the Northern District of California Court, a landmark jury verdict case, identified six elements that a Plaintiff must prove, by a preponderance of evidence, that a defendant is liable under the misappropriation theory. All are here in the FAC & so starting with the end in mind let me run the Court through this, and at finish line it'll be clear that this MTD must be dismissed with prejudice.

**Element #1. Duty of Trust, Confidence, or Confidentiality**

- Brown and Smead had a fiduciary-like relationship based on trust and confidence.
    - This duty can arise from their relationship, as described in FAC paragraph 23 because this relationship was based upon trust and confidence. Other evidence of that the relationship was based on trust and confidence is exhaustively laid out in emails, text messages, and phone records in the FAC.

**Element #2. Possession of Nonpublic Information**

- Allegation: The Defendant gained access to confidential information regarding the value of the Plaintiff's properties. *See* FAC paragraphs 35-43.

    - Specifically, the Defendant had access to appraisal reports and other confidential information that was not publicly available.

**Element #3. Misappropriation of Information**

- Allegation: The Defendant used this confidential information for personal gain by taking control over the Plaintiff's properties and making decisions based on this insider information. *See* FAC paragraphs 50-65.

    - The Defendant misappropriated the information for securities trading purposes. This involves the wrongful taking and use of confidential information by the Defendant, who knew or should have known that the information was meant to be kept confidential.

**Element #4. Trading Based on Information**

- Allegation: The Defendant unceremoniously took the Plaintiff's properties in a "so-called" public auction, using insider knowledge to his advantage *See* FAC paragraph 50.

    - The Defendant bought or sold securities (in this case, real estate investment contracts) based on the misappropriated information. The complaint shows that the Defendant's decision to trade was significantly influenced by the material nonpublic information.

**Element #5. Knowledge or Recklessness**

- Allegation: The complaint alleges that the Defendant knowingly used insider information to gain an advantageous market position, defrauding the Plaintiff. *See* FAC paragraph 80.

    - The Defendant knew that the information was both nonpublic and material *or* acted recklessly in not knowing this. The Defendant's actions can only be described as knowing and with intent to deceive.

**Element #6. Lack of Consent**

- Allegation: The Defendant did not have permission to use the confidential information in the way that they did. *See* FAC 47 & 48.

- The Defendant lacked consent from the Plaintiff to use the information for securities trading purposes, and in fact, he deceitfully forced consent.

**Summary of Argument:**

The FAC and the alleged evidence therein clearly support the PSLRA standard, Rule 9B, Rule 8 and the Rule of common sense…by a preponderance of the evidence, which if proven true… means the defendant has violated Federal securities laws. This isn't the cart before horse here. The FAC plainly lays out why this is an investment contract based on what the Congress set out for the term 'investment contract' to mean, as further expounded by *Howey* (and even before *Howey* in numerous District & Appellate Court decisions) and its progeny.

**Conclusion:**

Congress didn't "throw out the baby with the bathwater" in the PSLRA. In fact, Congress has built on these reforms with SLUSA in 1998, Sarbanes-Oxley Act in 2002, Dodd-Frank Act in 2010 & the JOBS Act in 2012. Those post-PSLRA acts didn't close the Courthouse gates, *but in fact*, opened them a little wider.

And last, the foundation of our Nation's security laws… is rooted in the 1933 Securities Act… that Act…is simply a disclosure law… that President Roosevelt said, "only a dishonest man would object to its principles of disclosure" and, here, the defendant objects to its principles of disclosure… that only a dishonest man would do.

Thank you,

Your Honor.