UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STEVE SMEAD,<br><br>　　　　Defendant. | Case No.: 2:23-cv-02938-MEMF-KS<br><br>**ORDER GRANTING MOTION TO DISMISS [ECF NO. 42, 55, 57, 63]** |

Before the Court is a Motion to Dismiss filed by Defendant Steven Smead. ECF No. 42. For the reasons stated herein, the Court GRANTS the Motion.

**I.    Background**

The Court addressed the allegations at issue and the procedural history of this action in its previous Order granting a previous Motion to Dismiss. *See* ECF No. 40 ("Previous Order"). The Court will only address aspects that are relevant to this Order here.

/ / /

/ / /

1

### A. Factual Allegations[1]

Plaintiff Clinton Brown ("Brown") is an individual residing in California. *See* FAC ¶ 31. Defendant Steve Smead ("Smead") is also an individual residing in California. *See id.* ¶ 32. Smead is an accredited investor under federal regulations, while Brown is not. *See id.* ¶¶ 33, 34.

In April 2020, Brown purchased a property in Malibu, California (the "Malibu Property") for $290,000. *See id.* ¶ 35. The purchase was financed by two deeds of trust,[2] one of which was held by Smead. *See id.* As of February 2021, the Malibu Property had an appraised value of $450,000. *See id.* ¶ 36. In May 2021, Smead gained control of both deeds of trust for the Malibu Property. *See id.* ¶ 37.

In 2020, Brown also purchased a property in Utah (the "Utah Property") for $190,000. *See id.* ¶ 38. Brown acquired permits to develop solar panels at the Utah Property in June 2021, after which the Utah Property appreciated in value and was appraised at $240,000. *See id.* ¶ 39.

In June 2021, Smead issued a deed of trust to Brown for the Utah Property which included an additional $100,000 of "paper" (which Brown alleges means that a $100,000 debt was recorded but no money was actually transferred) related to another property (the "Harper Property").[3] *See id.* ¶¶ 39, 40. Smead recorded this as a $200,000 deed of trust on the Utah Property, which, as discussed

---

[1] Unless otherwise indicated, the following factual background is derived from Plaintiff Clinton Brown's First Amended Complaint. ECF No. 41 ("FAC"). For the purposes of the Motion to Dismiss, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they *are* true.

[2] The Court understands a "deed of trust" to refer to a loan agreement between a property purchaser and a lender where title to the property is held by either the lender or a third-party trustee (as opposed to the purchaser) until the loan is repaid. *See* Deed, Black's Law Dictionary (11th ed. 2019).

[3] The FAC does not explain what the Harper Property is or how Brown acquired it. *See* FAC ¶¶ 39, 40. The initial complaint explained that the Harper Property is a property on Harper Lake Road in Hinkley, California, which Brown purchased with financing from Smead. *See* Previous Order at 2; *see also* ECF No. 1 at 2. In determining whether Brown has stated a claim upon which relief can be granted, the Court may only consider the operative version of the complaint, and so will only consider the allegations in the FAC and not allegations included in the initial complaint that have been removed. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir. 2007) (where an amended complaint has been filed, a court should review the amended complaint and determine whether the amended complaint states a claim without regard for the initial complaint, even if the amended complaint contradicts the original complaint). But the Court will consider the other allegations in determining whether Brown might be capable of amending further to state a claim.

above, was appraised at $240,000 at that time. *See id.* ¶ 40. In November 2020,[4] Smead issued an additional deed of trust to Brown for $150,000 against the Harper Property, which stated that it would be repaid as $300,000. *See id.* ¶ 41.

In May 2022, Brown shared with Smead that the Harper Property had appreciated significantly in appraised value to $1,100,000. *See id.* ¶ 42. Brown had purchased the Harper Property (on an unspecified date[5]) for $498,000. *See id.* As of 2021, the Malibu Property, the Utah Property, and the Harper Property had a combined appraised value of $1,790,000, after having been purchased by Brown for a total of $837,999. *See id.* ¶¶ 43, 44. Smead held deeds of trust against all three properties. *See id.* ¶¶ 37, 40, 41.

In August 2022, Smead filed notices of default as to the deeds of trust on all three properties. *See id.* ¶ 47. Smead contacted Brown and asked him to agree to transfer deeds in lieu of foreclosure. *See id.* Brown did not agree to do so. *See id.* ¶ 48. Had Brown been aware that Smead intended to foreclose, he would have pursued a different course of action.[6] *See id.*

In November 2022, Smead purchased a deed of trust regarding a solar farm property in Nevada (the "Nevada Property") from Brown for 50% of its recorded value. *See id.* ¶ 49.

Brown made multiple attempts to stave off Smead's foreclosure attempts on the various properties. *See id.* ¶ 50. Brown sent one such proposal in December 2022. *See id.* ¶ 62. Brown also could have signed an agreement for mineral rights at the Harper Property in December 2022, which would have resulted in an immediate cash payment to Brown but would have harmed the long-term value of the Property, and chose not to. *See id.* ¶ 63. Nevertheless, Smead foreclosed, and in January

---

[4] The FAC alleges that this second deed of trust as to the Harper Property was issued in November 2020, which is before the first deed of trust was allegedly issued in June 2021. *See* FAC ¶¶ 39, 41. This may be an error. In any case, the exact order of these transactions has no impact on the Court's holding in this Order.

[5] The initial complaint stated that Brown purchased the Harper Property in November of 2020. *See* Previous Order at 2, *see also* ECF No. 1 at 2.

[6] Brown's FAC states that "had [Brown] been aware that [Smead] intended to foreclose on Harper's first deed of trust the following month, he would not have willingly facilitated the assignment of that deed of trust." *See* FAC ¶ 48. The FAC does not explain what "Harper's first deed of trust" is, or that any deed of trust was assigned shortly before Smead indicated that he would foreclose. *See id.* However, the initial complaint alleged that there was a seller's deed of trust on the Harper Property (in addition to Smead's deed of trust) and Smead acquired that seller's deed of trust in July of 2022. *See* Previous Order at 3, *see also* ECF No. 1 at 3.

2023, Brown lost his ownership the Malibu Property, Utah Property, and Harper Property.[7] *See id.* ¶ 50.

As part of his ownership in the Malibu Property, Brown owned a share in the Malibu La Costa Owners Association ("MLCOA"), an association with shares tied to ownership of specific properties. *See id.* ¶ 51. MLCOA has a total appraised value of $30,000,000, making each share worth approximately $125,392.48. *See id.* Shareholders have access to a beach club. *See id.* ¶ 52. In June 2023, Smead caused MLCOA to revoke Brown's share and revoke Brown's access to the beach club. *See id.*

Smead issued the deeds of trust because he was interested in Brown's plans to develop solar farm businesses. *See id.* ¶ 57. Smead expected to profit from Brown's businesses. *See id.* ¶ 67. Brown and Smead communicated extensively via email, text, and phone calls between 2020 and 2023. *See id.* ¶¶ 59, 60.

### B. Procedural History

Brown's FAC brings two causes of action: (1) unregistered offers and sales of securities in violation of federal law; and (2) use of insider information in connection with the offer or sale of an unregistered security in violation of Rule 10b-5. *See* FAC.

The Court issued its Previous Order granting Smead's first Motion to Dismiss on December 6, 2023. *See* Previous Order. To summarize, the Court held in its Previous Order that all of the claims in Brown's initial complaint required (among other elements) that Brown allege that a security was sold, and that Brown had not alleged that any of the transactions at issue constituted the sale of a security. *See id.* at 10–15. The Court granted Brown leave to amend his complaint. *See id.* at 15.

Brown filed his FAC on January 1, 2024. *See* FAC. Smead filed the instant Motion to Dismiss on January 13, 2024, along with a Memorandum of Points and Authorities. *See* ECF No. 42 ("Motion" or "Mot."), ECF No. 42-1 ("MPA"). Brown filed an Opposition to the Motion on January

---

[7] The FAC simply states that Brown lost the "properties" and does not specifically identify which, but the Court understands this allegation as related to all three of the properties that Brown owned and on which Smead held deeds of trust—the Malibu Property, the Utah Property, and the Harper Property. *See* FAC ¶ 50.

17, 2024. *See* ECF No. 43 ("Opposition" or "Opp'n"). Smead filed a Reply in Support of the Motion on January 22, 2024. *See* ECF No. 45 ("Reply").

Brown filed a Proposed Order Denying the Motion to Dismiss on January 29, 2024. ECF No. 46. Smead filed a Reply to Brown's Proposed Order on January 31, 2024, in which Smead objected that Brown was using the Proposed Order to make additional legal arguments, and thus the purported proposed order was effectively an unauthorized sur-reply. *See* ECF No. 47.

Brown filed a Declaration from non-party Sean Chaudhuri on May 18, 2024. *See* ECF No. 48 ("Chaudhuri Declaration" or "Chaudhuri Decl."). Smead filed an Opposition to this Declaration on May 24, 2024, in which Brown was using the Declaration to file an additional unauthorized sur-reply. *See* ECF No. 49. Brown filed a Reply to this Opposition on June 1, 2024, in which Brown argued that the Declaration "supports the Plaintiff's allegations" and could not have been previously filed because it was based upon recent events. *See* ECF No. 50.

The Court held a hearing on the Motion on June 6, 2024.

The parties made the following additional filings while the motion was pending. Brown filed a Request for Judicial Notice on June 7, 2024.[8] *See* ECF No. 55. Defendants filed an Opposition to Brown's Request for Judicial Notice on June 12, 2024. *See* ECF No. 56. Brown filed a motion requesting the Court lift the stay of discovery for a limited purpose on June 20, 2024. *See* ECF No. 57. Smead filed an Opposition to Brown's motion regarding discovery on June 28, 2024. *See* ECF No. 61. Brown filed a request for extension of time to file his reply on July 3, 2024,[9] and then filed a reply on July 5, 2024. *See* ECF Nos. 63, 64. Brown also filed two essentially identical notices of

---

[8] Brown requests judicial notice of the fact that public data shows that Smead has entered into a contract to sell the Malibu Property for $550,000, which is significantly more than Brown initially paid for it (before Smead took control via foreclosure). Because this a Motion to Dismiss pursuant to Rule 12(b)(6), the Court cannot consider "any material beyond the pleadings"—in other words, the Court cannot consider facts not included in the complaint. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). Thus, even though this fact might generally be subject to judicial notice, the Court cannot take judicial notice of it here. The Request for Judicial Notice (ECF No. 55) is therefore DENIED.

[9] Because Brown filed his reply before the Court ruled on the request for extension of time, and because the Court need not reach the issue of whether the consider the reply (and therefore need not consider whether to retroactively grant the extension), the request for extension of time (ECF No. 63) is DENIED AS MOOT.

supplemental authority related to the instant Motion on June 28, 2024, which discussed the recent Supreme Court case *Securities & Exchange. Commission v. Jarkesy*, 144 S. Ct. 2117 (2024). *See* ECF Nos. 61, 62. On July 18, 2024, Brown filed a Notice indicating that he intends to file a motion for leave to amend. *See* ECF No. 68. Brown filed an amended complaint on July 28, 2024. *See* ECF No. 69.

## II.     **Applicable Law**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Moreover, Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, the "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). Additionally, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### III. Discussion

The Court finds that Brown has failed to state a claim upon which relief can be granted, as discussed in further detail below, and thus the Motion will be GRANTED.

#### A. Scope of Documents Considered

At the outset, the Court wishes to clarify what the Court may consider in deciding this Motion. Smead objects to Brown's Proposed Order and the Chaudhuri Declaration and requests that they be stricken. *See* ECF Nos. 47, 49.

As discussed above, in order for a motion to dismiss to be denied, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678. As a "general rule," a court reviewing a motion to dismiss "may not consider any material beyond the pleadings," that is, beyond the operative version of the complaint. *See Lee*, 250 F.3d at 679. There are exceptions for documents that are submitted with and attached to the complaint, or for documents that are referenced in the complaint and central to it, but documents that do not fall into these exceptions may not be considered. *See id.*

Here, the Chaudhuri Declaration cannot be considered. Brown filed the Chaudhuri Declaration months after filing his FAC. *See* FAC (filed January 1, 2024); Chaudhuri Decl. (filed May 18, 2024). The Chaudhuri Declaration was neither attached to the FAC nor referenced in the FAC. *See* FAC. Thus, the Chaudhuri Declaration cannot be considered. It is not appropriate for a plaintiff to use a declaration to bolster the plaintiff's factual allegations in opposing a motion to dismiss. To the extent that the declaration is intended to show that the allegations are true, this is unnecessary, as the Court is generally required to accept the factual allegations in the operative complaint as true. *See Park v. Thompson*, 851 F.3d at 918. And to the extent that the declaration is intended to add further facts, the plaintiff should seek to amend his or her complaint rather than alleging further facts in a declaration. The Court will not consider the Chaudhuri Declaration in deciding this Motion. The Court does not find it necessary to strike this Declaration as Smead

requests, and Smead has not fully explained any basis on which it might be stricken (*see* ECF No. 49), but nevertheless will not consider it here. Nor can the Court consider Brown's recently-filed Request for Judicial Notice (ECF No. 55). *See supra*, n.8.

The Court also will not strike Brown's Proposed Order. In this district, parties opposing a motion are prohibited from filing a sur-reply without the Court's leave. *See* C.D. Cal. L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply."). Parties are required to file proposed orders when filing motions. *See* C.D. Cal. L.R. 52-4.1 ("A separate proposed order shall be submitted with any stipulation, application, motion, or request of the parties requiring an order of the court"). Parties are not required to file proposed orders in opposing a motion, but there is no local rule prohibiting a party from doing so, and it is not unheard-of for a party opposing a motion to file a proposed order denying the motion. Although the Court understands Smead's position that the purported Proposed Order was a means through which Brown made additional legal arguments, having reviewed the Proposed Order, the Court reads Brown's Proposed Order as a proposed order intended to aid the Court, not as a sur-reply. Thus, the Court will not strike it. The Court's consideration of the Proposed Order has little impact on the disposition of the Motion.

The Court also notes that both parties accused each other of failing to follow the local rules in their various filings. *See, e.g.*, Opp'n at 43 (Brown stated that Smead's Motion was filed as a non-searchable PDF); Reply at 2 (Smead stated Brown failed to file his Opposition on pleading paper). First, and most importantly, the Court admonishes both parties to be civil in their filings, and to focus on the legal issues, not on arguments over filing technicalities. To the extent that these issues need clarification, the Court notes that (1) PDFs filed electronically should be in text-searchable form (*see* C.D. Cal. L.R. 5-4) and (2) documents filed before the Court should generally be on paper with numbered lines on the left margin and with number pages (*see* C.D. Cal. L.R. 11-3-2, 11-3-3). The Court admonishes both parties to review the Court's Standing Order, the Local Rules, and the Federal Rules of Civil Procedure, and to follow them for the remainder of this action. The Court will not strike any filing at this time for non-compliance, but if future filings are submitted as non-

searchable PDFs or without proper numbering and pagination, the Court may strike such filings and refuse to consider them.

Finally, the Court notes that Brown's FAC contains numerous allegations suggesting that a Declaration that Smead signed and filed in connection with previous motion practice was false. *See, e.g.*, FAC ¶¶ 66–68.

### B. Brown's Claims Require that Brown Allege the Sale of a Security

The Court previously held, in analyzing Brown's initial complaint, that all of the claims Brown initially brought required that Brown allege that a security was sold. The claims in the FAC are slightly different than those previously analyzed, and so the Court will look at this question again. But the Court reaches the same conclusion—all of Brown's claims require that he allege that a security was sold or offered to be sold.

First, the Court finds that Brown's cause of action for unregistered offers and sales of securities requires that a security was sold or offered to be sold. Brown's cause of action is, per his FAC, based on a purported violation of "Section 5(a)," which the Court understands as a reference to Section 5 of the Securities Act of 1933. *See* 15 U.S.C. § 77e. "Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), (c), make it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration." *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). Three elements are required to show establish a prima facie case for violation of Section 5: "(1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *Id.* As the second element makes clear, this claim requires that the defendant sold, or offered to sell, securities. *See id.* If no security was sold or offered to be sold, there is no claim under this cause of action.

Second, the Court finds that Brown's cause of action for use of insider information in connection with the offer or sale of an unregistered security in violation of Rule 10b-5 requires that a security was sold. "Section 10(b) and Rule 10b–5 prohibit deceptive practices 'in connection with the purchase or sale of any security.'" *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir.

1997). The Supreme Court has "interpreted this restriction to limit relief under Rule 10b–5 to plaintiffs who had either purchased or sold securities." *Id.* (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733–34 (1975)). Thus, this claim also requires that Brown allege that some security was sold, and there can be no claim absent such an allegation.

### C. Brown Has Not Alleged the Offer or Sale of Any Security by Smead or to Smead

The Court previously held that Brown's allegations—that Smead and Brown executed deeds of trust and various parcels of property—did not constitute allegations that securities were bought or sold. The Court finds the same here, for essentially the same reasons. The Court will briefly restate its analysis.

A "security," as used in the Securities Act, includes "commonly known documents traded for speculation or investment" and "securities of a more variable character," including "investment contract[s]." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946); see also 15 U.S.C.A. § 77b (defining "security"). These can include "notes" or "investment contracts." *See id.* at 298; *see also See Reves v. Ernst & Young*, 494 U.S. 56, 64 (1990) (discussing notes).

       *i.  The transactions are not securities based on being notes.*

To determine whether a note constitutes a security, courts use a "family resemblance test" which "begins with a presumption that any note with a term of more than nine months is a 'security,'" but "permits an issuer to rebut the presumption that a note is a security if it can show that the note in question bears a strong family resemblance to an item on the judicially crafted list of exceptions." *Id.* at 64. The judicially crafted list of exceptions referenced by the Supreme Court in *Reves* came from the Second Circuit's holding in *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1137 (2d Cir. 1976), where the Second Circuit held that examples of a note which are not securities include "the note secured by a mortgage on a home" and "the short-term note secured by a lien on a small business or some of its assets." *Exchange Nat. Bank of Chicago*, 544 F.2d at 1138. Courts should assess several factors in determining whether a note bears a family resemblance to a category of exceptions, or whether a new category should be added to the list of exceptions. *Reves*, 494 U.S. at 66. First, courts should assess "the motivations that would prompt a reasonable seller and buyer to enter into" the note in question, including whether the buyer

1  of the note anticipates sharing "in the profit the note is expected to generate." *Id.* Second, courts
2  should analyze the "plan of distribution" and whether there is "trading for speculation or
3  investment." *Id.* Third, courts should "examine the reasonable expectations of the investing public."
4  *Id.* Finally, courts should "examine whether some factor such as the existence of another regulatory
5  scheme significantly reduces the risk of the instrument, thereby rendering application of the
6  Securities Acts unnecessary." *Id.*

7        Here, the Court finds that all of the deeds of trust were not securities. None of the allegations
8  in the FAC change the Court's previous analysis of this issue. Brown borrowed money from Smead,
9  secured by property, with a promise to repay the money at some predetermined time, and Smead had
10 a right to take the property if the Brown failed to pay the borrowed amount at the predetermined
11 time. At the outset, this resembles a mortgage on a home, which is an exception where a note is not a
12 security. *See Exchange Nat. Bank of Chicago*, 544 F.2d at 1138. Although one plausible inference is
13 that Smead expected to be repaid via money that Brown would earn through investing, and so
14 Smead's motivation may have been to share "in the profit the note is expected to generate," this
15 alone is not dispositive. *See Reves*, 494 U.S. at 66. The Court sees no allegations from which the
16 Court can conclude that there was any anticipated plan of distribution for these notes, or that the
17 reasonable expectation of the investing public (or the specific parties here) was that these notes
18 would be treated as securities. *See id.* The factors as a whole point against finding these deeds of
19 trust to be securities.

20       *ii.  The transactions are not securities based on being investment contracts.*

21       An "investment contract" is "a contract, transaction or scheme whereby a person invests his
22 money in a common enterprise and is led to expect profits solely from the efforts of the promoter or
23 a third party." *Howey*, 328 U.S. 293, 297 (1946). Such a contract is generally a security. However,
24 not all arrangements that meet Howey's broad definition of an investment contract are securities. *See*
25 *Marine Bank v. Weaver*, 455 U.S. 551, 559–60 (1982). Congress intended the securities laws to cover
26 those instruments ordinarily and commonly considered to be securities in the commercial world,"
27 and the securities law do not apply to instruments which are "not the type of instrument that comes
28 to mind when the term 'security' is used and do not fall within "the ordinary concept of a security."

*Id.* at 559. Instruments found to be securities generally "involve[] offers to a number of potential investors," and are not "private transaction[s]." *Id.* Here, to the extent that there was any pooling of money whereby Smead expected to profit from Brown's efforts,[10] the transactions in questions would still not constitutes securities based on the Supreme Court's guidance in *Marine Bank*. The transactions were never offered to the general public, and even drawing all inferences in favor of Brown, there was no expectation that the agreements entered into were designed to be traded publicly. This was a unique private transaction (or series of unique private transactions) between private parties. Therefore although it might appear to be an investment contract under *Howey*, it is not the sort of instrument "that comes to mind when the term 'security' is used and does not fall within 'the ordinary concept of a security.'" *Marine Bank v. Weaver*, 455 U.S. at 559. Thus, these transactions were not securities.

       iii.    *Brown's other arguments fail.*

In the hearing, Brown stressed that the Court must examine the transactions in their full context. Brown argued that the transactions were not just a mortgage, and rather was a situation where Smead took interest in Brown's business, sought to profit from Brown, and offered misleading transactions with the intention of taking control. But to the extent that this description may be accurate, it does not in and of itself bring the transaction with federal securities laws for the reasons discussed above.[11]

Brown also emphasized that securities laws are meant to apply to forms of fraud not covered by other laws. While this broad statement may be true, the Court finds that the laws were not intended to cover the claims at issue here—Congress did not intent for the securities laws to cover *every* form of fraud.

---

[10] The Court makes no finding on whether the deed of trust could be considered pooling of money.

[11] Brown stated in the hearing that if the Court finds that Smead's purported scheme was not securities fraud, Brown will use the same purported scheme on some other victim—which Brown described as first loaning money to an ambitious developer, using deeds of trust to take ownership while allowing the developer to keep working, assuring the developer that missed payments will be forgiven and work should continue even when the developer is behind on payments, and then foreclosing on the property once it appreciates in value. While Brown's description of the purported scheme makes it sound distasteful and possibly fraudulent, the Court finds that the scheme did not include anything that constitutes the sale of a security.

Brown's citation to *Jarkesy* is also unavailing. In *Jarkesy*, the Supreme Court held that "the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for securities fraud." *Jarkesy*, 144 S. Ct. at 2127. This holding does not suggest that every civil case with alleged securities fraud must go all of the way to trial, instead, it means that when cases reach the trial stage, a defendant is entitled to a trial *by jury* as opposed to a bench trial by an administrative law judge. *See id.* at 2124. Nothing in *Jarkesy* suggests that the typical standard on a motion to dismiss—where a plaintiff must state a claim upon which relief can be granted or face dismissal of his or her suit—is any different in a case involving allegations of securities fraud.

Thus, all of the claims fail as pleaded.[12]

The Court also notes that Brown has alleged that his ownership share in MLCOA was a security. *See* FAC ¶¶ 51, 52. While this may be the case, the Court need not reach this issue—Brown has not alleged that Smead purchased, sold, or offered to purchase or sell any shares in MLCOA. Instead, Brown merely alleges that Smead caused a third party organization to cancel Brown's shares and deny Brown access to the beach club. *See id.* ¶ 52. Thus, even assuming that these shares are securities, the shares cannot give rise to liability against Smead for the causes of action Brown brings.

In a tentative ruling shared with the parties in advance of the hearing, the Court indicated that it was inclined to grant Brown leave to amend his complaint, as it might be possible for Brown to adduce further facts to permit the Court to find that the sale of security element has been properly pleaded. See Manzarek, 519 F.3d at 1031. At the hearing, Brown indicated that he has no desire to further amend his complaint and does not believe that he could allege further facts to state a claim if the Court interprets the law as indicated in the tentative ruling. Brown therefore requested that if the claims are dismissed (which Brown argued they should not be), dismissal should be with prejudice. Accordingly, the Court will not grant Brown leave to amend.

---

[12] The Court need not reach the other elements of these claims. But the parties should note that these claims require other elements as well, *see* Previous Order at 15 n.8, and the parties should not read this Order as a finding that Brown's failure to plead the sale or offer of sale of a security is necessarily the only shortcoming in his claims as pleaded.

13

However, while the motion was pending, Brown filed a Notice indicating that he intends to file a motion for leave to amend. *See* ECF No. 68 (explaining that "Plaintiff will file a Motion for Leave to Amend . . . in due course," and explaining basis for motion). Brown then filed a "Relate Back Amendment" on July 28, 2024. *See* ECF No. 69.

The Court will issue this Order based on Brown's representations at the hearing—Brown is not granted leave to amend his claims at this time.[13] However, Brown may bring a motion for leave to amend, which must include a showing as to why leave to amend is warranted. Such a motion must be brought within thirty (30) days of this Order as described in the conclusion.[14]

Because Brown currently has no claims pending, the Court finds that Brown's pending motion regarding discovery (ECF No. 57) is DENIED AS MOOT WITHOUT PREJUDICE. Brown may reassert that motion in the event that his forthcoming motion for leave to amend is granted.

## IV. Conclusion

For the reasons stated herein, the Court ORDERS as follows:

1. Smead's Motion to Dismiss (ECF No. 42) is GRANTED.
2. Brown's Request for Judicial Notice (ECF No. 55) is DENIED.
3. Brown's Motion for a Partial Lift of the Stay of Discovery (ECF No. 57) is DENIED AS MOOT WITHOUT PREJUDICE.
4. Brown's Request for an Extension of Time to File a Reply regarding his Motion for a Partial Lift of the Stay of Discovery (ECF No. 63) is DENIED AS MOOT.
5. Brown's claims as pleaded are DISMISSED WITHOUT LEAVE TO AMEND.
6. Brown is granted thirty (30) days from the date of this Order to file a motion for leave to amend or a statement that he stands on his Notice of Proposed Motion and Relate Back

---

[13] Although Brown has filed an amended complaint, he was not permitted to do so without the Court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2) (a party may amend a pleading as of right "21 days after serving it" or "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12").

[14] The Court's understanding is that neither of Brown's recent filings—the "Notice of Proposed Motion" (ECF No. 68) and the "Relate Back Amendment"—were intended to be a motion for leave to amend, although they contained some degree of argument as to why amendment should be permitted. If Brown wishes to stand on these filings and not file any further motion, he should file a statement that this is his position within thirty (30) days of this Order.

Amendment. In the event that such a motion or statement is not filed, the action shall be considered dismissed as of thirty-one (31) days from the date of this Order.

IT IS SO ORDERED.

Dated: September 27, 2024

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge