JOINTLY SUBMITTED BY:

Clinton Brown, *Self-Represented*
1431 Ocean Ave, Unit 413
Santa Monica, CA  90401
clinton@atlasinc.solar
310-775-7990

Fred Hickman (#124406)
fredhickman@gmail.com
17602 17th St Ste 102-206
Tustin CA 92780
714-315-1565; fax 714-838-0835

Attorney for: Defendant Steve Smead

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CLINTON BROWN,<br>          PLAINTIFF,<br>VS.<br>STEVE SMEAD,<br>          DEFENDANTS. | Case No.: 2:23-cv-02938-MEMF(KSx)<br><br>JOINT RULE 26(f) REPORT<br><br>SCHED CONF. DATE: JUNE 12, 2025<br>TIME: 10:00 A.M.<br>CTRM: 8B |

The parties submit this joint report pursuant to the Order Setting Scheduling Conference [Doc. 97] filed 04/09/25. The matters addressed here are as specified in Rule 26(f), Local Rule 26, and the Order Setting Scheduling Conference. Rule 26(f)(1).

The Rule 26(f) conference occurred by telephone on May 5, 2025. The initial disclosures will be made by May 19, 2025, as required by Rule 26(1)(C).

The parties extensively discussed a discovery plan and what depositions, documents, and evidence will be sought in discovery.

The parties discussed the matters required by L.R. 26-1, and agreed as follows.

(a). This is not a complex case.

(b). Defendant intends to file a dispositive motions, a motion for summary judgment or for partial summary adjudication in the alternative, and with a proposed last day to hear such motions of March 26, 2026, intends to file that motion 63 days before the hearing, as required by Jan. 22, 2026. Plaintiff has not determined whether he will be filing a dispositive motion.

(c). The parties agree to the ADR procedure of the Court Mediation Panel.

(d). The parties estimate a three-day trial, though Plaintiff requests a jury trial, and that may lengthen the duration of the trial.

And under the Court's Scheduling Conference Order, the parties address the following matters.

A.   STATEMENT OF THE CASE.

**PLAINTIFF'S STATEMENT.** This case arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a) and (c), and concerns Defendant Steve Smead's use of a private lending enterprise to issue and collect unlawful debt, then reinvest those proceeds to acquire Plaintiff's real properties through foreclosure. Plaintiff Clinton Brown alleges that Defendant charged usurious interest rates far in excess of the legal limits set by California law, collected unrecorded payments outside of escrow, and then used the proceeds from that unlawful debt to foreclose on Plaintiff's real properties in California and Utah. The Defendant's conduct, which was part of an association-in-fact enterprise involving escrow agents, title companies, foreclosure trustees, and others, directly caused Plaintiff to lose three valuable properties and suffer over $6 million in economic harm.

Loan 1 (Harper Lake, CA): Defendant loaned $150,000 to Plaintiff in 2020 and demanded an additional $150,000 in unrecorded interest, bringing the effective rate to over 108%—more than ten times the California constitutional limit. Although title companies refused to record the inflated terms, Defendant enforced them through side agreements and collected both recorded and unrecorded interest monthly.

Loan 2 (Black Rock Cutoff, Utah): This loan was issued in Utah but was funded with proceeds from the same unlawful California interest charges. Defendant directed the recording of $100,000 in interest from the first loan onto the Utah loan under false pretenses, and then used that loan structure to foreclose on Plaintiff's property—causing him to lose access to a solar development project worth over $6 million.

Loan 3 (Malibu, CA): The same $150,000 in unlawful interest from the first loan was recycled into this third transaction. Defendant demanded that Plaintiff tie $50,000 in unrecorded interest from prior loans to the Malibu property as a condition of forbearance, causing Plaintiff to incur further obligations that exceeded lawful rates and ultimately resulted in a third foreclosure.

Plaintiff contends that all three loans involved interest far in excess of California's constitutional limit of 10%, in violation of 18 U.S.C. § 1961(6), which defines "unlawful debt." Plaintiff further alleges that Defendant used income derived from these unlawful debts to fund and complete foreclosure processes, thereby acquiring Plaintiff's properties in violation of 18 § 1962(a), and conducted this activity as part of a broader enterprise in violation of 18 § 1962(c).

Defendant's defenses—that the loans were legal under California or Utah law, or that Plaintiff engineered the loans—are legally and factually unsupported. Even if Plaintiff participated in structuring the loans, the issuance and collection of unlawful debt under RICO focuses on the lender's conduct and the usurious nature of the loan itself. RICO liability does not depend on the borrower's consent or

knowledge. Exemptions under Cal. Civ. Code § 1916.1 do not apply to unrecorded, off-the-books interest obligations enforced outside escrow.

At bottom, this case asks a straightforward question: Can a private lender charge interest rates that exceed 100%, collect those funds through side agreements, and use that money to seize property—all without consequence? The answer under RICO is no. Thus, Plaintiff seeks treble damages and statutory relief as authorized by 18 U.S.C. § 1964(c).

**DEFENDANT'S STATEMENT**.

Defenses: The facts alleged, and as understood by defense counsel suggest that this RICO case is based on the claim that defendant charged to plaintiff double a lawful cap on a usury rate. Not so. There were three loans. No usury law was violated. Further, the foreclosures of the three properties securing the loans was for failure to make interest payments or to pay property taxes.

A. Loan 1. A real estate secured loan on vacant land located in Malibu, California. Brokered by a licensed California real estate broker representing Plaintiff, this was exempt from usury limitations by *Cal. Civil Code* § 1916.1.

B. Loan 2 was a real estate secured loan on vacant land in San Bernardino County, and was at a stated fixed rate of 8 % per annum, within the California usury law limit of 10%.

C. Loan 3 was a real estate secured loan made in the Utah, under Utah law, secured by vacant land in Utah. The State of Utah does not have a usury limitation on loans primarily for business and/or commercial purposes with a stated rate. The promissory note for Loan 3 provided for a loan amount of $200,000, at the stated rate of 10%. Loan 3 was a business purpose loan on commercial property. This loan was lawful under Utah Code 15-1-1 (1), which states:

> The parties to a lawful written, verbal, or implied contract may agree upon any rate of interest for the contract, including a contract for services, a loan or forbearance of any money, goods, or services, or a claim for breach of contract.

Loan 3 is excluded by Utah law from application of its Consumer Credit law with its usury limitations, as a business purpose commercial loan secured by vacant land.[1]

Accordingly, no usury on any of the three loans was charged. Thus, the threshold of double the lawful usury rate under RICO is not met. There was no usury charged, under applicable law.

Affirmative Defenses.

First. Privilege. Defendant had the right to protect his economic interests. Second and Third. Equitable Estoppel and Lack of Clean Hands. Plaintiff is a California licensed real estate broker, and was at all pertinent times. He solicited these loans from Defendant on the terms that Plaintiff himself proposed. Plaintiff took advantage of Defendant using his superior knowledge. Plaintiff also committed misconduct in communications to intimidate Defendant unlawfully. Fourth. Setoff. On the San Bernardino property and loan: Defendant was left with a large uncollectible debt on the first priority loan which Defendant had to buy to prevent Plaintiff's default on the first priority loan: due and owing over $400,000.

In an amended Answer which Defendant may assert the two more affirmative defenses: Failure to Mitigate and *In Pari Delicto*.

---

[1] The Utah Consumer Credit law does not apply to loans such as this. The Utah Consumer Credit Code, 70C-1-302 (4) excludes from the definition of "Creditor" one who makes a real estate secured loan on vacant land for business purposes. That law exempts commercial loans and those not secured by dwellings of a consumer. Utah Code 70C-1-202(2). Utah's statute 70C-1-301 provides that the definitions of federal regulation Z apply to its consumer credit law. Regulation Z, 12 C.F.R. § 1026.2 (12) provides that "Consumer credit means credit offered or extended to a consumer primarily for persona, family, or household purposes." And Regulation Z definition of "Consumer" excludes Plaintiff on this loan: "Consumer means a cardholder or natural person to whom consumer credit is offered or extended." (The definition includes also only a natural person financing a dwelling, who has a loan rescission right under Regulation Z). Also, though this issued does not need to be reached, Utah's consumer credit law applies only to residents of Utah, which Plaintiff was not.

B. SUBJECT MATTER JURSIDICTION. Jurisdiction exists as this case is framed on alleged violation of RICO, 18 U.S.C. § 1961-1968; the jurisdictional statute being 28 U.S.C. § 1331.

Defendant maintains that jurisdiction does not exist because there is no injury in fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).

Plaintiff rests subject matter jurisdiction upon 18 U.S.C. § 1964(c).

C. LEGAL ISSUES.

**PLAINTIFF'S STATEMENT.**

This case presents legal issues under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a) and (c), centered on whether Defendant issued and collected interest on loans that qualify as "unlawful debt" under 18 U.S.C. § 1961(6), and whether income derived from such debt was then used to foreclose on Plaintiff's properties.

Key legal issues include:

1. Whether the loans at issue exceeded twice the applicable legal interest rate and thus constitute "unlawful debt" under § 1961(6);
2. Whether Defendant's use of proceeds from those debts to fund foreclosure proceedings violated § 1962(a);
3. Whether Defendant conducted or participated in the affairs of an enterprise affecting interstate commerce through the collection of unlawful debt in violation of § 1962(c);
4. Whether common-law affirmative defenses such as *setoff* or *in pari delicto* can bar a civil RICO claim premised on unlawful debt.

Plaintiff maintains that equitable defenses cannot override or nullify the private right of action created by Congress under 18 U.S.C. § 1964(c). RICO liability for unlawful debt turns on the nature of the debt itself—not the borrower's consent,

intent, or repayment ability. Usurious terms that exceed legal thresholds are statutorily actionable regardless of borrower conduct.

**DEFENDANT'S STATEMENT.**

The only basis for a RICO claim on these facts is alleged double usurious interest under any applicable law, which would violate 18 U.S.C. § 1962(c), the collection of "unlawful debt." This did not occur, as the one California loan that exceeded a 10% rate had the blessing of the usury exemption of Civil Code § 1961(1), a real estate secured loan brokered by a license broker. The San Bernardino loan was under the usury rate, being at 8%. And the Utah loan had no usury limit applicable under Utah law. Thus, usury did not occur, let alone RICO's threshold of "double" the applicable usury limit of governing law. Also, as to the affirmative defenses, Privilege, Equitable Estoppel, Lack of Clean Hands, and Setoff, these are addressed above in Defendant's Statement of the Case.

D.   DAMAGES.

PLAINTIFF'S STATEMENT.

Plaintiff seeks economic damages for injury to his business and property under 18 U.S.C. § 1964(c), based on Defendant's use and collection of unlawful debt in violation of 18 U.S.C. §§ 1962(a) and (c). Plaintiff claims $6,135,068.21 in lost profits from the Utah solar development project and $1,790,000 in property loss from foreclosures, for a total of $7,925,068.21. Under RICO's treble damages provision, Plaintiff seeks $23,775,204.63, plus attorneys' fees, costs, and interest. Plaintiff maintains that equitable doctrines like setoff and unclean hands do not apply to or override the statutory directive of RICO.

DEFENDANT'S STATEMENT. There were no damages because there was no usury, and no RICO violation. Plaintiff made only small interest payments, and never attempted to cure the defaults, nor did he pay off the loans. His damages claims have no basis in legal reality. Defendant's Setoff Claim would not come into play if Plaintiff has no legally compensable damages. But if Plaintiff proves

damages under RICO, his only claim, then the setoff claim is in the amount due under the uncollectible note now exceeding the amount of $400,000. This was discussed above in Defendant's Statement of the Case.

E.   PARTIES AND EVIDENCE.

No additional parties are thought to be added to this suit by either party.

**PLAINTIFF'S STATEMENT**.

The current parties are Plaintiff Clinton Brown, a self-represented individual, and Defendant Steve Smead, an alleged private lender. No additional parties are expected at this time; however, Plaintiff reserves the right to seek joinder of additional individuals or entities if discovery reveals further participants in the alleged enterprise under 18 U.S.C. § 1962.

Key percipient witnesses include:

Clinton Brown (Plaintiff): Will testify regarding the loan transactions, interest payments, and the impact of the foreclosures on his business and property.

Steve Smead (Defendant): Alleged to have issued and collected unlawful debt and used the proceeds to acquire Plaintiff's properties.

Smead's son: Believed to have knowledge of Defendant's lending practices, recordkeeping, or involvement in enterprise-related transactions.

Erick Ordaz: Witness to the loan negotiations and unrecorded interest terms, relevant to the unlawful debt element under 18 § 1961(6).

Sean Chaudhuri: Expected to testify regarding Plaintiff's exclusion from the HST solar project, which supports Plaintiff's damages claim under § 1964(c).

Key documents include:

Promissory notes, escrow records, foreclosure filings, wire transfer receipts, and tax documents such as Schedules C or E, to the extent they reflect reported interest income. Plaintiff also identifies a ledger and correspondences referencing unrecorded interest obligations or payments outside of escrow, which Plaintiff

contends support the allegation of "unlawful debt" under 18 U.S.C. § 1961(6). Text messages and emails referencing interest terms, collection practices, or any discussion of usury are also relevant and discoverable. Additional bank records or transactional data may be sought if discovery reveals the use of other accounts in the issuance, collection or reinvestment of unlawful interest proceeds. In all document requests, Plaintiff intends to "follow the money," as this civil RICO action is brought under a statute that authorizes private citizens to serve as "private attorneys general" in combating the issuance, collection and use of unlawful debt.

**DEFENDANT'S STATEMENT.**

Witnesses:

1. Steve Smead, Defendant, may be contacted through counsel of record.
2. Clinton Brown, adverse witness, Plaintiff.
3. Chicago Title Company. 560 E. Hospitality Ln. San Bernardino, CA 92408.  Escrow Officer Corbi Smith. 800-722-0824
4. e-escrow, Inc.  2501 N. Sepulveda Blvd. Suite 110 Manhattan Beach, CA 90266
5. e-escrow agent Diane Truong 310-802-1888.
6. Exact Escrow. 1025 Sentinel Dr. #106 La Verne,  CA 91750, Escrow officer Shannon Packard.  909-542-0162.
7. FMC Lending Company Inc. 380 Beach Road, Suite D Burlingame CA 94010  PH #888-995-3639.
8. Chet Simper, 1641 West 1500 South, Delta, UT 84624. 435-406-5954.
9. Peak Foreclosure Services, Inc 5900 Canoga Ave, Suite 220 Woodland Hills, CA 91367. Lilian Solano Trustee Sale officer. 818-591-9237.
10. Superior Loan Servicing. 7525 Topanga Canyon Blvd.  Canoga Park,  CA. 91303.  888-587-9757.
11. Superior Loan Servicing, Asset Default Management, Inc., Mindy Levine. 7525 Topanga Canyon Blvd.  Canoga Park,  CA. 91303818-483-0027.

JOINT RULE 26 REPORT

BROWN VS. SMEAD 23-cv-02938

9

12. Title First Title Insurance Agency, LLC. 190 N 100 E., P.O. BOX 849, Beaver UT 84713, 3146 5 N. Main St., St. Beaver UT. Escrow #21064364. Escrow Officer Jeremy R. Gale. (435) 438-5621.

Documents: 1. Promissory notes and deeds of trust on the three loans, including the loan consolidated on Malibu loan and the loan bought on San Bernardino. 2. Servicing records showing payments made by Plaintiff on the three loans, account statements and notices. 3. Emails between Plaintiff and Defendant. 4. Notices of Default and Election to Sell, Notices of Trustee's Sale Trustee's Deeds Upon Sale on the three properties foreclosed upon. 5. Real estate broker licensing data on FMC Lending Company, Inc., and on Plaintiff.

F.   INSURANCE.

No insurance coverage is applicable.

G.   MANUAL FOR COMPLEX LITIGATION.

The procedures should not be used as the case is not complex.

H.   MOTIONS.

Plaintiff has not yet determined whether he will file any motions. Defendant file a motion to seek leave to amend his Answer to include an affirmative defense of *In Pari Delicto*. Defendant intends to file a motion for summary judgment or in the alternative partial summary judgment.

I.   DISPOSITIVE MOTIONS.

Defendant intends to file a motion for summary judgment or in the alternative partial summary judgment. Plaintiff has not yet determined whether to file a dispositive motion.

J.   STATUS OF DISCOVERY. No discovery has been conducted. The parties intended to make their initial exchange by May 19, 2025. The only discovery dispute presently anticipated is the tax return privilege that Defendant intends to invoke against Plaintiff's intended discovery of the income information

set forth in Defendant's federal or state tax returns during the period when payments were made on the loans.

**Plaintiff's Position**: Plaintiff seeks limited line-item(s) discovery of Defendant's tax returns solely to determine whether interest payments on the subject loans were reported as income. This inquiry is central to Plaintiff's RICO claim under 18 U.S.C. § 1962(a), which requires evidence of income derived from unlawful debt. In any event, tax returns are not formally privileged. *See S.E.C. v. Garber*, 990 F. Supp. 2d 462, 466 (S.D.N.Y. 2014).

K.   DISCOVERY PLAN.

No changes are believed to be needed in the voluntary disclosures contemplated by Rule 26(a). The parties do not believe that the discovery needs to be conducted in phases, or to otherwise be limited or imposed. (But for the issue of tax return privilege addressed above, in J. Other discovery orders from the court are not believed to be necessary at this time.)

**Plaintiff's Detailed Plan:**

Plaintiff's discovery will focus on tracing the flow of funds from Plaintiff's interest payments to their use in acquiring his properties—issues central to the claims under 18 U.S.C. § 1962(a) and (c). Plaintiff intends to take depositions of Defendant and Defendant's son, and to propound document requests and interrogatories. Plaintiff specifically seeks Defendant's business ledger, bookkeeping records, and payment histories showing how interest and charges were recorded, categorized, and applied. Plaintiff also seeks evidence supporting the approximately $150,000 in unrecorded and allegedly usurious interest, and any communications or documents referencing these amounts.

Plaintiff will request tax filings (*e.g.*, Schedules C or E) reporting interest income during the relevant periods and intends to seek information regarding the amount of interest income reported during the time Plaintiff was making payments. Plaintiff also seeks electronic records of text messages and phone logs relating to the

structuring, collection, and enforcement of the loans. If Defendant fails to produce responsive records, Plaintiff will issue subpoenas to banks, escrow companies, financial institutions, or mobile carriers as appropriate. Because this case involves the alleged use of unlawful debt proceeds to seize real property, financial documentation and related communications are central to Plaintiff's claims.

Plaintiff intends to complete fact discovery by December 10, 2025, which is at least 24 weeks before the proposed Final Pretrial Conference on May 27, 2026.

**Defendant's Statement on Subjects of Discovery.**

Defendant will conduct discovery on the payments and charges that Plaintiff paid on the three loans, on the Plaintiff's performance of the terms of the promissory notes and deeds of trust on the three loans, on the terms and performance of the loan that Defendant refinanced into the loan on the Malibu property, on Plaintiff's performance on the first priority loan from another lender on the San Bernardino property, which Defendant bought to avoid foreclosure out of his second priority loan, on the licensing of the broker involved in the Malibu loan.

**DEFENDANTS' DETAILED PLAN**.

Depositions. Defendant intends to take depositions as follows: of Plaintiff, of the loan broker on the Malibu loan, believed to be of FMC Lending Company, Inc.; of the Person(s) Most Knowledgeable of the loan servicer Superior Loan Servicing on his loans on the Malibu and the San Bernardino loans, and of the Person(s) Most Knowledgeable of Peak Foreclosure Services. And to take the depositions of the persons whose declarations are attached to the Second Amended Complaint, Erick Ordaz and Sean Chaudhuri.

Document Subpoenas. Defendant intends to subpoena the records of the following third persons: the loan records of the lender on the first priority Malibu loan that was refinanced into Defendant's loan on the Malibu property; and of Erick Ordaz and Sean Chaudhuri and the entity HST, whose declarations are

attached to the Second Amended Complaint. And if the following persons do not voluntarily produce the records on the transactions involved, then to subpoena records of: Superior Loan Servicing; foreclosure trustee Peak Foreclosure Services; e-escrow, In., Diane Truong; Exact Escrow, Shannon Packard; Title First Title Insurance Agency, Jeremy R. Gale.

Defendant intends to complete this discovery by March of 2026, as Defendant proposes a fact discovery cutoff of March 26, 2026, if the Court sets the Final Pre-Trial Conference on the mutually proposed date of May 27, 2026.

L.   EXPERT DISCOVERY. The parties did not agree on proposed deadlines. Plaintiff proposes to have the expert disclosures according to the Court's recommendations in the Schedule of Pretrial and Trial Dates Worksheet. Defendant proposes deadlines of 1/8/26 for initial expert disclosure, 1/22/26 for rebuttal expert disclosure, and 2/5/26 for expert discovery cut-off.

Plaintiff intends to make an initial designation of one or more experts on civil RICO violations. Defendant intends to make an initial designation of one expert on California real estate broker licensing and knowledge pertaining to usury law, and on California usury laws applicable to broker originated loans on business purpose real estate secured loans.

M.   SETTLEMENT CONFERENCE / ADR. No settlement negotiations have occurred. The parties agree that ADR should be under the Court Mediation Panel method.

N.   TRIAL ESTIMATE. Both parties agree that a 3-day trial estimate is appropriate. *See* Schedule Worksheet.  However, Defendant notes that if Plaintiff has a jury trial, as he has requested, then this three day estimate may be too short.

O.   TRIAL COUNSEL. Plaintiff intends to try the case, *pro se*. For Defendant Steve Smead, Fred Hickman will try the case.

P.   MAGISTRATE JUDGE. The parties did not agree to have a Magistrate Judge try the case.

Q. **INDEPENDENT EXPERT OR MASTER.** The parties do not believe that the Court needs to consider appointment of one.

R. **SCHEDULE WORKSHEET.** (Attached).

S. **CLASS ACTIONS.** This is not a class action.

T. **PATENT CASES.** This is not a patent case.

U. **OTHER ISSUES.** There are no other issues believed presently to exist that require the Court's attention or orders.

Date: May 12, 2025                    Respectfully Submitted,


_____/s/ Clinton Brown_____
Clinton Brown, *Self-Represented*
clinton@atlasinc.solar


Date: May 12, 2025              /s/ *Fred Hickman*
                                Fred Hickman
                                fredhickman@gmail.com
                                Attorney for: Defendant Steve Smead

JOINT RULE 26 REPORT
BROWN VS. SMEAD 23-cv-02938
14

**DISTRICT JUDGE MAAME EWUSI-MENSAH FRIMPONG**
**SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET**
Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.
The parties must make every effort to agree on dates or the court will set them.

| Case No. 2:23-cv-02938-MEMF-KS | Case Name: Clinton Brown v. Steve Smead | | |
|---|---|---|---|
| **Trial and Final Pretrial Conference Dates** | | Pl(s)' Date mm/dd/yyyy | Def(s)' Date mm/dd/yyyy |
| Check one: ☒ Jury Trial or ☐ Bench Trial [Monday at 8:30 a.m. within 12-15 months of Scheduling Conference based on complexity] Estimated Duration: 3 Days | | 06/15/2026 | AGREED |
| Final Pretrial Conference ("FPTC") [L.R. 16], Hearing on Motions in Limine [Wednesday at 9:00 a.m. at least 19 days before trial] | | 05/27/2026 | AGREED |
| **Event**[1] Note: Hearings shall be on Thursdays at 10:00 a.m.[2] Other dates can be any day of the week. | **Time Computation**[3] | **Pl(s)' Date mm/dd/yyyy** | **Def(s)' Date mm/dd/yyyy** |
| Last Date to Hear Motion to Amend Pleadings or Add Parties [Thursday] | 6 weeks after scheduling conference | 07/24/2025 | 08/31/2025 |
| Fact Discovery Cut-Off (no later than deadline for filing dispositive motion) | 24 weeks before FPTC | 12/10/2025 | 03/26/2026 |
| Expert Disclosure (Initial) | 23 weeks before FPTC | 12/17/2025 | 01/16/2026 |
| Expert Disclosure (Rebuttal) | 21 weeks before FPTC | 12/31/2025 | 01/30/2026 |
| Expert Discovery Cut-Off | 19 weeks before FPTC[4] | 01/14/2026 | 02/13/2026 |
| Last Date to Hear Motions [Thursday] • Parties shall take note of the Court's briefing schedule as set forth in the Civil Standing Order, found on Judge Frimpong's website | 12 weeks before FPTC | 03/05/2026 | 03/26/2026 |
| Deadline to Complete Settlement Conference [L.R. 16-15] Select one: ☐ 1. Magistrate Judge (with Court approval) ☒ 2. Court Mediation Panel ☐ 3. Private Mediation | 10 weeks before FPTC | 03/18/2026 | 04/10/2026 |
| Trial Filings (first round) • Motions in Limine • Memoranda of Contentions of Fact and Law [L.R. 16-4] • Witness Lists [L.R. 16-5] • Joint Exhibit List [L.R. 16-6.1] • Joint Status Report Regarding Settlement • Proposed Findings of Fact and Conclusions of Law [L.R. 52] (bench trial only) • Declarations containing Direct Testimony, if ordered (bench trial only) | 4 weeks before FPTC | 04/29/2026 | AGREED |
| Trial Filings (second round) • Oppositions to Motions in Limine • Joint Proposed Final Pretrial Conference Order [L.R. 16-7] • Joint Agreed Upon Proposed Jury Instructions (jury trial only) • Disputed Proposed Jury Instructions (jury trial only) • Joint Proposed Verdict Forms (jury trial only) • Joint Proposed Statement of the Case (jury trial only) • Proposed Voir Dire Questions, if any (jury trial only) • Evidentiary Objections to Declarations of Direct Testimony (bench trial only) | 2 weeks before FPTC | 05/13/2026 | AGREED |

---

[1] The parties may seek dates for additional events by filing a separate stipulation and proposed order.
[2] By default, all hearings shall proceed in-person, unless a request is made by the parties and granted by the Court. Requests to appear via Zoom must be e-filed by the Friday before the hearing and must indicate that counsel has met and conferred per Local Rule 7-3.
[3] The numbers below represent the court's recommended timeline. The parties may propose alternate dates based on the needs of each individual case. But in every case, the last date to hear motions shall be no later than eight (8) weeks before the deadline for Trial Filings (First Round), and the deadline for Trial Filings (First Round) and Trial Filings (Second Round) must be no later than four (4) and two (2) weeks before the FPTC, respectively.
[4] The parties may choose to cut off expert discovery prior to the deadline to file a motion for summary judgment.