Clinton Brown, *Pro se*
1431 Ocean Ave, Unit 413
Santa Monica, CA 90401
brown_clinton@msn.com
310-775-7990

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STEVE SMEAD,<br><br>　　　　　Defendant. | **Case No**. 2:23-02938-MEMF-KS<br><br>**Declaration of Clinton Brown**<br><br>**Judge:** Honorable Maame Ewusi-Mensah Frimpong<br><br>**Chief Magistrate Judge:** Karen L. Stevenson |

I, Clinton Brown, declare as follows:

1. I have personal knowledge of the facts stated herein. If called to testify, I could and would testify competently to them.

2. Pursuant to this Court's discovery order, ECF No. 107, Defendant Steve Smead produced bank statements from his Bank of the Sierra account ending in 6236. I received those bank statements in discovery. *See* ECF No. 119 at 3. True and correct copies of the bank statements as produced by Defendant are attached as Exhibit A.

3. Exhibit A reflects transactions in the account ending in 6236, including deposits from me and/or my entity, The Atlas LLC, and withdrawals reflecting payments to third parties in connection with Defendant's lending and foreclosure activity.

4. Plaintiff was directed to make, and did make, interest payments to Defendant through Defendant's business bank account.

5. On or about September 15, 2020, during a telephone call, Defendant and I discussed the Harper Lake loan, and Defendant required that I agree to pay an additional $150,000 in interest as a condition of funding.

6. On September 16, 2020, Mr. Smead wired $150,000 to the Harper Lake escrow from his Bank of Sierra account ending in 6236.

7. I have been a licensed California real estate broker since October 28, 2020.

8. I purchased the Harper Lake property on or around November 10, 2020.

9. I owned the real properties that are the subject of this action at all relevant times.

10. Defendant Steve Smead was the lender on loans secured by the real properties in this action.

11. I made interest payments in connection with those loans, including payments transmitted through Superior Loan Servicing and payments made through escrow.

12. I also made certain loan-related payments through The Atlas LLC, an entity I control, on my own behalf.

13. Defendant acquired the properties by submitting credit-bids, and I lost ownership of the properties after he credit-bid the properties.

14. Defendant demanded that a $50,000 obligation associated with the prior California and Utah loans be tied to the Malibu loan, but that amount was not recorded by Superior Loan Servicing.

15. Defendant sold the Malibu property for $550,000, as reflected in the recorded grant deed by calculating the documentary transfer tax.

16. The loan transactions at issue involved communications and financial activity between California and Utah.

17. Defendant directed that $100,000 associated with the Harper Lake transaction be included in and recorded with the Utah loan.

18. On November 24, 2025, Defendant Steve Smead deposed Jeremy Gale by remote deposition. I was present and, as a party, asked questions pursuant to Federal Rule of Civil Procedure 30(c)(1).

19. On December 4, 2025, Defendant Steve Smead deposed me by remote deposition.

20. On December 5, 2025, Defendant Steve Smead deposed Erick Ordaz by remote deposition. I was present and, as a party, asked questions pursuant to Federal Rule of Civil Procedure 30(c)(1).

21. On December 9, 2025, Defendant Steve Smead deposed Sean Chaudhuri in San Francisco, California. I participated in the deposition by telephone and, as a party, asked questions pursuant to Federal Rule of Civil Procedure 30(c)(1).

22. On January 1, 2026, at approximately 9:47 p.m., I received an email from Defendant's counsel, Mr. Hickman, transmitting a copy of Defendant Steve Smead's declaration. The declaration I received was not signed and was not made under penalty of perjury.

23. Smead's loan was recorded in first priority, and the Sarkany loan was recorded in second priority.

24. The May 2021 Malibu transaction was presented to me and understood by me as a new loan, not as a consolidation of prior loan obligations. The promissory note does not state that it is a consolidation loan.

25. I defaulted in August 2022 when the Notice of Default was filed against the property.

26. The amount Defendant claims due did not include the unrecorded $50,000 interest amount Defendant demanded in connection with the Malibu loan. Defendant later sold the Malibu property in March 2025 for $550,000.

27. After Chicago Title refused to record the interest demanded in connection with the Harper Lake loan, Defendant sought to have the $150,000 secured by a different property. I proposed securing that amount against the Malibu property, but Defendant rejected that approach because it would have resulted in a third deed of trust, and Defendant was already the second deed of trust holder.

28. In addition to the recorded terms, Defendant required that I agree to pay an additional $150,000 in interest over the course of one year in connection with the $150,000 Harper Lake loan, such that the total interest obligation exceeded the principal amount of the loan at the outset of the repayment period

29. Defendant did not always require monthly payments and at times told me that I did not need to pay immediately. After those periods, Defendant charged me amounts he described to me as forbearance charges. On April 28, 2021, I paid $4,000 by ACH through The Atlas LLC. On

June 25, 2021, I made an additional $4,000 payment. I understood these payments to include amounts related to obligations that were not recorded on the Harper Lake loan.

30. I did not request a Utah loan until June 2021, after receiving a professional appraisal valuing the property at approximately $240,000.

31. I did not propose or agree to pay Defendant any risk-based bonus or risk-based origination fee in connection with the Utah loan. Defendant directed that $100,000 associated with the Harper Lake transaction be included in and recorded with the Utah loan.

32. On or around the opening of the Utah escrow, Defendant instructed me by telephone to send the email to escrow stating that $100,000 had already been allocated to him and that the remaining funds to be sent would be $100,000.

33. I did not agree that $100,000 of the Utah loan principal represented a bonus or origination fee, and I did not receive $100,000 paid to me outside of escrow.

34. In my September 16, 2021 email. I asked Defendant to confirm his records regarding monthly payments on the Harper Lake loan and stated: 'I believe I owe you since May 2020 for Harper @ $1,000 a month. Is that what your record shows? Please confirm or let me know if I'm wrong.' I did not propose changes to the existing loans.

35. The Notice of Default on the Utah property was recorded in August 2022.

36. No Notice of Default was recorded in connection with my loan from American Pacific Investments, LLC.

37. After I provided Defendant with an appraisal valuing the Harper Lake property at approximately $1.1 million, he contacted me to discuss the acquisition of the first deed of trust on the Harper Lake property.

38. In the email I sent on August 23, 2022, which is neither Bates-stamped nor readable but has been filed earlier in this case, I was referring to the statement that Superior Loan Servicing had sent me stating that the interest rate was 17%; I was not referring to the unrecorded $50,000 portion of the Malibu loan, nor was I performing an independent calculation of the Malibu loan's interest rate.

39. Utah was the only property in the proposed solar projects that had both a solar development permit and a transmission right-of-way.

40. I sent Defendant appraisals by email for the Malibu, Harper Lake, and Utah properties showing values of approximately $425,000, $1,100,000, and $240,000, respectively.

41. I paid interest calculated on a $200,000 principal amount, not solely on the $100,000 disbursed through escrow in Utah.

42. Mr. Smead communicated with me by telephone regarding the Utah deed of trust while I was in New York at or around the time I signed the Utah deed of trust.

43. I requested to meet and confer with Mr. Hickman regarding consolidated excerpts for the Joint Appendix on December 11, 2025, and did not receive a response.

44. When Plaintiff received Defendant's moving papers on January 1, 2026, they did not include a conclusions-of-law section.

45. In the event the Court determines that Defendant has met his initial burden under Rule 56, Plaintiff requests relief pursuant to Rule 56(d) because Plaintiff cannot present facts essential to justify his opposition. Defendant has withheld discovery directly bearing on whether he was operating an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and whether the debt at issue constitutes "unlawful debt" under 18 U.S.C. § 1961(6), including Interrogatories, Set No. 2, Nos. 10, 11, 12, and 19, concerning Defendant's tax reporting, EIN usage, and classification of loan payments as principal or interest. This discovery is the subject of Plaintiff's pending Motion to Compel filed on November 21, 2025, at ECF Nos. 110 & 110-1.

46. Plaintiff has diligently sought this discovery through written requests, meet-and-confer efforts, a telephonic hearing, and a motion to compel. The requested information is expected to create a genuine dispute of material fact as to whether Defendant conducted or participated, directly or indirectly, in the conduct of an "enterprise's" affairs for purposes of 18 U.S.C. § 1962(c), and whether Defendant collected unlawful debt within the meaning of 18 U.S.C. § 1961(6).

47. Attached as Exhibit B is a true and correct copy of an email I sent to Defendant Steve Smead on September 14, 2020, with the subject line "Solar Due Diligence," transmitting due diligence materials and proposed financial terms concerning the Harper Lake property.

48. This email was produced by Plaintiff in discovery in this action, is maintained in the ordinary course of Plaintiff's business records, and bears Bates No. BROWN_1328

49. The email states, in relevant part: "$150,000 secured by 2nd mortgage on 42829 Harper Lake Rd. due as a balloon payment in September 2021. $150,000 total for first year production paid either in monthly installments starting in October 2021 or a lump sum in September 2022."

50. Chicago Title refused to record the 100 percent interest rate.

51. Exhibit C is a true and correct copy of an email that I personally authored and sent to Defendant Steve Smead on April 7, 2021. I recognize this email as the same email I sent on that date. It was maintained in the ordinary course of my business and was produced by me in discovery in this action, bearing Bates No. BROWN_1014.

52. On November 19, 2025, Defendant's counsel and I agreed via email to proceed under a calendar-date MSJ briefing schedule consistent with the Court's Civil Standing Order ("CSO") at 10, which permits modification of the default schedule by stipulation so long as the Reply deadline remains at least forty-two (42) days before the hearing. I received Defendant's MSJ opening brief on January 1, 2026, and under that agreed schedule my opposition materials were due on January 16, 2026.

53. On multiple occasions, during telephone calls in which I personally participated, Defendant demanded that the $150,000 be secured by real property.

54. On April 7, 2021, I sent Defendant Steve Smead an email attaching a broker price opinion ("BPO"), site plan, and conditional use permit ("CUP") approval, stating that these materials would serve as the proposed security for the $150,000 in connection with the Harper Lake property. I wrote this email to satisfy Defendant's demands that the $150,000 be secured by real property. I personally authored and sent this email and recognize it as a true and correct statement of what I communicated on that date.

55. I submit the deposition testimony of Erick Ordaz in support of this declaration as corroboration of the facts stated herein and as independent sworn testimony to the extent Mr. Ordaz testifies from his own personal knowledge and under oath. I filed this with the Second Amended Complaint docketed as ECF No. 90-1.

56. I submit the Declaration of Sean Chaudhuri in support of this declaration as corroboration of the facts stated herein and as independent sworn testimony to the extent Mr. Chaudhuri testifies from his own personal knowledge and under penalty of perjury. I filed this with the Second Amended Complaint docketed as ECF No. 90-2.

57. I did not receive any compensation in connection with the 2021 Malibu loan.

58. In my deposition, I testified under oath that documents I prepared stating "0 percent interest" due within one year reflected the $150,000 in interest associated with the Harper Lake loan. I do not currently have access to the certified deposition transcript to quote my testimony verbatim.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 16, 2026, at Santa Monica, CA.

/s/Clinton Brown

Respectfully submitted,

Dated: January 16, 2026

*/s/ Clinton Brown, Pro Se*
1431 Ocean Ave, Unit 413
Santa Monica, CA 90401
brown_clinton@msn.com
310-775-7990

CC: All Counsel of Record (via email) on January 16, 2026