**Prepared By:** |
Brown Realty Group |
2945 Westwood Blvd |
Los Angeles, CA 90064 |
|
|
**After Recording Return To**: |
Steve Smead |
145 S 8th St |
Santa Paula, CA 93060 |
|
|
|
|

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Parcel Number (APN): 4451-015-021

## DEED OF TRUST

**THIS DEED OF TRUST (the "Trust") dated November 03, 2020, is made by and between:**

Clinton Brown of 10226 Regent St, Los Angeles, California 90034
(the "Borrower")

**-AND-**

Steve Smead of 145 S 8th St, Santa Paula, California 93060
(the "Lender")

**-AND-**

Brown Realty Group of 2945 Westwood Blvd, Los Angeles, California 90064
(the "Trustee")

**-AND-**

Clinton Brown of California, 10226 Regent St, Los Angeles 90034
(the "Guarantor")

**WITNESSETH:**

S 630                                    **EXH 16-** 1

**THAT FOR AND IN CONSIDERATION OF** the sum lent to the Borrower by the
Lender, in the amount of $150,000.00 U.S. Dollars (the "Principal Amount") as evidenced by the
promissory note (the "Note") dated November 03, 2020, the receipt of which the Borrower does
hereby acknowledge itself indebted, the Borrower IRREVOCABLY GRANTS, TRANSFERS
AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, the following described
real property (the "Property"), located at 21472 Calle Del Barco in the County of Los Angeles,
State of California, with the following legal description:

TRACT NO 10570 LOT 182

**TOGETHER WITH** all the improvements now or hereafter erected on the Property, and
all easements, appurtenances, and fixtures now or hereafter a part of the Property. All
replacements and additions will also be covered by this Trust.

**BORROWER COVENANTS** that Borrower is the legal owner of the estate hereby
conveyed and has the right to grant and convey the Property and that the Property is
unencumbered, except for encumbrances of record. Borrower further warrants and will defend
generally the title to the Property against all claims and demands, subject to any encumbrances of
record.

**To Protect the Security of this Deed of Trust, the parties do hereby agree as
follows:**

**TERMS RELATING TO PAYMENT**

**1**. **PROMISE TO PAY**. The Borrower, for value received, promises to pay to the Lender the
Principal Amount, interest and all fees and costs on the terms outlined in this Trust or in any
amendment, extension, or renewal of the Trust and any additional amounts secured by this Trust
on the terms elsewhere provided for such debts and liabilities.

**2**. **INTEREST**. The Borrower agrees to pay the Principal Amount with interest before and after
maturity and before and after default at the rate of 0 percent (the "Interest Rate"). The Interest
Rate will be calculated from the date this Trust begins on _____ (the "Adjustment
Date") and accrues until the whole of the Principal Amount is paid. The Loan will be repaid on the
following terms:

a. The Principal Amount with interest will be repaid in consecutive annual installments of
$150,000.00.

b. The Adjustment Date for this Trust is _____;

c. The balance, if any, of the Principal Amount and any interest thereon and any other
moneys owed under this Trust will be due and payable on November 03, 2021 (the

**EXH 16-2**

"Maturity Date").

**3**. **PAYMENT LOCATION**. The Borrower will make payments to 145 S 8th St, Santa Paula, California 93060, or at such other place as may be designated by Lender at a later date.

**4**. **FUNDS FOR ESCROW ITEMS**. The Borrower will pay to Lender, on the day periodic payments are due under this Trust, until the Principal Amount is paid in full, a sum (the "Funds") to provide for payment for: (a) any taxes, assessments, or other items which can take priority over this Trust as a lien or encumbrance on the Property; (b) lease payments on the Property, if any; (c) premiums for any and all insurance, including Mortgage Insurance required by the Lender. These items are called "Escrow Items."

The Borrower must notify the Lender of all amounts to be paid under this Section. If the Lender requires, the Borrower must provide receipts evidencing such payments to the Lender. If the Borrower does not make payments on time, the Lender can, at its discretion, make any and all past due payments for Escrow Items and the Borrower will be obligated to repay the Lender for any such amount. The Lender may waive the Borrowers obligation to pay the Lender for any and all Escrow Items at any time by providing written notice to the Borrower. If such waiver occurs, the Borrower must pay directly, when and where payable, the amounts due for any and all Escrow Items. If the Borrower is obligated to pay Escrow Items directly, and the Borrower fails to make payments on time, then the Lender may exercise its rights under this Section and pay for any such amounts and Borrower will be obligated to repay Lender for any such amount.

The Borrower will collect and hold the Funds in accordance with the Real Estate Settlement Procedures Act (the "RESPA"). Lender will estimate the amount of Funds due in accordance with Applicable Law. If there is a surplus of Funds held in escrow, as defined under RESPA, the Lender must provide to Borrower the excess funds in accordance with RESPA. If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Lender must notify Borrower in writing and Borrower must pay to Lender the amount necessary to make up the shortage or deficiency.

Upon payment in full of all Funds relating to Escrow Items, Lender will promptly refund to Borrower any excess Funds held by Lender.

**5**. **OBLIGATION TO PAY**. The Borrower agrees to pay all moneys payable pursuant to this Trust and all additional amounts secured by this Trust without abatement, set-off or counterclaim. Should the Borrower make any claim against the Lender either initially or by way of abatement, set-off or counterclaim, the Borrower agrees that any such claim will not reduce or postpone their obligation to make all payments as provided by this Trust.

**6**. **APPLICATION OF PAYMENTS**. All payments paid by the Borrower and received by the Lender will first be applied in payment of the interest calculated at the Interest Rate, and second in payment of the Principal Amount. Such payments will be applied in the order in which it became due. However, if the Borrower defaults on payment, then the Lender will have the right to apply

**EXH 16-** 3

any payments received while in default as the Lender so chooses.

**7**. **PREPAYMENT PRIVILEGES**. When not in default, the Borrower may prepay, without penalty, all or a portion of the Principal Amount and Interest earlier than it is due (i.e., make payment prior to the time that it is due). Partial prepayment will not postpone the due date of any subsequent payment or change the payment amount, unless the Lender otherwise agrees in writing. Rather, prepayments will first be applied to the interest calculated at the Interest Rate, and second to the Principal Amount.

**8**. **ADDITIONAL CHARGES AND ENCUMBRANCES**. The Borrower must pay all taxes, assessments, charges, fines, and all other impositions attributable to the Property and all trusts, liens, and other encumbrances on the Property. To the extent that these items are Escrow Items, the Borrower will pay them in the manner provided in Section 4.

**9**. **RELEASE AND RECONVEYANCE**. Upon payment of all sums secured by this Trust, including the Principal Amount and interest, the Lender will request the Trustee to reconvey the Property and must surrender this Trust and the Note evidencing debt secured by this Trust to Trustee. Trustee must reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons will pay any recordation costs. The Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**10**. **NO SALE WITHOUT CONSENT**. The Trustee will not sell, transfer, assign, or otherwise dispose of all or part of the Property or any interest in the Property, without the Borrower's and Lender's prior written consent.

**11**. **PROPERTY INSURANCE**. The Borrower must keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which the Lender requires insurance. The insurance carrier providing the insurance will be chosen by the Borrower. However, the Lender will have the right to disapprove the Borrower's choice, which right may not be unreasonable.

If the Borrower fails to maintain any of the coverage's described above, then Lender may obtain insurance coverage, at Lender's discretion and Borrower's expense. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of the insurance that the Borrower could have obtained. However, any amounts paid by Lender will become additional debt of the Borrower and secured by this Trust. The amounts paid by the Lender will bear interest at the Interest Rate from the date of payment and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies must include a standard mortgage and/or trust clause and will name Lender as mortgagee and/or as an additional loss payee, stating that any loss is payable to the Lender. Borrower further agrees to generally assign rights to insurance proceeds to the Lender up to the

**EXH 16- 4**

amount of the outstanding loan balance. If, at the request of the Lender, Borrower will provide Lender (a) a copy of the insurance policy; (b) all receipts of paid premiums and renewal notices.

In the event of loss, the Borrower must give prompt notice to the insurance carrier and to the Lender. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds must be applied to restoration or repair of the Property, if the restoration or repair is economically feasible. If the restoration or repair is not economically feasible, the insurance proceeds will be applied to the remainder of this Trust, whether or not the balance of the Trust is then due, with the excess, if any, paid to the Borrower.

**12. OCCUPANCY, MAINTENANCE, AND REPAIR**. The Borrower will occupy, establish, and use the Property as Borrower's principal residence after the execution of this Trust. The Borrower will not allow the Property to become vacant without the written consent of the Lender. The Borrower will not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not the Borrower is residing at the Property, the Borrower will maintain the Property in order to prevent the Property from deteriorating or decreasing value due to its condition. Unless repair or restoration is not economically feasible, Borrower will promptly make all necessary repairs, replacements, and improvements to avoid any further deterioration or damage. The Lender may, whenever necessary, make reasonable entries upon and inspections of the Property. If the Borrower neglects to maintain the Property in good condition or allows the Property to deteriorate resulting in decreased property value, the Lender will have the right to make such repairs and improvements as it considers necessary to maintain the Property.

**13. HAZARDOUS SUBSTANCES**. The Borrower will not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on the Property. Hazardous substances include pollutants, wastes, and those substances defined as toxic or hazardous substances by environmental law, as well as the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. Furthermore, the Borrower will not, nor allow anyone else to do, anything affecting the Property involving any hazardous substances that would materially affect the value of the Property. The Borrower will promptly take all necessary remedial actions under federal, state, and local laws regarding hazardous substances.

**14. GUARANTEE**. Each person or entity signing or joining in this Trust as a Guarantor, Covenantor, or Co-signer agrees to the following terms:

a. Guarantor covenants and agrees that all obligations and liability under this Trust will be joint and several. Additionally, where there is more than one Guarantor, each Guarantor will be jointly and severally liable to the other Guarantor(s) and Borrower.

b. The Guarantor is bound to fulfill the terms and conditions of this Trust, provided the Borrower, as principal debtor, fails to do so;

c. The Guarantor guarantees full performance and release of all the Borrower's obligations

**EXH 16-**5

under this Trust;

d. If the Guarantor assumes the Borrower's obligations under this Trust, the Guarantor will also obtain all of the Borrower's rights and benefits under this Trust;

e. The Guarantor must indemnify and hold harmless the Lender against all claims, damages, and payments, or loss which might arise or have arisen from the failure of the Borrower and/or Guarantor to pay the amounts owed under this Trust;

f. The Lender will have the choice to proceed against the Guarantor before proceeding against the Borrower to enforce any obligations due under this Trust in the event of default. Furthermore, any enforcement against such obligations can take place before, after, or during any enforcement of the Borrowers debts and/or obligations under this Trust;

g. The Lender can, without the consent or approval of the Guarantor, modify and/or amend the Interest Rate, the Principal Amount and any other term of the Trust or any obligation secured under this Trust. Furthermore, any amendment or modification of the Trust will not release or lessen the liability of the Guarantor;

h. The Guarantor will be bound and subject to any and all changes, modifications, variations, and amendments made to this Trust, regardless of whether such changes were made with or without the consent or approval of the Guarantor;

i. The Guarantor has read this Section and is aware of and fully agrees with its terms and in particular, the terms of this Section.

j. The Lender will serve notice to the Guarantor and any notice will be provided in same manner as provided in the Notice Section as outlines in this Trust.

## DEFAULT AND REMEDIES

**15**. **DEFAULT**. The Borrower will be considered in default under the terms of this Trust if any of the following conditions are met:

a. The Borrower fails to pay the sum of the Principal Amount, interest, or any other amounts due under this Trust.

b. The Borrower fails to perform or comply with any of the terms and conditions or any obligations or responsibilities due under this Trust.

c. The Borrower has given or made, at any time during the loan process, any materially false, misleading, or inaccurate information or statements to the Lender or any other party under this Trust in connection with the loan.

d. If any action or proceeding, whether civil or criminal, is begun that, in Lender's

**EXH 16-6**

judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Trust.

e. If a lien is registered against the Property, or if default occurs under any other lien or encumbrance existing against the Property;

f. The Borrower abandons or fails to occupy the Property.

g. The Property or any material part of the Property is expropriated.

**16**. **ACCELERATION**. If at any time the Borrower should be in default under this Trust, the Lender must give notice to the Borrower. The notice must specify: (a) the default; (b) the action required to cure the default (if allowable); (c) a date, not less than 30 days from the date of the notice, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Trust and sale of the Property. If the default is not curable and/or if the default is not cured on or before the date specified in the notice, the Lender at its option may require immediate payment in full of all sums, including the Principal Amount, interest, and all other amounts secured by this Trust. If the default is cured, the Trust will be reinstated. If the default is not cured, the Lender may invoke the power of sale and begin foreclosure proceedings.

The Lender will at all times retain the right to require immediate payment in full in the event of default. Any forbearance on the part of the Lender upon default, which includes but is not limited to acceptance of late payment, acceptance of payment from third parties, or acceptance of payments less than the amount due, will not constitute a waiver to enforce acceleration on default.

**17**. **PROTECTION OF LENDER'S INTEREST**. If at any time the Borrower fails to perform the covenants and agreements under this Trust, or if there is a legal proceeding that significantly affects the Lender's interest in the Property, or if the Borrower has abandoned the Property, then the Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property and/or rights under this Trust, which includes, but is not limited to:

a. Paying any sums secured by a lien which has priority over this Trust;

b. Appearing in court;

c. Paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Trust; and

d. Paying for reasonable costs to repair and maintain the Property.

The Lender will at all times retain the right to take action under this Section. However, the Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that the Lender will not incur any liability for not taking any or all actions to perform such tasks. Furthermore, any amounts paid by the Lender will become additional debt of the Borrower

**EXH 16- 7**

secured by this Trust.

**18**. **POWER OF SALE.** If at any time the Borrower is in default under this Trust, the Lender will have the right and authority to foreclose and force the sale of the Property without any judicial proceeding. Any delay in the exercising of this right will not constitute a waiver to exercise this right at a later date should the Borrower remain in default or subsequently default again in the future.

**19**. **REMEDIES**. The Lender will have the right to invoke all remedies permitted under Applicable Law, whether or not such remedies are expressly granted in this Trust, including but not limited to any foreclosure proceedings.

If the Lender invokes the power of sale, the Trustee will execute a written notice of the occurrence of an event of default and of the Lender's decision to sell the Property. The Lender or Trustee will mail copies of the notice to the Borrower and Guarantor and will also give public notice of sale in the manner provided by Applicable Law. After the time required by Applicable Law, the Trustee will sell the Property at a public auction to the highest bidder at the time and place and under the terms designated by the Trustee in the notice of sale. The Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Furthermore, the Lender or its designee may purchase the Property at any sale.

## MISCELLANEOUS TERMS

**20**. **GOVERNING LAW**. This Trust will be construed in accordance with the laws of the state of California ("Applicable Law"). Applicable Law will include all controlling applicable federal, state and local statutes. All rights and obligations under this Trust are subject to any requirements and limitations of Applicable Law.

**21**. **SEVERABILITY**. If any portion of this Trust will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Trust is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**22**. **JOINT SIGNATURES**. If the Borrower is more than one person or legal entity, each Borrower who signs this Trust will be jointly and severally bound to comply with all the obligations and liabilities of the other Borrower(s).

**23**. **STATUTORY PROVISIONS**. The provisions contained in this Trust are additional and supplemental, to the extent permitted by law, to the provisions set out in the Applicable Law as they relate to trusts.

**24**. **SUBSTITUTE TRUSTEE**. The Lender may, at its option, from time to time appoint a successor Trustee by an instrument executed and acknowledged by Lender and recorded in the

**EXH 16-** 8

office of the Recorder of the county in which the property is located. The instrument will contain the name of the original Lender, Trustee, and Borrower, the book and page where this Trust is recorded and the name and address if the successor Trustee. Without conveyance of the Property, the successor trustee will succeed to all the title, powers and duties of the Trustee.

**25**. **STATEMENT OF OBLIGATION FEE**. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by § 2943 of the Civil Code of California.

**26**. **NOTICE**. All notice given by either party in connection with this Trust must be in writing. Notice will be considered sufficient when mailed by first class or certified mail to the address of the recipient. The recipient's address will be the property address as stated under this Trust unless another address has been designated. If there is a change of address by any party, that party must promptly notify all parties under this Trust of the change of address. Any notice will be considered effective on the same day that it was sent, unless the day falls on a national holiday, Saturday, or Sunday, in which case, the next business day will be considered as the day of receipt.

 

 

       **IN WITNESS WHEREOF** this Trust has been executed by the Borrower and Guarantor in the manner prescribed by law as of November 03, 2020 as stated above.

 

**Borrower:**

By: _____  Date: _____
       Clinton Brown

**Guarantor**:

By: _____  Date: _____
       Clinton Brown

 

 

           **[Notary Acknowledgment to Follow]**

**EXH 16-** 9

## Borrower Acknowledgement

A notary public or other officer completing this certificate verifies only the identity of the individual(s) who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of Los Angeles                        )

On _____ before me, _____, personally appeared Clinton Brown, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____          (Notary Seal)
Notary Public
_____
My commission expires

S 639

**EXH 16-**10

**Guarantor Acknowledgement**

> A notary public or other officer completing this certificate verifies only the identity of the individual(s) who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of Los Angeles                      )

On _____ before me, _____, personally appeared Clinton Brown, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____          (Notary Seal)

Notary Public
_____

My commission expires

**EXH 16-**11

**EXH 16-** 12

# *SECURED PROMISSORY NOTE*

$150,000.00                                    Date: November 03, 2020

For value received, the undersigned Clinton Brown (the "Borrower"), at 10226 Regent St, Los Angeles, California 90034, promises to pay to the order of Steve Smead (the "Lender"), at 145 S 8th St, Santa Paula, California 93060 (or at such other place as the Lender may designate in writing), the sum of $150,000.00 with no interest.

## I. TERMS OF REPAYMENT

### A. Payments

The unpaid principal shall be payable in full on November 03, 2021 (the "Due Date").

### B. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II. SECURITY

This Note shall be secured by a Deed of Trust to real property commonly known as 21472 Calle Del Barco, Malibu, California 90265, executed on November 03, 2020. The Lender is not required to rely on the above security instrument and the assets secured therein for the payment of this Note in the case of default, but may proceed directly against the Borrower.

## III. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty.

## IV. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## V. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

S 642

**EXH 16-** 13

1) the failure of the Borrower to pay the principal and any accrued interest when due;

2) the liquidation, dissolution, incompetency or death of the Borrower;

3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower;

7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

8) the sale of a material portion of the business or assets of the Borrower.

In addition, the Borrower shall be in default if there is a sale, transfer, assignment, or any other disposition of any real estate pledged as collateral for the payment of this Note, or if there is a default in any security agreement which secures this Note.

## VI. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VII. MISCELLANEOUS

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

## VIII. GOVERNING LAW

**EXH 16- 14**

This is a RocketLawyer.com document.

This Note shall be construed in accordance with the laws of the State of California.

## IX. SIGNATURES

This Note shall be signed by Clinton Brown and Steve Smead.

**[SIGNATURE PAGE FOLLOWS]**

This is a RocketLawyer.com document.

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this _____ day of _____, _____, at _____, _____ .


Borrower:
Clinton Brown


By: _____    Date: _____
     Clinton Brown


Lender:
Steve Smead


By: _____    Date: _____
     Steve Smead

**EXH 16-** 16

This is a RocketLawyer.com document.

## DO NOT DESTROY THIS NOTE

WHEN PAID this original Note together with the Deed of Trust securing the same, must be surrendered to the Borrower for cancellation and retention before any reconveyance can be processed.

This is a RocketLawyer.com document.

# *GUARANTY AGREEMENT*

This Guaranty Agreement (this "Guaranty") is made effective as of November 03, 2020 by Clinton Brown, (the "Guarantor") for $150,000.

This Guaranty is being given to Steve Smead, (the "Creditor").

This Guaranty is being given for the benefit of the Guarantor and for Clinton Brown, (the "Debtor").

**I. OBLIGATIONS.** This Guaranty is given by the Guarantor to induce the Creditor to extend credit to the Debtor, and in consideration of the Creditor doing so, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and further acknowledging that the Creditor intends to rely on this Guaranty, the Guarantor absolutely and unconditionally guarantees prompt payment when due of all payments and liabilities of the Debtor to the Creditor, whether voluntary or involuntary and however arising, whether secured or unsecured, absolute or contingent, liquidated or unliquidated, and regardless of whether the Debtor may be liable individually or jointly with others, regardless of whether recovery upon any such obligation may be or hereafter become barred or otherwise unenforceable, including interest and charges, and to the extent not prohibited by law, all costs and attorney's fees incurred in attempting to realize upon this Guaranty.

**II. DURATION.** This is a continuing Guaranty and shall not be revoked by the Guarantor. This Guaranty will remain effective until all obligations guaranteed by this Guaranty are completely discharged.

**III. NOTICE OF DEFAULT.** The Creditor shall not be required to notify the Guarantor of a default by the Debtor in the Debtor's commitments to the Creditor before proceeding against the Guarantor under this Guaranty.

**IV. AUTHORITY TO LEND MORE.** The Creditor shall have no duty to notify the Guarantor of any further advances made to the Debtor. Furthermore, the granting of credit from time to time by the Creditor to the Debtor in excess of the amount to which the right of recovery under this Guaranty is limited, if any, and without notice to the Guarantor, is explicitly authorized and shall in no way affect or impair this Guaranty.

**V. CREDITOR PROVISIONS.** The Guarantor expressly waives diligence on the part of the Creditor in collection of any part of the debt or other obligation owed by the Debtor. Further, the Creditor has no duty to bring suit against the Debtor (for collection of the debt or other performance which is due) before proceeding against the Guarantor. The Guarantor waives notice of the acceptance of this Guaranty and of any and all such indebtedness and liability. The Guarantor waives presentment, protest, notice, demand, or action on delinquency in respect of any

This is a RocketLawyer.com document.

such indebtedness or liability, including any right to require the Creditor to sue or otherwise enforce payment. Until all obligations of the Debtor to the Creditor have been satisfied in full, the Guarantor waives all rights of subrogation to any collateral and remedies of the Creditor against the Debtor, and other persons or entities. Any indebtedness of the Debtor now or hereafter owed to the Guarantor is hereby subrogated to the indebtedness of the Debtor to the Creditor, and such indebtedness of the Debtor to the Guarantor, if the Creditor so requests, shall be collected, enforced, and received by the Guarantor as trustee for the Creditor and be paid over to the Creditor on account of the indebtedness of the Debtor to the Creditor, but without reducing or affecting in any manner the liability of the Guarantor under the provisions of this Guaranty.

**VI. AUTHORITY TO ALTER OBLIGATION.** The Guarantor agrees that, without notice to the Guarantor, the Creditor may (a) change the terms of payment or performance by the Debtor to the Creditor, and/or (b) release any security. In either event, the Guarantor shall not be released from any responsibility on the obligations of the Debtor. Liability under this Guaranty is not dependent or conditioned upon this instrument being signed by any person or persons. The Guarantor's liability under this Guaranty is several and is independent of any other guarantees. Guarantees of others, if any, may be released or modified, with or without consideration, without affecting the liability of the Guarantor.

**VII. ASSIGNMENT.** This Guaranty (a) shall bind the successors and assigns of the Guarantor (this Guaranty is not assignable by the Guarantor without the express written consent of the Creditor, and is not affected by the death of the Guarantor), (b) shall inure to the Creditor, its successors and assigns, and (c) may be enforced by any party to whom all or any part of the liabilities may be sold, transferred, or assigned by the Creditor.

**VIII. FINANCIAL CONDITION.** The Creditor has no duty to advise the Guarantor of the Debtor's financial condition.

**IX. CORPORATE AUTHORITY.** The Guarantor certifies that it is not prohibited under its articles of incorporation or bylaws (or its articles of organization or operating agreement, if a limited liability company) to act as the Guarantor.

**X. ENTIRE AGREEMENT.** This Guaranty contains the entire agreement of the parties with respect to the subject matter of this Guaranty and there are no other promises or conditions in any other agreement, whether oral or written. This Guaranty supersedes any prior written or oral agreements between the parties with respect to the subject matter of this Guaranty.

**XI. AMENDMENT.** This Guaranty may be modified or amended, if the amendment is made in writing and is signed by both parties.

**XII. SEVERABILITY.** If any provision of this Guaranty shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Guaranty is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

This is a RocketLawyer.com document.

**XIII. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Guaranty shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Guaranty.

**XIV. APPLICABLE LAW.** This Guaranty shall be governed by the laws of the State of California.

**XV. RECEIPT.** The Guarantor acknowledges receipt of a copy of this Guaranty.

By: _____    Date: _____
Clinton Brown

This is a RocketLawyer.com document.

 Outlook

## Updated Documents for Review

**From** Clinton Brown <clinton@brownrealtygrp.com>
**Date** Tue 11/3/2020 3:24 PM
**To** STEVE SMEAD <stsmead@gmail.com>

📎 3 attachments (166 KB)
updated document.pdf; securedpromissorynote11.03.pdf; deedoftrust-11.03.pdf;

Steve,

Please see attached documents. Chicago Title cannot record the deed of trust and so I can record that as a broker. Which document(s) do you need a wet signature? Let me know if anything needs editing or if we are good to go.

Thank you,

--



**Clinton Brown**
**Broker & Developer**
**Brown Realty Group**
Cell: 310-487-6453
Email: clinton@brownrealtygrp.com
Website: www.brownrealtygrp.com

Join me for a Zoom conference.

   

CalDRE:02047215

*How was your experience with Brown Realty Group?*



Click to rate your experience with Brown Realty Group

**EXH 16- 21**