O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>Plaintiff,<br>v.<br><br>STEVE SMEAD,<br><br>Defendant. | Case No.: 2:23-CV-02938-MEMF-KS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR ORDER TO MODIFY THE CIVIL TRIAL ORDER/SCHEDULING ORDER [DKT. NO. 168]** |

Before the Court is the Motion for Order to Modify the Civil Trial Order/Scheduling Order and for Relief to Reset Hearing on Motion for Summary Judgment and Allow Refiling, Based on Attorney Error. Dkt. No. 168. For the reasons explained below, the Motion is GRANTED.

1

## I.    Background

### A.  Factual Allegations[1]

Plaintiff Clinton Brown is a California resident and the owner of several solar properties. Dkt. No. 90 ¶¶ 4, 16, 25 ("2AC"). Defendant Steve Smead is a California resident and the operator of a private real estate lending business. *Id.* ¶¶ 5–6.

In 2020 and 2021, Smead issued Brown several loans. *Id.* ¶¶ 16, 25. Regarding the 2020 loan ("California Loan"), Smead required Brown to pay excessive unrecorded interest. *Id.* ¶¶ 18–20. When Brown ultimately defaulted on the California Loan, Smead used the default to acquire the property that secured the loan—Brown's four-hundred-acre solar property, valued at $1.1 million. *Id.* ¶¶ 16, 24. Smead directed $100,000 from the unrecorded portions of the California Loan to be recorded in Utah, resulting in higher interest rates. *Id.* ¶ 27. Smead made repeated collection demands on the remaining unrecorded portions of the California Loan. *Id.* ¶ 29. And the 2021 loan ("Utah Loan") was secured by another of Brown's solar properties. *Id.* ¶ 25. Smead foreclosed on that solar property after Brown disclosed a confidential contract. *Id.* ¶ 30. Because of Smead's foreclosure—which was carried out using proceeds from unlawful debt—Brown's property was excluded from that contract. *Id.* Brown ultimately lost both the business opportunity and the solar property. *Id.* ¶ 32. Through this course of conduct, Smead collected unlawful debt from Brown, then used the income collected to take Brown's properties. *Id.* ¶ 39.

Smead also engaged in unlawful loan collection and enforcement practices. These included demanding unlawful debt payments from Brown, pressuring Brown to waive his legal rights to contest foreclosure, threatening to pursue personal liability for the debt, and using intimidation, coercion, and manipulation toward Brown. *Id.* ¶¶ 35–37.

### B.  Procedural History

On April 19, 2023, Brown initiated this action in federal court. Dkt. No. 1. On March 23, 2025, Brown filed the operative amended complaint. *See* 2AC. It alleges two RICO claims against

---

[1] Unless otherwise indicated, the following factual background is derived from the operative Second Amended Complaint. Dkt. No. 90 ("2AC"). The Court makes no findings, at this stage, regarding the truth of Plaintiff's allegations contained therein.

Smead: (1) for collection of unlawful debt, and (2) for use of income derived from unlawful debt. *Id.* ¶¶ 62–75.

On July 15, 2025, this Court issued a Civil Trial Order in this case. Dkt. No. 100 ("CTO"). This set the last date to hear motions in this matter as March 5, 2026. *Id.* at 3.

On January 22, 2026, Smead filed a motion for summary judgment. Dkt. No. 121. Smead subsequently filed a memorandum of points and authorities in support of the motion. *See* Dkt. No. 123 ("MPA"). Smead also filed a joint appendix of evidence, several declarations, requests for judicial notice, and exhibits. *See* Dkt. Nos. 124–62.

On January 30, 2026, this Court denied the motion for summary judgment without prejudice. *See* Dkt. No. 163 ("MSJ Order"). It explained that the parties' filings had not complied with this Court's Standing Order.[2] It noted that, if "the parties wish[ed] to keep the noticed March 5 hearing, the parties [should] correct and refile the *Motion* within seven days of the issuance of this Order." *Id.* (emphasis added).

The parties did not refile an amended motion. Instead, on February 5, 2026, the parties field an amended MPA. *See* Dkt. No. 164.

On February 25, 2026, Smead filed the instant Motion, accompanied by a memorandum of points and authorities.[3] *See* Dkt. No. 168-1 ("Motion"). On March 4, 2026, Brown opposed the Motion. *See* Dkt. No. 172 ("Opp." or "Opposition"). On March 10, 2026, Smead replied. *See* Dkt. No. 174.

The Court found this matter appropriate for resolution without oral argument and vacated the hearing set for April 9, 2026. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

---

[2] There were several deficiencies with the parties' filings. First, as this Court explained, the MPA was deficient because it was not fully integrated, such that each subissue was discussed with an integrated opening argument, opposition, and reply. *See* MSJ Order (citing Civil Standing Order § IX(D)). Second, the parties did not submit "the joint brief and its supporting materials as *one CM/ECF filing*, with each declaration or item of evidence submitted *as a separate attachment to the CM/ECF filing*." Civil Standing Order § IX(D)(4) (emphasis added). The parties are ordered to correct *all* deficiencies with their amended filings, and are reminded that it is their responsibility to maintain familiarity with this Court's Civil Standing Order.

[3] The Motion explained that the parties had met and conferred, and that Brown's opposition was in part because the Motion "may be unnecessary or premature, as [Brown was] not certain that the hearing [did] not remain on calendar for March 5". *See* Dkt. No. 168-2 ¶ 2(b)(1) ("Hickman Decl."). For clarity, this Court issued an order explaining that the March 5 hearing had been taken off calendar by the denial of the summary judgment motion, and that no new motion had caused the hearing to be placed back on calendar. Dkt. No. 170.

## II.    Applicable Law

### A.  Rule 16

A scheduling order may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause exists when the scheduling order's deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. "While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification.'" *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

### B.  Rule 6

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). In Rule 6's context, good cause "is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010).

"To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

/ / /

/ / /

## III.    Discussion

Smead asks this Court to modify the Scheduling Order to reset the motion for summary judgment for hearing prior to the scheduled Final Pretrial Conference, which is on May 27, 2026.

4

Motion at 11. Alternatively, Smead proposes that this Court grant "a modest continuance" of the FPTC and trial dates in order to accommodate the summary judgment motion. Reply at 9. As this Court explains below, Smead has sufficiently shown that the loss of the summary judgment date was inadvertent and excusable, and that under Rule 16, good cause exists to modify the Civil Trial Order to allow the refiling of the motion for summary judgment.[4]

### A.  Under Rule 16, Smead has shown diligence.

At the outset, this Court must determine whether the scheduling order's deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. For the reasons below, this Court finds that Smead has sufficiently shown that he diligently sought amendment of the scheduling order.

As the Motion explains, Smead diligently sought this requested extension. The motion was initially timely filed such that it could be heard by March 5, 2026, the last day to hear motions. *See* CTO at 3. When this Court ordered the parties to refile the motion if they hoped to keep the March 5 hearing date, Smead timely refiled the MPA on February 5, 2026. Though this misunderstood this

---

[4] Smead justifies his request under both Rule 16, which discusses the amendment of a scheduling order, and Rule 60(b). *See generally* Motion. Rule 60(b) provides reasons for which "the court may relieve a party or its legal representative from a *final judgment, order, or proceeding*." Fed. R. Civ. P. 60(b)(1) (emphasis added). Brown notes in Opposition that "Rule 60(b)(1) applies only to final judgments, orders, or proceedings." Opp. at 2. In Reply, Smead answers that Rule 60(b)(1) "is disjunctive, and includes relief from any orders or proceedings." Reply at 2.

This Court is unpersuaded that Rule 60 controls requests from relief from a Civil Trial Order. Smead's proposed reading appears to be that Rule 60(b) is the proper vehicle to offer relief from (1) final judgments, (2) orders of any kind, and (3) proceedings of any kind. But this runs counter to the Ninth Circuit's holding that "the time requirements of Rule 60(b) only commence running upon 'entry' of final judgment." *Carter v. Beverly Hills Sav. & Loan Ass'n*, 884 F.2d 1186, 1189 (9th Cir. 1989); *see also* 21A Federal Procedure § 51:126 ("The term 'final' applies to orders and proceedings as well as judgments and limits the applicability of Rule 60(b) to judgments and orders which have been entered and which are independently 'final decisions' under 28 U.S.C.A. § 1291 . . . . It follows that Rule 60(b) generally does not apply to interim and interlocutory orders and judgments[.]"); 11 Wright & Miller's Federal Practice & Procedure § 2857 (3d ed.) ("The policy of the law to favor a hearing of a litigant's claim on the merits must be balanced against the desire to achieve finality in litigation.").

Nor do Smead's Reply authorities support this argument. *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992) (noting that "the district court abused its discretion in treating the second complaint as a proper Rule 60(b) motion"); *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000) (finding that the district court correctly applied Rule 60(b) to a grant of summary judgment resolving case in favor of nonmovant).

To that end, this Order declines to apply Rule 60–specific authorities discussed by the parties.

Court's Order (which contemplated a refiled *motion*, not merely a refiled *MPA*), this Court understands that counsel for Smead reasonably believed he was timely and fully complying. *See* Motion at 7. Counsel for Smead has represented that he only became aware of the error on February 9, 2026. *Id.* He met and conferred with Brown eight days later. *See* Hickman Decl. ¶ 2(a). And he filed the instant Motion—which contains an appended declaration and several exhibits—eight days later. *See generally* Motion. It appears to this Court that counsel for Smead moved at diligent speed to correct the error upon its discovery. And Smead could not have avoided the need for this Motion by filing any faster. At the point that counsel discovered the error in failing to refile the MPA, it was already past the last day to hear motions. So amendment to the Civil Trial Order was already necessary for Smead to refile for summary judgment. *See* Civil Standing Order § VIII (requiring that motions be received forty-two days before any hearing).

In Opposition, Brown argues that counsel for Smead was not diligent. In support, he notes that—even before this Court denied the first motion for summary judgment without prejudice—Brown advised counsel for Smead that Brown believed "the filing did not comply with the Court's integrated joint brief requirements and urged correction before the deadline." Opp. at 3. Nevertheless, Brown explains, "Defendant proceeded with the noncompliant filing." *Id.* Brown also notes that, separately, the Civil Standing Order's lack of ambiguousness should weigh against a finding of diligence. *Id.* at 3 n.6. It is true that the parties are responsible for adhering to this Court's requirements. But the original MPA shows some indications of efforts to integrate the brief, even if not fully in adherence with this Court's instructions. *See* Dkt. No. 123. Moreover, this Court's diligence inquiry is focused on the parties' misunderstanding of this Court's instructions; this Court had already excused the initial noncompliance with the Standing Order and offered to keep the hearing date in place for a newly refiled motion for summary judgment. And Brown does not appear to argue that, in the correction of the summary judgment motion, Smead did not demonstrate diligence.

For these reasons, this Court finds that Smead has been sufficiently diligent, and that his request for modification of the operative scheduling order does not fail at the threshold step.

**B.  Under Rules 6 and 16, Smead has shown good cause and excusable neglect.**

Next, at issue is whether Smead has demonstrated good cause to amend the Civil Trial Order and retroactively grant him relief from the delay in the filing for the motion for summary judgment. For the reasons below, this Court finds that good cause exists because the neglect that led to the delay was excusable and diligently corrected.

The *Pioneer* factors, which courts apply in the context of excusable neglect, apply here. "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian*, 624 F.3d at 1259. These factors weigh in Smead's favor.

First, the danger of prejudice to the opposing party is low and manageable through other tools. Brown argues that granting this Motion would cause him undue prejudice by creating additional work in the preparation of a response; as he puts it, granting the Motion "would require Plaintiff to divert time and attention from trial preparation." *See* Opp. at 4. To be sure, this Court acknowledges that Brown, who is self-represented, would benefit from being assured sufficient time to prepare a fulsome response to the summary judgment motion, and to represent himself capably in pretrial preparation. But any such prejudice is easily addressed through granting trial continuances, which this Court will consider doing upon motion or joint stipulation. Moreover, the additional work that Brown will have to do upon the granting of this Motion has, in part, already been done: This Court understands the motion for summary judgment has already been briefed, so amendments to the motion prior to refiling will not be unduly burdensome to Plaintiff.

Second, the length of the delay caused by the refiling of this Motion would not be excessive. This Court's Standing Order contemplates that motions for summary judgment should be noticed for hearing seventy-five days before, and filed forty-two days before, the scheduled hearing. *See* Civil

Standing Order § IX(D). Given that the motion is (at least in large part) fully briefed,[5] the parties may stipulate to a modified briefing schedule if they seek to minimize the delay involved in the deciding of a summary judgment motion.

Third, any neglect that led to the need for this Motion is excusable and was timely addressed. This Court has already explained that it understands Smead to have misunderstood this Court's instruction to refile the full motion for summary judgment (when the previous iteration had been denied) as merely an instruction to refile the supporting memorandum (which had been incorrectly formatted, leading to the denial of the motion). Brown does not address, and therefore appears to concede, this factor. *See generally* Opp. So, too, for the fourth factor: Brown does not argue that any delay was not in good faith (for example, caused dishonestly or for the purpose of strategic advantage). Nor does this Court find evidence of bad faith on this record. Indeed, as this Court has detailed, it appears that Smead took prompt corrective action upon the realization of his misunderstanding, and moved diligently to bring the error to this Court's attention and seek appropriate relief.

In sum, the four *Pioneer* factors weigh in favor of finding that good cause exists to modify the scheduling order and grant Smead relief from the now-passed last day to hear motions deadline. For that reason, under Rule 6, the Motion is granted.

## IV.    Conclusion

This Court ORDERS as follows:

---

[5] The parties appear to dispute whether the motion for summary judgment is ready to be filed as is. Counsel for Smead proposes that it is, and provides filings that he represents only need to be amended to reflect a new hearing date. *See* Dkt. Nos. 168-2 to -6. But Brown argues that the MSJ is not fully developed because the Court has, since the filing of the previous summary judgment motion, ordered discovery responses "that were previously withheld and that materially affect the evidentiary record." Opp. at 4 n.8. In light of this disagreement, and particularly given Smead's cited concerns about the prejudice he risks by working on the MSJ alongside other upcoming pretrial filings, this Court will grant the parties additional time to meet and confer to ensure the summary judgment motion is filed in a fully completed state.

While the parties may modify the summary judgment motion before refiling it, this Court anticipates that, as drafts of all the summary judgment materials already exist, preparation of a new summary judgment motion will be at least somewhat streamlined by the previous drafts and research.

1.  The Motion is GRANTED.

2.  The Court will amend the Civil Trial Order such that the last day to hear motions is Thursday, June 25, 2026, in anticipation of a renewed summary judgment motion filed by Thursday, May 14, 2026.

    a.  The parties may further apply to amend the time to file a summary judgment motion by application or joint stipulation. The parties are reminded that, pursuant to this Court's Civil Standing Order, continuance requests must be accompanied by a highly particularized declaration showing that good cause and diligence support the request.

3.  The parties may file a joint stipulation proposing new pretrial and trial dates that are consistent with the briefing schedule on the renewed summary judgment motion.

IT IS SO ORDERED.

Dated: April 6, 2026.

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

9