Fred Hickman (#124406)
fredhickman@gmail.com
17602 17th St Ste 102-206
Tustin CA 92780
714-315-1565; fax 714-838-0835

Attorney for: Defendant Steve Smead

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CLINTON BROWN,

               PLAINTIFF,

VS.

STEVE SMEAD,

               DEFENDANTS.

Case No.: 2:23-cv-02938-MEMF(KSx)

STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES RE MOTION BY DEFENDANT SMEAD FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF BROWN; CONTENTIONS OF FACT AND LAW

[Hon. MAAME EWUSI-MENSAH FRIMPONG, District Judge]

DATE: 06/25/2026
TIME: 10:00 a.m.
CTRM: 8B

TO THE CLERK OF THE COURT AND THE HONORABLE MAAME EWUSI-MENSAH FRIMPONG, DISTRICT JUDGE:

Plaintiff Brown has declined to provide any response or input for this Joint Statement. Defendant Smead, through counsel, sent movant's party of what is to be a joint statement timely, on April 23, 2026.  Plaintiff Brown responded by email on May 7, 2026, providing in that email the text of his statement of objections and opposition to the motion for summary judgment/partial summary judgment in this matter.  Plaintiff Brown's two pages of opposition and objections are set forth in the Joint Integrated Brief of Memo of Points and Authorities in support of and in opposition to this motion. Mr. Brown's material is included therein, *verbatim*, at pages 2-4 of the Memo of Points & Authorities. Plaintiff Brown declined to provide any input at all for this Joint Statement. Thus, this Statement is solely that of Defendant Smead, in support of this motion.

Herewith is the Joint Statement of Uncontroverted Facts and Genuine Disputes submitted by the Moving and Non-Moving Parties, Defendant Smead and Plaintiff Brown, respectively, regarding Defendant Smead's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 1. On 04/21/2020 the first loan from Smead to Brown closed escrow, i.e., consummated. Smead made Brown a second-priority purchase money loan, California-licensed mortgage broker originated, for $170,000 principal, at 12.99% interest, monthly interest payments only until the loan matured in two years with a ballon payment due then.  It was secured by a vacant lot in Malibu CA, zoned for residential ("Malibu Lot") that Brown bought with the proceeds of Smead's loan and a first priority loan from seller Sarkany ("Malibu Lot"). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

JOINT  STATEMENT UNCONTROVERTED FACTS & GENUINE DISPUTES
*BROWN VS. SMEAD 23-cv-02938*

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| Smead Decl. 12/30/2025 ("Smead Decl.") ¶ 3; Ex. 11-1-4 (Promissory Note). | | | |
| 2. In May 2021, Brown requested and Smead made a consolidation loan secured by the Malibu Lot. The new consolidated loan paid off both of Brown's purchase money loans from Sarkany and Smead, the consolidated loan being for $300,000 principal at 12% interest, interest only payments of $3,000 per month for a two year term to maturity, and the loan consummated (i.e., the loan "closed") on 5/21/2021 ("Malibu Loan"). Brown was in default on payments on Smead's initial loan at the time. The escrow agent for the Malibu Loan closing was e-escrows, inc., which was paid a fee out of escrow from Brown's loan proceeds. Smead Decl. ¶¶ 4 - 6; Ex. 12-1-2 (Promissory Note);  Ex. 12-3-4 (e-escrows, inc., Borrower Statement Final). ) | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 3. Smead's initial loan and the subsequent consolidated Malibu Loan were serviced by a professional loan servicer, Superior Loan Servicing, for a monthly fee paid by Smead. It had no participation or interest in the loan or its security or its payments, acting only to service the loan and keep track of payments and loan | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| transaction items, and to communicate with the borrower as needed. Smead Decl. ¶ 7; Ex. 11-7-8 (Superior Loan Servicing Borrower Statement of Account, 4/7/2021). | | | |
| 4. Brown defaulted on the Malibu Loan, in arrears beginning with a late first payment, making only late interest-only payments for those due July 2021 – Nov. 2021, and no payments thereafter. Brown did not cure the default, and did not pay off the loan. He was also in default on the property tax payments. Smead Decl. ¶ 8; Ex. 13 (ledger payment history on initial and then the consolidated Malibu Loan period 2020 to 2023). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 5. Regarding the Malibu Loan, on Smead's instruction due to Brown's default, the foreclosure trustee, Superior Loan Servicing, by Asset Default Management, Inc., as Agent for Trustee, performed and completed a foreclosure sale process. Smead's credit-bid of $372,338.14 (what was owed to me for the Malibu Loan) being the high-bid, the trustee issued to Smead a Trustee's Deed Upon Sale making him the owner of the Malibu Lot as of 01/04/2023. Smead Decl. ¶ 9; Ex. 14-2-3 | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| (Trustee's Deed Upon Sale dated 1/4/2023). | | | |
| 6. In mid-September 2020, Smead considered making a loan to Brown as a second priority purchase money loan for desert land in the Hinkley/Harper Lake Area of San Bernardino that Brown hoped to develop into a solar-power generating field, so Smead wired funds of $150,000 to Chicago Title to hold in trust for a potential loan. Smead Decl. ¶ 16. | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 7. Then, between mid-September 2020 and November 5, 2020, Brown made several proposals for me to fund his solar development business, sending me several written loan proposals, and a proposal to buy stock or lend against stock he said he owned in "Atlas, Inc.", all of which I rejected. Smead Decl. ¶¶ 11-15: (on 9/24/2020) Ex. 43-1-4 (proposed "Loan Agreement, dated Sept. 24, 2020" of loan to Atlas Dev. Group, LLP); (on 11/2/2020) Ex. 42-1-3 (proposed Guaranty of proposed loan to Atlas Dev. Group, LLC; (on 11/3/2020) Ex. 16-1-21 (email Brown to Smead of 11/3/2020, and attached proposed loan documents for a new loan against the Malibu Lot); (on 11/5/2020) Ex. 59-1-8 (11/4/2020 proposed note and guaranty for new loan on | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

JOINT  STATEMENT UNCONTROVERTED FACTS & GENUINE DISPUTES

*BROWN VS. SMEAD 23-cv-02938*

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| Malibu Lot, signed by Brown). | | | |
| 8. In November 2020, Smead made Brown a second-priority purchase money loan for raw, undeveloped, land in the Hinkley/Harper Lake area ("Hinkley Lot"). Smead lent $150,000 principal, at 8% interest, secured by the Hinkley Lot ("Hinkley Loan"). The Hinkley Loan promissory note provided for interest only payments of $1,000 per month beginning Jan. 1, 2021 and maturing on Dec. 1 2022. The Hinkley Loan consummated, i.e., closed, on 11/10/2020, through escrow Chicago Title Company, chosen by the seller of the Hinkley Lot, American Pacific Investments, LLC, which held a first-priority security interest ("AmPac"). AmPac and Brown had chosen the escrow company and Smead agreed for convenience sake and escrow was paid its fee from Brown's loan funds. There were no other terms or conditions for the Hinkley Loan than those set forth in writing on the Note, Deed of Trust, and as reflected on the Final Buyer's Statement from escrow. And Smead bought a lender's title insurance policy. Smead Decl. ¶¶ 16-20; Ex. 15-1 ("Note"); Ex. 15-4-7 ("Deed of Trust");  Ex. 15-2-3 (Final Buyer's Statement). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 9. Brown defaulted on the Hinkley Loan immediately, not making any of the required interest-only monthly payments due for Jan 1 2021 through April 1, 2021. Then, On April 28, 2021, an entity named "Atlas LLC" paid those four payments then overdue, a total of $4,000 interest only payments. Brown made no more payments on the Hinkley Loan after that due for April 1, 2021. However, Brown did not cure the default, and did not pay off the loan. Smead Decl. ¶¶ 21 & 22; Ex. 19 (Ledger of Hinkley Loan Payments); Ex. 75 (Smead Bank Statement 04/30/2021 (redacted). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 10. In mid-April of 2021, Brown asked Smead to make a refinance loan on property he owned in Utah, which was raw, undeveloped land ("Utah Lot"). Smead Decl. ¶ 29. | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 11. Smead told Brown he did not want to make the loan against the Utah Lot as too risky, because of Brown's history of loan defaults on the Malibu Loan and the Hinkley Loan, which even then were uncured defaults, with none of the properties generating any revenue to fund loan payments, and the Utah Lot not supporting the refinance loan as worth only $50,000 when Brown was requesting a | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| new loan for $100,000 cash to Brown. Smead Decl. ¶ 30. | | | |
| 12. To induce Smead to make a loan on the Utah Lot, Brown proposed to pay Smead a risk-based bonus, a risk-based origination fee, to help compensate for the risk in the loan transaction, in addition to the new money lent, that he would owe Smead, proposing that the bonus, or origination fee, would be $100,000, in addition to the $100,000 of cash money paid through escrow Smead would lend. Smead agreed to make the loan on these terms, which would be for a stated principal amount of $200,000, at the rate of 10% interest. Smead Decl. ¶ 32. | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 13. Brown instructed the Utah escrow as follows: "$100,000 of this refinance has already been allocated to Steve Smead and therefore the remaining funds that will be sent by Steve will be $100,000". Smead Decl. ¶ 32; Ex 1-5-7 (email from Brown to Jeremy Gale of escrow dated June 18, 2021). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 14. On June 30, 2021, Smead made the loan to Brown, secured by the Utah Lot, receiving a promissory note for $200,000 at 10% interest, interest only payments monthly beginning August 1, 2021, and a ballon payment due in two | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| years. The $200,000 stated as principal was for the $100,000 of bonus, or origination fee, owed to Smead for making the loan, plus $100,000 of the cash money disbursed through escrow to Brown ("Utah Loan"). The Utah Loan consummated, i.e., closed, on June 30, 2021. The settlement statement for the Utah Loan, approved by Brown and Smead, read, on page 2, under "Miscellaneous" as follows: "Loan Funds paid outside of close to Clinton Brown $100,000". Brown paid escrow fees from the loan funds and Smead bought a lender's title policy. Smead Decl. ¶¶ 33 & 34;  Ex. 2-1 ((promissory note called "Trust Deed Note"); Ex. 2-2-6 ("Trust Deed" dated 06/22/2021); Ex. 2-7-9 (Settlement Statement on Utah Loan, print date 06/22/2021, Settlement Date: 06/30/2021). | | | |
| 15. The Trust Deed Note for the Utah Loan was made by Brown to Smead in "Fillmore, UTAH," stating: "This note is secured by a Trust Deed of even date herewith". *See supra* Fact #14; Ex. 2-1. | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 16. The Utah Loan Trust Deed was made between Brown, Title First Title Ins. Agency, LLC, a Utah Corp. as Trustee, and Smead. The land conveyed to the Utah | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| trustee to secure the Utah Loan was land and underground water located in "State of Utah, County of Millard" Tax Parcel Number 8710-1, and recorded by the Utah trustee with the County Recorder in in Millard County, Utah. It authorized, on default, to "foreclose this Trust Deed in the manner provided by law for the foreclosure of mortgages on real property". And it provides: "16. This Trust Deed shall be construed according to the laws of the State of Utah." *See supra* Fact #14; & Ex. 2-2, 2-5-6 (¶ 11); Ex. 2-6 (¶ 16). | | | |
| 17. In September 2021, Brown proposed that Smead invest in his businesses by stock purchases or stock-secured new lending, and connected with proposed changes in the existing, defaulted loans. Smead declined. Smead Decl. ¶ 48; Ex. 53 (email Brown to Smead 09/16/2021). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 18. Brown defaulted on the Utah Loan, not making the payment due on March 1, 2022, and made no payments thereafter. Brown paid a total of $11,669 in interest only payments on the Utah Loan. Brown did not cure the default, and did not pay off the loan. Smead Decl. ¶ 35; Ex. 74 (ledger of payments on Utah Loan, Bates S 451). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 19. In July 2022, Smead bought the first priority purchase money loan Brown had taken from the seller of the Hinkley Lot, American Pacific Investments, LLC ("AmPac"), when it was in default, so as to avoid its foreclosure that would eliminate Smead's security interest for the Hinkley Loan, paying $370,203.00. Smead paid the escrow fee. Smead Decl. ¶ 24; Ex. 17 ((composite) Corporation Assignment of Deed of Trust 17-1-3; Ex 17-4 Escrow Closing Statement). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 20. As of 08/23/2022: Brown's interest rates, by Brown's calculation, on the several loans Smead had made to him were at the rate of 17% interest, as Brown wrote to Smead. Smead Decl. ¶ 25; Exh 60 (email Brown to Smead, August 23, 2022 at 12:51 a.m.). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 21. On Smead's instruction due to Brown's default, the foreclosure trustee, Peak Foreclosure Services, Inc., performed and completed a foreclosure sale process based on Smead's second priority Hinkley Loan. Smead's credit-bid of $175,909.68 (what was owed on second priority Hinkley Loan) being the high-bid, the trustee issued to Smead a Trustee's Deed Upon Sale making me the owner of the Hinkley | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| Lot on 01/31/2023. Smead Decl. ¶ 26; Ex. 20 (Trustee's Deed Upon Sale dated 1/30/2023). | | | |
| 22. On Smead's instruction, due to Brown's default on the Utah Loan, the foreclosure trustee, commenced and completed a foreclosure sale, and Smead's credit-bid of the amount due on it being the high-bid of $220,923.20, issued a Trustee's Deed Upon Sale making me the owner of the Utah Lot as of March 8, 2023. Smead Decl. ¶ 36; Ex. 9-1-2 (Trustee's Deed, dated 03/08/2023). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 23. Under Brown's ownership, none of the security properties for the loans generated revenue nor income to Brown during the duration of the Malibu Loan, Hinkley Loan or Utah Loan. Nor at the time of the foreclosures did Brown have any contracts entered for any of the three Lots that would generate revenue or income to him or for the use of the lots. Smead Decl. ¶¶ 10, 40 (Malibu Lot); ¶¶ 23, 28 & 41 (Hinkley Lot); ¶¶ 38 & 42 (Utah Lot). Brown Depo. at: 29:13-30:8; 31:7-13; 32:19-33:25; 156:7-10; 157:23-158:1; 158:25-159:2; 173:10-22. | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 24. Under Smead's ownership, the Hinkley Lot and the Utah Lot | Undisputed as Plaintiff provided no | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| have generated no revenue to Smead since he became the owner by foreclosure. No contracts or leases have been offered to Smead for development or use of the properties, nor did anyone claim to Smead that they had an existing contract right for the property when he foreclosed, and he has entered no contracts or leases for these raw and undeveloped land which are the properties. Smead eventually sold the Malibu Lot, in 2025. Smead Decl. ¶¶ 10, 40 (Malibu Lot); ¶¶ 23, 28 & 41 (Hinkley Lot); ¶¶ 38 & 42 (Utah Lot). | opposition to this undisputed fact. | | |
| 25. During the loans, Brown paid nothing on principal owed and made only the following interest payments: On the Malibu Loan, Brown paid interest of $15,000 total; on the Hinkley Loan, Brown paid interest of $4,500 total; on the Utah Loan, Brown paid interest of $ 11,669 total. Smead Decl. ¶ 43. A: (Malibu), B: (Hinkley), and C. (Utah). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 26. Smead as owner estimates that at the time of the foreclosure sales, these were the values of the lots: Malibu Lot: $425,000; Hinkley Lot: $475,000; Utah Lot: $50,000. Smead Decl. ¶ 43, A: (Malibu), B: (Hinkley), and C. (Utah). | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 27. All of Smead's transactions and loans | Undisputed as Plaintiff provided no | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| connected with Brown and the security properties were in Smead's own name and in his own right as an individual, with no shared ownership or right in any of them in any other person or entity. No person, no individual, nor entity, was involved with receiving payments or proceeds on these loans to Brown, as these were individual loans from Smead to Brown. Smead made these loans as his alone, and no person, individual, or entity had any ownership or rights in the loans, the payments on the loans, or the real property securities foreclosed upon. Smead Decl. ¶ 47; Facts, supra, 1, 2, 8, &14. | opposition to this undisputed fact. | | |
| 28. The escrow companies used to consummate the origination of the Malibu Loan, the Hinkley Loan and the Utah Loan were paid a fee for their services by Brown out of the loan proceeds. I paid nothing to them. And none of them had any other involvement in the loans. These escrow companies were not involved loan servicing, nor enforcement, nor foreclosure, and never had any interest nor rights in the loans, nor loan payments, nor the security properties, either pre- or post-foreclosure.  Each was merely paid a fee for | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| service to accomplish its discreet task. When Smead sold the Malibu Lot in 2025, he shared payment of the escrow fees with the buyer. Smead Decl. ¶ 44; escrow closing statements showing fees paid: Malibu Loan, Exh. 12-3-4; Hinkley Loan, Exh. 15-2-3; Utah Loan, Exh. 2-7-9; the AmPac first priority loan on the Hinkley Lot, Ex. 17-1-3. | | | |
| 29. Regarding the foreclosure trustees: The fees and costs that the foreclosure trustees' charged Smead for the foreclosure processes as to the Malibu Loan, the Hinkley Loan, and the Utah Loan. These foreclosure fees and costs were then added to the indebtedness foreclosed on. None of the trustees had any other involvement in the loans than to be named in the deed of trust as trustee, or to become a substituted trustee, and then to perform the statutory requirements for the trustee's foreclosure sales. These foreclosure trustees were not involved loan origination, except to be named as a trustee in the deed of trust, nor in servicing, and never did any of them interests, nor rights, in the loans, nor in loan payments, nor in the security properties, either pre- or post- foreclosure. Each was merely paid a fee for service to accomplish its | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| discreet task. Smead Decl. ¶ 45. | | | |
| 30. Regarding the Title Insurance Companies. Smead lenders' policies of title insurance for each of the three loans, Malibu Loan, Hinkley Loan, and Utah Loan, paying a price certain based on the loan amount stated on the promissory notes. None of the title insurance companies had any involvement or rights in the loans or security property, from origination through servicing and foreclosure, as Smead made no claim under the policies. The title insurers' were paid nothing but the policy premium at the time each of the three loans originated, and never received any payment or property interest in the loan or the security property at any time. Smead Decl. ¶ 46. | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |
| 31. On the Utah Loan, the rate of interest Brown actually paid before foreclosure was 7.4% if counted only as to the $100,000 cash through escrow lent, and only 3.7% if counted against the $200,000 that included the risk-premium origination fee. Smead Decl. ¶ 39. | Undisputed as Plaintiff provided no opposition to this undisputed fact. | None provided by Plaintiff. | N/A |

/ / /

## DEFENDANT SMEAD'S CONTENTIONS OF FACT AND LAW

| **Conclusions of Law** | **Relevant Facts** |
|---|---|
| 1. Plaintiff cannot prove that Defendant collected unlawful debt from Plaintiff in violation of 18 U.S.C. § 1962(a), as 18 U.S.C. § 1961(6) defines "unlawful debt" to be double or more of the applicable state or federal usury limitation. | Facts 1, 2, 4, 5, 6, 7, 8, 9, 10, 12, 14, 18, 20, 21, 22, 23, 25, 26, 31. |
| 2. Plaintiff cannot prove that Defendant collected unlawful debt from Plaintiff in violation of 18 U.S.C. § 1962(c), as 18 U.S.C. § 1961(6) defines "unlawful debt" to be double or more of the applicable state or federal usury limitation. | Facts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25, 26, 31. |
| 3. Plaintiff cannot prove that Defendant violated 18 U.S.C. § 1962(c), as he was not part of an enterprise of associated-in-fact persons who through a pattern of racketeering activity (predicate acts) caused injury to Plaintiff's business or property by unlawful conduct. | Facts 3, 27, 28, 29, 30. |
| 4. Plaintiff cannot prove that Defendant violated 18 U.S.C. § 1962 against him. | Facts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 15, 16, 17, 18, 20, 21, 22, 25, 27, 28, 29, 30, 31. |
| 5. Plaintiff cannot prove that Defendant caused him to suffer money damages compensable under 18 U.S.C. §§ 1962 and 1964. | Facts 5, 12, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 31. |
| 6. Plaintiff cannot prove that he is entitled to any civil remedy against Defendant, under 18 U.S.C. § 1964. | Facts 5, 12, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 31. |
| 7. The law of the State of Utah applies to the Utah Loan. | Facts 12, 14, 15, 16. |
| 8. The Utah Loan was and is lawful under the law of the State of Utah, as | Facts 12, 14, 15, 16, 19, 21, 22, 23, 24, 25, 26. |

| | |
|---|---|
| not usurious under Utah law, as no usury limit applies to the Utah Loan as a commercial loan secured by raw land; so, it was not "double" the applicable usury rate, nor was it "collected", as no usury was charged nor collected on the Utah loan under the laws of Utah, and the security property was worth less than the new cash of $100,000 lent through the Utah escrow against the Utah security property. | |
| 9. Smead did not "use income derived from collection of unlawful debt" to take Brown's properties or business. | Facts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25, 26, 31. |

PLAINTIFF BROWN PROVIDED NO CONTENTIONS OF FACT AND LAW

Date: May 13, 2025                     Respectfully Submitted,

                                       /s/ Fred Hickman
                                       _____
                                       Fred Hickman
                                       fredhickman@gmail.com
                                       Attorney for: Defendant Steve Smead