Fred Hickman (#124406)

fredhickman@gmail.com

17602 17th St Ste 102-206

Tustin CA 92780

714-315-1565; fax 714-838-0835

Attorney for: Defendant Steve Smead

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CLINTON BROWN,<br><br>                    PLAINTIFF,<br><br>VS.<br><br>STEVE SMEAD,<br><br>                    DEFENDANTS. | Case No.: 2:23-cv-02938-MEMF(KSx)<br><br>DECLARATION OF FRED HICKMAN IN AUTHENTICATION OF DEPOSITION EXCERPTS OF CLINTON BROWN DEPOSITION OF DEC. 4, 2025, I.S.O. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT<br><br>DATE: 03/05/2026<br>TIME: 10:00 a.m.<br>CTRM: 8B |

I, Fred Hickman, declare as follows.

1. I am a member of the bar of this court and of the bar of the courts of the State of California.

2. On December 4, 2025, under Notice of Deposition of Clinton Brown, Plaintiff, I took the deposition of Plaintiff Clinton Brown by remote/audio/visual manner, transcribed by a Certified Shorthand Reporter, a court reporter, authorized

to administer to take, record in written format, and to transcribe from shorthand, that testimony under oath in the State of California. The remote/audio/visual deposition was done by remote at the request of Plaintiff.

3.   Attached hereto are true and correct copies of certain pages of the certified deposition transcript of Clinton Brown, of Dec. 4, 2025, unsigned by Brown but certified by the court reporter Mary P. Randle, CSR No. 10312,  as oath administered to the witness, Clinton Brown, and certified as taken down by her in shorthand and thereafter transcribed into typewriting under her direction and supervision. The certification is at p. 286.

4.      Attached hereto are true and correct copies of the face page, opening swearing in of the witness, and certain testimony of the witness, along with the certification of the court reporter, which are pages 1-2, 9-10, 28-33, 155-159, 172-173 and 267-268, and 286 (certification).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed on Dec. 31, 2025, in the State of California.

DATE: Dec. 31, 2025                    *Fred Hickman*

                                       Fred Hickman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

Case No.: 2:23-cv-02938-MEMF(KSx)

CLINTON BROWN,

      Plaintiff,

v.

STEVE SMEAD,

      Defendants.

_____

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

CLINTON BYRON BROWN

Thursday, December 4, 2025

10:01 a.m.

Taken remotely via Zoom

REPORTED BY:
Mary P. Randle
CSR No. 10312

1

APPEARANCES:

(Appearances via videoconference.)


For Plaintiff:

      CLINTON BROWN (IN PRO SE)
      1431 Ocean Avenue
      Unit 413
      Santa Monica, California 90401
      310-775-7990
      brown_clinton@msn.com

For Defendant:

      FRED HICKMAN, ESQ.
      17602 17th Street
      Suite 102-206
      Tustin, California 92780
      714-315-1565
      fredhickman@gmail.com

Also Present:

      Jonathan Paulino, Videographer
      Matthew Laurence, Exhibit Concierge
      Steve Smead (Joined at 10:12 a.m.)

2

TAKEN REMOTELY VIA ZOOM

THURSDAY, DECEMBER 4, 2025

10:01 A.M.

THE VIDEOGRAPHER:  Good morning.  This is the video deposition of Clinton Brown, taken remotely on Thursday, December 4th, in the year 2025, in the matter of Clinton Brown versus Steve Smead, Case Number 2:23-cv-02938-MEMF.  This case is being heard in the United States District Court, Central District of California, Western Division.

My name is Jonathan Paulino, legal videographer contracted through Dean Jones Legal Videos, Inc., of Los Angeles and Santa Ana, California.  Because we're not in person, the videographer will have to interrupt proceedings if the deponent drifts out of frame or should any connectivity issues with Zoom occur.

This deposition is commencing at 10:01 a.m. Would all present please identify themselves, beginning with the deponent.

THE WITNESS:  Clinton Brown, Pro Se.

MR. HICKMAN:  Fred Hickman, attorney for Defendant Smead.

THE VIDEOGRAPHER:  Would the court reporter please administer the oath.

9

THE COURT REPORTER:  For the record, my name is Mary Randle.  I am a State of California Certified Shorthand Reporter.  My CSR license number is 10312.

CLINTON BYRON BROWN,

having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. HICKMAN:

     Q     **Good morning, Mr. Brown.**

     A     Good morning.

          Before we begin, I -- can I make my objections, please, for the record?

          MR. HICKMAN:  Yes.  Please do.

          THE WITNESS:  For the record, Plaintiff objects under Rule 30(c)(2) to the use of any document not produced in discovery and reserves all rights under Rule 32(a), Rule 32(b), and Rule 37(c)(1).

BY MR. HICKMAN:

     Q     **Your deposition is being taken under the notice since you are the plaintiff.  Have you been deposed before?**

     A     No.

     Q     **Have you been sued before in any court of law?**

10

A    Not specifically to the Easy Winter land, but a contract, yes.

Q    **What contract did HST have regarding the -- the project in Utah with Samsung for the Easy Winter property?**

A    It was -- it wasn't specifically to that property.  It was for any property.

Q    **Did -- was it HST that paid you compensation on the Easy Winter property lease?**

A    Yes.

Q    **Did Easy Winter pay you any compensation for arranging a solar lease?**

A    Yes.

Q    **Did Samsung pay you any compensation for arranging a solar lease?**

A    No.

Q    **Are you licensed as a real estate broker in the state of Utah?**

A    No.

Q    **Is the involvement you had with the Easy Winter solar lease something that requires a real estate broker's license in the --**

A    No.

Q    **-- state of Utah to be lawful activity?**

A    No.

28

Q    How do you know?

A    Because I know.

Q    Did you investigate?

A    Yes.

Q    What affiliation have you had with Atlas Real Estate Investments, Incorporated, a California corporation?

A    That's my company.

Q    Does it still operate?

A    It was -- no.

Q    Were you the sole shareholder?

A    Yes.

Q    What involvement -- what -- what affiliation have you had with Harper Lake SPV, LLC?

A    It was a LLC.

Q    What business did it do?

A    Solar -- a solar farm.

Q    How were you involved with Harper Lake SPV, LLC?

A    It was the LLC for the solar farm.

Q    What solar farm?

A    A solar farm at Harper Lake.

Q    What property at Harper Lake?

A    It's called Harper Lake.

Q    Is it in the area of Hinkley?

A    Yes.

Q    Is that land you owned that you obtained a loan from Steve Smead for?

A    One of the lenders, yes.

Q    Did Harper Lake SPV, LLC, obtain any revenue?

A    No.

Q    No revenue ever?

A    No.

Q    What assets did Harper Lake SPV, LLC, have at any time?

A    None.

Q    Did you incorporate Harper Lake SPV, LLC?

A    I don't believe I did.  I don't know if it was a -- I think it was an LLC.

Q    Yes.  Did you establish Harper Lake SPV, LLC?

A    From what I recall, yes.

Q    When?

A    I don't know.

Q    Five years ago?

A    If you want to show me the LLC, I'll tell you, but I don't know.

Q    Within the last five years?

A    It's on the public record.

Q    Were you the sole member of the Harper Lake SPV, LLC?

30

009

A     From what I recall, yes.

**Q     And you were the manager?**

A     From what I recall, yes.

**Q     When was the last activity of Harper Lake SPV, LLC?**

A     I don't know.  I don't think it's in existence.

**Q     Did it -- did Harper Lake SPV, LLC, ever enter into any contracts for any purpose?**

A     Not that I'm aware.

**Q     Did Harper Lake SPV, LLC, ever develop any solar farm at the Hinkley Harper Lake property you owned?**

A     No.

**Q     Why did you establish Harper Lake SPV, LLC?**

A     I don't recall.

**Q     Is it connected to your ownership of property at Hinkley Harper Lake?**

A     Probably, yeah.

**Q     Who would know?**

A     Well, I don't remember.  I don't know -- I don't remember when it was -- if you have the LLC documents, I'll look at it.  It's public record.  But I don't have it, so I can't tell you.

**Q     What was the entity's purpose?**

A     Well, I believe what it says on the State of

31

California is that -- whatever it says about the -- whatever their -- I don't know what it says, but it was for a solar farm.  I mean, that's -- I've already asked and answered that.

Q    What does the "SPV" in the title stand for?

A    I don't know.

Q    Did you pick the name?

A    I'm guessing.

Q    Don't guess.  Who picked the name for Harper Lake SPV, LLC?

A    Couldn't tell you.

Q    Someone else other than you?

A    No.  I don't recall what it means, "SPV."  I -- I chose it, but this was years ago.  I don't know.

Q    How many years ago did you choose that name for Harper Lake SPV, LLC?

A    I don't know.  It must have been, like, 2020 or something.

Q    Do you have any affiliation with Millard, M-I-L-L-A-R-D, County Solar Farm SPV, LLC?

A    Yeah.  That was -- yes.

Q    What?

A    Oh, then "SPV" means special purpose vehicle.  That's what that means.

Q    What affiliation do you have with Millard

County Solar Farm SPV, if any?

A    That was -- I created that.

Q    When?

A    I don't recall what date.

Q    Is there --

A    These are public records.  If you provide them, I can tell you the date.

Q    Is it a Utah limited liability company?

A    I don't know.

Q    Is it California limited liability company?

A    It was probably California because -- yeah.

Q    Why do you say probably California rather than Utah?

A    Because I put all the LLCs as home based in California.

Q    Did Millard County Solar Farm SPV ever have any assets?

A    No.

Q    Were you the sole member?

A    Yes.

Q    Were you the manager?

A    If that's what the document says.

Q    Did -- did Millard County Solar Farm SPV, LLC, ever enter any contracts?

A    Not that I recall.

33

A     None.

Q     To your knowledge, are there any other solar installations in Millard County than what's been described -- are there any solar installations in Millard County?

A     I don't know.

Q     Is there any solar power being generated in Millard County?

A     I don't know.

MR. HICKMAN:  I need a short break.  Five minutes.  Is that all right?

THE WITNESS:  Sure.

MR. HICKMAN:  Okay.

THE VIDEOGRAPHER:  Video deposition is going off the record at 2:15 p.m.

(Recess taken from 2:15 p.m. until 2:21 p.m.)

THE VIDEOGRAPHER:  Video deposition is returning to record at 2:21 p.m.

BY MR. HICKMAN:

Q     Regarding the Utah property at the -- say the day before Steve foreclosed on it, do you have an opinion on its value?

A     No.

Q     In your opinion, as owner of the Utah property for a time, did its value change between the time of the

appraisal for $240,000 and the time of the foreclosure?

A    I can't speculate.

Q    On the Harper Lake loan from Steve to you, with the Harper Lake property generating no revenue, how -- how would -- how would you service the debt?

A    I don't understand the question.

Q    How would you pay the Harper Lake loan to -- owed to Steve if the property -- as the property generated no revenue?

A    From my company.

Q    What company?

A    From working.  I was -- I already stated this before.  I was self-employed at the time as a real estate broker.

Q    To the extent you serviced any debt on the Harper Lake property, was it from the other borrowed money from other lenders?

A    No.

Q    When you took the Utah property loan from Steve, how did you anticipate servicing your debt to him?

A    My real estate business.

Q    You failed to make most interest payments on the Utah property.  Did your businesses not generate any revenue to pay your Utah property loan?

156

014

A    That misstates the whole scenario.  I don't understand the question.

**Q    Why did you fail to make interest payments on the Utah property loan?**

A    Because the interest rates were unlawful.

**Q    So, did you take the Utah property loan believing at the time it was an unlawful loan?**

A    I don't recall.

**Q    You just -- you've just testified that you -- you defaulted on the Utah loan because it was an unlawful loan.  When did you determine that, in your opinion, the Utah loan was an unlawful loan?**

A    I don't recall.

**Q    You made a total of four interest-only payments on the Utah loan.  Did you decide after the fifth monthly payment was due that the Utah loan was unlawful?**

A    I don't recall.

**Q    Why did you make any payments on the Utah loan when it was an unlawful loan in your opinion?**

A    I didn't say that I -- that's not what I said. I said that -- we're talking about -- I'm talking about now, looking back.  I'm not talking about that time.

**Q    The Utah property, as it generated no revenue, you -- you didn't make payments, you defaulted.  Is that because your other business ventures failed?**

157

A    No.

Q    You weren't paid a salary at the time you -- by any entity that employed you at the time you had the Utah property loan from Steve, correct?

A    That's not correct.

Q    What were your sources of -- of earnings at the time you had taken out Steve's loan on the Utah property?

A    Real estate.

Q    But you weren't paying any of the -- you weren't -- after a few payments, you made no payments on the Utah property debt.  Why?

A    The interest rate was too high.

Q    Did you ask Steve at any -- any time to set aside his Utah loan to remake it into a loan you thought was proper?

A    I don't -- I don't recall.

Q    So you never asked Steve to change the terms of the Utah loan, correct?

A    No.  I don't -- I don't know.  I don't -- I don't recall.

Q    Did you ever ask Steve to change the terms of the -- the Harper Lake loan?

A    I don't recall.

Q    The Malibu property you owned generated no

158

revenue, correct?

A   Correct.

Q   And how did you intend to pay its monthly payments?

A   My real estate business.

Q   When you went into default on the Harper Lake loans, were your real estate businesses not generating sufficient revenue to service all the debt you had?

A   I don't recall.

Q   Did you default on the Harper Lake written terms loan debt to Steve because you couldn't make the Harper Lake property pay?

A   I don't recall.

Q   Did you decide the Harper Lake property was -- was not going to be a profitable venture, so you did not prevent the foreclosure of it?

A   Okay.  What's the question?

MR. HICKMAN:  Can you read the question, please.

(Record read as follows:

"Q   Did you decide the Harper Lake property was -- was not going to be a profitable venture, so you did not prevent the foreclosure of it?")

THE WITNESS:  I -- I still don't understand

159

Q    It's what you did.  It's attached.  It's filed. It's your document, your Second Amended Complaint, your attachment.

A    He signed it.

Q    Why?

A    He signed it.

Q    Why did you do it?  Why did you put that --

A    I'm not going to disclose why I did that. That's work product.

Q    Joke.

What does Sean Chaudhuri have to do with the Utah property transaction, the Utah property loan from Steve?

A    He has nothing to do with liability.

Q    What basis does he have for any knowledge of what your speculated damages are related to the Utah property?

A    I can't speak for him.

Q    What damages have you suffered from the Utah -- loss of the Utah property to foreclosure?

A    That's in the Complaint.

Q    How have you calculated your money damages for your loss of the Utah property to foreclosure?

A    We've already went over this.  I've already -- you already asked this -- I don't -- three ways from

172

Sunday.  And I've already told you, what's in the Complaint, what the damages are.  That's -- it's very -- it's laid out, like, line by line.  If you want to go through it, go ahead.  But I can't sit here off the top of my head and ask -- and answer all these questions.  And you want to put me in all these traps.  So that's what I'm talking about.  And it's getting real annoying.

Q    What's --

A    But I'm not going to snap.  So --

**Q    What's the basis for your claim for damages on the loss of the Utah property when you had no contract signed and no revenue?**

A    You'll have to ask him.

**Q    I'm asking you.**

A    I'm asking -- I'm telling you that it's in the Complaint.  And then it -- and in the declaration.  So ask them.

**Q    I'm asking you for the factual basis because you had no revenue and no contracts.  So, what's your basis for claiming any money damage?**

A    I'm not giving you my legal theory.  That's for sure.

**Q    What do you know about HST Solar Fields, Incorporated?**

A    I don't know.

173

A    Yes, I do.

Q    **You could be here to see my face, but you wanted to do audio by remote.  And that's okay.**

**Under "Proposed Terms."**

A    I don't understand where you're talking about.

Q    **It's on bold, "Proposed Terms."**

A    "Proposed terms."  Okay.  What?

Q    **So, here you propose -- what are you proposing in this paragraph entitled, "Proposed Terms"?**

A    I don't know.  I'll read it to you.  "Proposed terms, $150,000 secured by second mortgage on 42829 Harper Lake Road due as balloon payment September 2021, $150,000 total for first year" --

THE COURT REPORTER:  Mr. Brown, way too fast.

THE WITNESS:  Oh, sorry.

I don't know.  It says what it says.

BY MR. HICKMAN:

Q    **What does it mean where you wrote $150,000 total for the first year production paid either in monthly installments starting in October, 2021, or a lump sum in September '22 -- 2022?**

A    This would be -- this would be about the $150,000 that was ultimately the unlawful interest.  But this would be the $150,000 that I proposed to pay as solar farm revenue, but Mr. Smead didn't want that.  He

267

wanted unlawful interest.

Q   So, the first year production is a reference to revenue from the solar installations you anticipated at the Harper Lake property?

A   That's what it appears to say.

Q   What did you mean when you wrote it?

A   What does it say?

Q   What did you mean?

A   That's what I meant, what I wrote.

Q   What more did you mean?

A   I didn't mean anything more than what I wrote.

Q   So you've written here that he might get $150,000 from production from the Harper Lake property, correct?

A   That's your words, not mine.  I wrote on -- I wrote what I wrote on that.

Q   There was never any production from the Harper Lake property to pay $150,000, correct?

A   Not at that time.

Q   There never was, correct?

A   Well, eventually, no, there wasn't.

Q   So --

A   But we are talking about September 14th, 2020.  That's what we're talking about.  You're talking about this email, not the future or the past or

Jilio-Ryan Court Reporters
800.454.1230 - info@jilioryan.com

DECLARATION

I herby declare I am the deponent in the within matter; that I have read the foregoing deposition and know the contents thereof; and I declare that the same is true of my knowledge except as to the matters which are therein stated upon my information or belief, and as to those matters, I believe it to be true.

I declare under the penalties of perjury of the State of California that the foregoing is true and correct.

Executed on the _____ day of _____, ____, at

_____, _____.
(City)                  (State)

_____
CLINTON BYRON BROWN

284

STATE OF CALIFORNIA          )
                             )
COUNTY OF SAN DIEGO          )


        I, Mary P. Randle, Certified Shorthand Reporter in and for the State of California, Certificate No. 10312, do hereby certify:

        That prior to being examined, the witness named in the foregoing deposition was by me first duly sworn to testify to the truth, the whole truth, and nothing but the truth;

        That said deposition was taken remotely before me at the time and place therein set forth and was taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

        I further certify that I am neither counsel for, nor related to, any party to said action, nor in any way interested in the outcome thereof.

        In witness whereof, I have hereunto subscribed my name.

Dated: December 15, 2025




*Mary Randle, CSR#10312*
MARY P. RANDLE
CSR No. 10312

286