UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 2:23-cv-02938-MEMF-KSx | Date | July 10, 2026 |
|---|---|---|---|
| Title | *Clinton Brown v. Steve Smead* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 178]**

Before the Court is defendant Steve Smead's motion for summary judgment. ["Motion," Dkt. No. 178].  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the matter, the Court **GRANTS** the Motion.

## I.    BACKGROUND

On April 19, 2023, plaintiff Clinton Brown ("Brown") commenced this action against defendant Steve Smead ("Smead") for the collection of unlawful debt under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). ["Complaint," Dkt. No. 1].  On March 23, 2025, Brown filed the operative verified complaint, alleging two claims under RICO: (1) violation of § 1962(a); and (2)

violation of § 1962(c). ["Second Amended Complaint," Dkt. No. 90].[1] Brown also attached declarations by Erick Ordaz ("Ordaz Declaration," Dkt. No. 90-1) and Sean Chaudhuri ("Chaudhuri Declaration," Dkt. No. 90-2) to the SAC.

On May 14, 2026, Smead filed the instant Motion, which the parties jointly briefed.[2] [Mot.]. The parties filed a joint statement of uncontroverted facts, ["SUF," Dkt. No. 178-3] and a joint evidentiary appendix, including Exhibits 1–75 [Dkt. No. 178-4].

## II.    FACTS

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). For summary judgment, courts consider evidence with *content* that would be admissible at trial, even if the *form* of the evidence would not be admissible at trial. *See, e.g., Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (emphasis added). The Court considers the

---

[1] The parties dispute whether Brown's Second Amended Complaint ("SAC") and accompanying declarations are verified under 28 U.S.C. § 1746 ("Section 1746"), and thus whether they can serve as competent evidence to establish a genuine issue of material fact. [*See* Mot. at 4, 7]. The SAC and declarations contain the phrase: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." [*See* SAC at 16; Ordaz Decl. at 4; Chaudhuri Decl. at 3]. Under Section 1746, a complaint or declaration is verified when the plaintiff states "under penalty of perjury that the contents were true and correct." *Schroeder*, 55 F.3d at 460 n.10; *see also* 28 U.S.C. § 1746. Because the SAC and declarations comply with Section 1746, the Court will consider the information contained in the SAC and the declarations, to the extent the declarations contain personal knowledge and admissible evidence by each declarant.

[2] Brown states that he wants to appear in court to "direct the Court to a genuine dispute of material fact already contained in the record, and, if necessary and permitted by the Court, provide sworn testimony." [Mot. at 4]. However, the Court has declined to hold a hearing on this matter, and "[o]ral testimony cannot, under Federal Rule of Civil Procedure 56, lead to a finding on a genuinely disputed fact." *Thompson v. Mahre*, 110 F.3d 716, 720 (9th Cir. 1997).

parties' objections only where necessary.  All other objections are **OVERRULED AS MOOT**.

On April 21, 2020, Smead issued Brown a $170,000 loan at a 12.99% interest rate ("Malibu Loan").  [SUF ¶ 1].  The loan was secured by a lot in Malibu, California.  [*Id.*]  Superior Loan Servicing serviced the Malibu Loan.  [*Id.* ¶ 3].  On November 10, 2020, Smead issued Brown a subsequent "second-priority purchase money loan" for $150,000 at an 8% interest rate ("Hinkley Loan").  [*Id.* ¶ 8].  The loan was secured by a lot located near Hinkley Lake in San Bernardino, California.  [*Id.*].  Brown defaulted on both loans.  [*Id.* ¶¶ 4, 9].  In May 2021, Smead issued Brown a consolidated loan "for $300,000 principal at 12% interest" secured by the Malibu lot ("Consolidated Malibu Loan"), also serviced by Superior Loan Servicing.  [*Id.* ¶¶ 2, 3].  Brown ultimately defaulted on the Consolidated Malibu Loan.  [*Id.* ¶ 4].

On June 30, 2021, Smead issued Brown a $200,000 loan at a 10% interest rate, secured by a lot owned by Brown in Utah ("Utah Loan").  [*Id.* ¶¶ 12, 14–16].  Brown defaulted on the Utah Loan in March 2022.  [*Id.* ¶ 18].

In July 2022, Smead bought the first-priority purchase money loan from American Pacific Investments, LLC on the Hinkley lot, which Brown had defaulted on, "to avoid its foreclosure that would eliminate Smead's security interest for the Hinkley Loan[.]"  [*Id.* ¶ 19].  In light of Brown's default on the Hinkley Loan, Smead directed the foreclosure trustee, Peak Foreclosure Services, Inc., to perform and complete a foreclosure sale on the property.  [*Id.* ¶ 21].  Using the credit bid of the Hinkley Loan, Smead was the highest bidder and secured the Trustee's Deed Upon Sale, making Smead the owner of the Hinkley property.  [*Id.*].  Smead also commenced a foreclosure sale on the Utah property, had the highest bid, and secured the Trustee's Deed Upon Sale.  [*Id.* ¶ 22].

 "All of Smead's transactions and loans connected with Brown and the security properties were in Smead's own name and in his own right as an individual, with no shared ownership or right in any of them in any other person or entity."  [*Id.* ¶ 27].  "No person, no individual, nor entity, was involved with receiving payments or proceeds on these loans to Brown."  [*Id.* ¶¶ 27–30].

## III.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Fed.

R. Civ. P. 56(a).  A fact is material if the dispute over that fact may affect the outcome of the lawsuit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court need not consider irrelevant and unnecessary factual disputes.  *Id.*  A dispute is genuine if a reasonable jury could return a verdict for the non-moving party based on the evidence.  *Id.*  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To do so, the moving party must present evidence that either negates an essential element of the non-movant's case or demonstrates the non-movant does not have evidence sufficient to support its case.  *Id.*  When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).  If the movant has met its burden, the non-movant must set forth specific facts showing there is a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In deciding a summary judgment motion, a court must believe the non-movant's evidence and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

In determining cross motions for summary judgment, courts must review all evidence submitted in support of each motion and "[e]ach motion must be considered on its own merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001) (citation modified).

## IV.   DISCUSSION

Viewing the evidence in the light most favorable to Brown, the Court finds there is no genuine issue of material fact precluding summary judgment on Brown's RICO claims.

RICO provides a private right of action for "[a]ny person injured in his business or property" by a RICO violation.  18 U.S.C. § 1964(c).  Brown seeks relief pursuant to RICO statutes, 18 U.S.C. § 1962(a) and (c).  Section 1962(a) prohibits a person who receives income derived from a pattern of racketeering activity from using or investing such income in an enterprise engaged in interstate commerce.  Section 1962(c) prohibits a person employed by or associated with any

enterprise engaged in interstate commerce from conducting or participating in the conduct of the enterprise through a pattern of racketeering activity.

To raise a triable issue, Brown must produce evidence demonstrating: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to [Brown's] business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)).  With respect to the second element, Brown must demonstrate two distinct entities: a person and an enterprise.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  Thus, liability hinges "on showing that the defendants conducted or participated in the conduct of the "*enterprise's* affairs," not just their *own* affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original).  Here, the purported enterprise is not a legal entity, such as a corporation, but rather an "association-in-fact" comprised of "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 580, 583 (1981).

Smead contends that he was not part of an enterprise or "scheme to defraud."  [*See* Mot. at 22–23].  Specifically, he states that he "acted on his own, and no other persons had rights or were involved in making or enforcing the loans, except for ordinary service providers who were unconnected to him or to each other," and the persons or entities involved in the commercial lending operations did not "function as a continuing unit" with Smead.  *See id.* at 23–24 (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007)); *see also* SUF ¶¶ 1–3, 8, 14–16, 19, 21–22, 27–30.

In an attempt to establish a genuine issue of material fact, Brown states that "Smead, together with the individuals and companies he employed or contracted with, formed an association-in-fact enterprise[, and] engaged in the issuance and collection of unlawful debt, . . . and the subsequent use and investment of income derived from such unlawful debt [was used] to acquire [Brown's] real property through foreclosure."  [*See* SAC ¶¶ 10, 15, 54, 66, 69].  Brown also conclusively claims that Smead "was associated with and participated in the conduct of the affairs of an enterprise, as defined in 18 U.S.C. § 1961(4), which included the use of escrow companies, title agents, foreclosure trustees, legal counsel, and other agents to facilitate lending, debt collection, and foreclosure activities across state lines."  [*Id.* ¶ 72].  But Brown's conclusory statements are insufficient to establish a genuine issue of material fact.  Brown has failed to provide any facts supported by admissible evidence demonstrating that Smead was part of an "enterprise" as defined in Section 1961(4).  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.

1993) (noting that the nonmoving party cannot rely on "conclusory allegations unsupported by factual data to create an issue of material fact").

At minimum, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. U.S.*, 556 U.S. 938, 946 (2009). Brown provides no allegations, much less any evidence, supporting a finding that Smead was part of an association-in-fact in issuing and collecting on loans. To the contrary, it is undisputed that Brown, along with American Pacific Investments LLC, which held the first-priority security interest on the Hinkley property, chose Chicago Title Company as the escrow agent to handle the consummation of the Hinkley Loan. [*See* SUF ¶ 8]. With respect to the escrow agents on the Malibu Loan and Utah Loan, e-escrow inc. and Exact Escrow, which Brown does not even identify by name, Brown fails to allege any facts or provide evidence of their unlawful union with Smead. [*See* Exs. 12-3, 12-4, 17-4]. Furthermore, Brown provides no evidence to dispute Smead's account that "the security properties were in Smead's own name and in his own right as an individual, with no shared ownership or right in any of them in any other person or entity." [*See* SUF ¶¶ 27–30]. Thus, in light of the undisputed facts, the Court **GRANTS** summary judgment in favor of Smead. As such, Brown's claims are **DISMISSED WITH PREJUDICE**.

Having determined there is no triable issue regarding Brown's claims under RICO, the Court need not determine if Smead collected an unlawful debt and if Brown suffered any injury from such collection.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Smead's Motion for Summary Judgment. [Dkt. No. 178]. A separate judgment will be issued contemporaneously with this Order.

**IT IS SO ORDERED.**